UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| IN RE: CAST IRON SOIL PIPE AND FITTINGS ANTITRUST LITIGATION | ) ) ) | No. 1:14-MD-2508 (HSM)(WBC) |
| THIS CASE RELATES TO: | ) ) ) | |
| ALL CONSUMER CASES | ) ) | |
| JERRY ADKINS AND RENA LUNDMARK, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| AB&I FOUNDRY; TYLER PIPE COMPANY; MCWANE, INC.; CHARLOTTE PIPE AND FOUNDRY COMPANY; AND RANDOLPH HOLDING COMPANY; and CAST IRON SOIL PIPE INSTITUTE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CONSUMER PLAINTIFFS' CONSOLIDATED AMENDED
## CLASS ACTION COMPLAINT

Consumer Plaintiffs Jerry Adkins and Rena Lundmark ("Plaintiffs") on behalf of

themselves and all others consumer indirect purchasers similarly situated (the "classes," as

defined below), upon personal knowledge as to the facts pertaining to themselves and upon

information and belief as to all other matters, bring this class action for damages and other relief

pursuant to the state antitrust, unfair competition, and consumer protection laws, and demands a trial by jury.

## INTRODUCTION

1.  This is a proposed class action by indirect purchasers against Defendants AB&I Foundry, Tyler Pipe Company, and McWane, Inc. (collectively, "McWane"), Charlotte Pipe and Foundry Company and Randolph Holding Company LLC (collectively, "Charlotte Pipe"), and the Cast Iron Soil Pipe Institute, Inc. ("CISP Institute") for violations of the state antitrust, unfair competition, and consumer protection laws in the cast iron soil pipe and fittings (collectively, "CISP" market. These entities are collectively referred to herein as "Defendants.")

2.  This case alleges a conspiracy among all Defendants to fix, raise, maintain, and stabilize prices for CISP that they sold indirectly to Plaintiffs and other class members, which began at least as early as January 1, 2006 and continues through December 31, 2013. Plaintiffs allege that Charlotte Pipe's 2010 acquisition and liquidation of Star Pipe Products, Ltd.'s ("Star Pipe") CISP business, which resulted in substantially decreased competition in the market for CISP, was an illegal acquisition, undertaken to facilitate and ensure the success of the price fixing conspiracy herein alleged. As a result of Defendants' unlawful conduct, Plaintiffs and the other members of the classes defined below have paid artificially inflated prices for CISP and thus suffered injury of the type the state antitrust, unfair competition, and consumer protection laws are designed to prevent.

3.  Since at least 2006, Defendants and their predecessors have been the primary sellers and manufacturers of CISP in the United States. Together, McWane and Charlotte Pipe control over 90% of the market for CISP.

2

4.      Beginning at least as early as 2006, the Defendants entered into a conspiracy to fix, raise, maintain, and stabilize the prices of CISP sold in the United States. Defendants engaged in various collusive acts, including agreements on CISP price levels and agreements not to compete with each other at particular customer accounts, in order to facilitate price increases and further the goals of their unlawful conspiracy.

5.      Defendants were able to effectuate this conspiracy easily, as they constitute the only members of the CISP Institute trade association, and thus had numerous opportunities to communicate and collude at CISP Institute events and meetings, as well as other industry functions. CISP Institute facilitated communications and information-sharing among the Defendants about prices, customers, and confidential, commercially sensitive information.

6.      Following these conspiratorial discussions at trade association meetings, Defendants would announce identical price increases, typically in the autumn to be effective in January.

7.      In 2007, Star Pipe entered the CISP market and began to compete with Charlotte Pipe and McWane for a share of the CISP market. Star Pipe's entrance in the market threatened Defendants' supra-competitive pricing and increased competition in the market.

8.      In July 2010, Charlotte Pipe, through its subsidiary Randolph Holding Company, purchased the CISP assets of Star Pipe, further effectuating the supra-competitive price-fixing scheme being implemented by the Defendants. The purchase agreement included non-compete and confidentiality clauses for many of Star's top CISP executives.

9.      Following the purchase, Charlotte Pipe destroyed Star Pipe's CISP assets and shuttered its CISP foundries. Charlotte Pipe previously had engaged in similar conduct to eliminate actual and potential competitors, and to maintain and further the Defendants'

3

implementation of their price-fixing conspiracy by purchasing smaller competitors in the CISP market only to sell off their assets and close their operations.

10. The effect of Charlotte Pipe's purchase of Star Pipe's CISP business was to lessen competition in the CISP market and to pave the way for Charlotte Pipe and McWane to continue to fix and set prices.

11. The United States Federal Trade Commission ("FTC") launched an investigation into Charlotte Pipe's acquisition of Star Pipe's CISP business, resulting in the FTC's filing of an administrative complaint on April 2, 2013 against Charlotte Pipe. Subsequently, Charlotte Pipe entered into a Consent Agreement prohibiting it from engaging in certain anti-competitive activities.

12. Due to the Defendants' conspiracy and actions to keep competitors out of the CISP market, prices for CISP have increased steadily since at least 2006, despite declining demand in the United States. Defendants' conduct alleged herein has unlawfully and unreasonably restrained competition and led to artificially inflated prices for CISP.

13. As a result of Defendants' fraudulent, deceptive, unconscionable, unfair, and anticompetitive behavior, the United States marketplace for CISP was controlled and manipulated while prices for CISP were artificially inflated. Because Plaintiffs and members of the classes paid prices for CISP that were higher than what would have paid in a competitive marketplace, each suffered economic damages as a result of Defendants' wrongdoing.

14. Plaintiffs bring this lawsuit as a damages class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of nationwide class of consumers who indirectly purchased for personal use, not for resale, for a violation of the Tennessee Trade Practices Act, § 47-25-101 *et seq.*, or alternatively, on behalf of consumers who indirectly purchased for personal use, not

for resale, in every jurisdiction which proscribes the Defendants' unlawful conduct, as described in this Complaint. These jurisdictions include Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

15.     Plaintiffs bring this lawsuit individually, and on behalf of the classes defined below for the period from and including January 1, 2006 through December 31, 2013 (the "Class Period"). Plaintiffs seek recovery of actual and/or compensatory damages and to enjoin Defendants and their co-conspirators from engaging in their unlawful and anticompetitive behavior.

## JURISDICTION AND VENUE

16.     Plaintiffs bring this action under the Class Action Fairness Act, which amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. This Court also has jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of a state within the U.S. and one or more of the defendants is a citizen or subject of a foreign state."

17.     Venue exists in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Defendants reside; transact business; are found within; or have agents in this District and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

18.     This Court has *in personam* jurisdiction over the Defendants because Defendants, either directly or through the ownership and/or control of their subsidiaries, inter alia: (a) transacted business in Tennessee and every United States jurisdiction, including in this District; (b) directly or indirectly sold or marketed substantial quantities of CISP in every United States jurisdiction, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business in Tennessee or the United States, including in this District. Defendants conduct business in Tennessee and the United States, including in this District, and have purposefully availed themselves of the laws of Tennessee and the United States.

## PARTIES

19.     Plaintiff Jerry Adkins is an Arkansas resident who purchased CISP manufactured by one or more of the Defendants indirectly for personal use during the Class Period. Plaintiff Adkins has suffered overcharge loss due to unjustified increases in the price of these products, as a result of the conspiracy described in this Complaint.

20.     Plaintiff Rena Lundmark is an Arkansas resident who purchased CISP manufactured by one or more of the Defendants indirectly for personal use during the Class Period. Plaintiff Adkins has suffered overcharge loss due to unjustified increases in the price of these products, as a result of the conspiracy described in this Complaint.

21.     Defendant AB&I Foundry ("AB&I") is a division of McWane, Inc., with its principal place of business located at 7825 San Leandro Street, Oakland, California 94621.

6

AB&I was acquired by McWane, Inc. in late 2006, and since that time, AB&I has been a division of and controlled by McWane, Inc.

22.     Defendant McWane, Inc. ("McWane") is a Delaware corporation with its principal place of business located at 1201 Vanderbilt Road, Birmingham, Alabama 35234.

23.     Defendant Tyler Pipe Company ("Tyler Pipe") is a division of McWane, Inc., with its principal place of business located at 11910 County Road 492, Tyler, Texas 75706. At all relevant times, Tyler Pipe has been a division of and owned and controlled by McWane, Inc.

24.     Defendant Charlotte Pipe and Foundry Company ("Charlotte Pipe") is a North Carolina corporation with its principal place of business located at 2109 Randolph Road, Charlotte, NC 28207.

25.     Defendant Randolph Holding Company, LLC ("Randolph") is a wholly-owned subsidiary of Charlotte Pipe and is a limited liability company organized, existing, and doing business under and by virtue of the laws of the State of Delaware with its principal place of business located at 2109 Randolph Road, Charlotte, NC 28207.

26.     Defendants AB&I, McWane, Tyler Pipe, Charlotte Pipe and Randolph are referred to herein as the "Manufacturer Defendants."

27.     Defendant Cast Iron Soil Pipe Institute, Inc. had its principal place of business in Hixson, Tennessee, within the Eastern District of Tennessee. Its registered agent for service of process is CT Corporation System, Ste. 2021, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

## AGENTS AND CO-CONSPIRATORS

28.     The acts of Defendants alleged in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

29.     Various persons or firms not named as Defendants have participated as coconspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

## DEFENDANTS' CONDUCT HAS SUBSTANTIALLY AFFECTED TENNESSEE AND NATIONWIDE TRADE AND COMMERCE

30.     On behalf of a proposed nationwide TTPA Class, *i.e.*, both residents and non-residents of Tennessee, Plaintiffs bring this proposed class action for damages and equitable and other relief against Defendants for Defendants' anti-competitive conduct in violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101 *et seq.*  Specifically, Plaintiffs bring this action pursuant to *California v. ARC Am. Corp.*, 490 U.S. 93, 103 (1989) and *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 519-20 (Tenn. 2005).  *ARC* provides that states may grant a remedy to indirect purchasers under their own antitrust laws. Under *Freeman Industries*, "indirect purchasers," including those who are not residents of Tennessee, may nevertheless recover under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-106, as "the real" and "ultimate victims" of antitrust violations so long as there has been a substantial effect on Tennessee trade and commerce.

31.     By reason of the unlawful activities hereinafter alleged, Defendants' arrangement substantially affected trade and commerce in the State of Tennessee.

32.     Defendants' agreement, contract, arrangement, trust, combination or conspiracy was substantially aided and effectuated by Manufacturer Defendants' long-standing involvement

8

and association with the industry trade association, Defendant CISP Institute. Throughout its sixty-four (64)-year history, the CISP Institute has been located in the Eastern District of Tennessee, most recently located at 3008 Preston Station Drive in Hixson, Tennessee 37343.

33. The CISP Institute was organized in 1949 by twenty-four (24) manufacturers of CISP who met to identify the need to standardize product design, to distribute product information, and for continuing education. Today, the membership of the CISP Institute includes only the three Defendants and other entities owned and controlled by them. The Manufacturer Defendants are the CISP Institute's sole source of funding, and exert tight control over it.

34. The only members of the CISP Institute are the Manufacturer Defendants or entities directly affiliated with them: AB&I Foundry, located in Oakland, California; AB&I Service Center located in City of Industry, California; Charlotte Pipe & Foundry, located in Charlotte, North Carolina; Tyler Coupling, located in Marshfield, Missouri; Tyler Pipe, located in Tyler, Texas; and Tyler Pipe Service Center, located in Macungie, Pennsylvania.

35. The CISP Institute sponsored the industry's reference handbook (the "CISP Handbook"), which provided, and continues to provide, the industry's standard specifications for cast iron soil pipe, fittings, and accessories. The CISP Handbook was compiled and edited by the Technical Advisory Group of the CISP Institute.

36. The CISP Institute announces on its website (http://www..org) that:

"[t]hrough the preparation and distribution of technical reports, we seek to advance interest in the manufacture, use and distribution of cast iron soil pipe and fittings, and through a program of research and the cooperative effort of soil pipe manufacturers, we strive to improve the industry's products, achieve standardization of cast iron soil pipe and fittings, and provide a continuous program of product testing, evaluation and development. Since the founding of the Institute, member firms have standardized soil pipe and fittings, and have introduced a number of new products."

37.     To be assured that pipe fittings "meet the approved standards" of the CISP Institute, pipe fittings manufactured by the Manufacturer Defendants must bear is either the Ç® or the CI NO-HUB® trademarks, the "collective marks" all member companies may place on their products.

38.     The CISP Institute's Quality Control Program, created in the early 1960's, also "ensures that domestic manufacturers," *i.e.*, the Manufacturer Defendants, "are manufacturing in compliance with the standards. CISP Institute technicians make three annual unannounced inspections of the Manufacturer Defendants' inventories "to check dimensional accuracy, metallurgical data and record keeping requirements."

39.     The CISP Institute's website and marketing materials are used extensively to promote and market to suppliers, contractors, and the general public the CISP products manufactured by the Manufacturer Defendants. For instance, the website has stated:

- "Metallic shielded couplings for use in joining hubless pipe and fittings are also available in these size ranges from the member companies of the Cast Iron Soil Pipe Institute;"

- "Thermoset elastomeric gaskets, lubricant, and assembly tools are available from the member companies of the Cast Iron Soil Pipe Institute;"

- "[A]dditional fittings not found in the standards may be available.  Don't give up until you have checked with the manufacturers. Email The Institute if you need help, or contact a specific foundry directly;"

- "CISP INSTITUTE 310 - This standard covers stainless steel shielded couplings with a rubber (ASTM C564) gasket sleeve. These couplings are the most widely used, and have been produced since the early 1960's. We estimate that 1 ½ billion have now been installed. These couplings are produced by numerous manufacturers and are sold by all of the cast iron soil pipe and fittings manufacturers."

40.     And while the CISP Institute markets the Manufacturer Defendants' products, the CISP Institute is also marketed by the Manufacturer Defendants. For instance, the website of

10

Defendant Charlotte Pipe & Foundry Company has contained no fewer than two brochures produced by the CISP Institute, three advertisements produced by the CISP Institute, and a CISP Institute "Info Kit." The CISP Institute's "CISP Handbook has also been available on Defendants' websites.

41.     The CISP Institute has seven (7) representatives whose responsibilities are divided into regions. Together, these 7 regional representatives cover every state in the country.

42.     As the only members of the CISP Institute, the Manufacturer Defendants have had numerous opportunities to discuss pricing at CISP Institute-sponsored and organized events in Tennessee. In fact, the Manufacturer Defendants' executives and managers attend CISP Institute sponsored and organized events at least twice annually.  The Manufacturer Defendants routinely use the CISP Institute in Tennessee as a mechanism to facilitate communication and coordination of their activities, including price-fixing, maintaining their market shares, and excluding foreign competition. For example, the CISP Institute's executive vice president, Mr. William H. LeVan, has communicated – in writing or by telephone from CISP institute headquarters in Hixson, Tennessee – to each of the Manufacturer Defendants on numerous occasions to alert them that CISP customers were being solicited by foreign manufacturers, and has produced weekly reports to the Manufacturer Defendants to provide them information concerning bidding and pricing information. Moreover, the CISP Institute has been used to convey information between the Manufacturer Defendants about potential competitive threats posed by importers.

43.     In addition to all of the above, the CISP Institute and its Executive Vice President, Mr. LeVan, have coordinated, convened, and conducted bi-annual meetings, attended by top level executive officers of the Manufacturer Defendants, including Allan Boscatti (President and

11

CEO of AB&I), Frank Dowd (CEO of Charlotte Pipe), Roddy Dowd (former President of Charlotte Pipe), Don Waugaman (formerly Vice President of Sales at Tyler and currently Vice President of Sales at Charlotte Pipe), Patrick Starkey (Vice President of Sales at Tyler), and Bill Bliss (Executive Vice President of Tyler), for the purpose of conceiving, effectuating, and implementing the price-fixing arrangement described herein.

44.     Therefore, the CISP industry has a substantial manufacturing, marketing and sales presence in Tennessee, having its trade association here, marketing themselves through that trade association, and meeting in Tennessee to agree on prices, among other things.

45.     As the CISP Institute is fully-funded by the Manufacturer Defendants, overcharges paid by Plaintiffs and class members for CISP from all across the United States logically flowed back to the CISP Institute in Tennessee. Millions of dollars in revenue is generated for the Manufacturer Defendants by the utilization of the CISP Institute in Tennessee.

46.     In addition, the Manufacturer Defendants and the CISP Institute, directly or through their executives, officers, or agents, engaged in the following other activities in or substantially affecting trade and commerce in the State of Tennessee:

    a)    Transacted CISP business in Tennessee;

    b)    Contracted to supply CISP from Tennessee;

    c)    Intentionally availed themselves of the benefits of selling CISP from Tennessee to Tennessee and other United States jurisdictions;

    d)    Produced, promoted, sold, marketed, and/or distributed CISP from Tennessee; and

    e)    Derived substantial revenue in Tennessee from CISP sold, purchased, and used in Tennessee and throughout the United States.

12

47. Defendants' conduct, as described in this Complaint, was within the flow of, was intended to, and did have a substantial effect on the interstate commerce of the United States, including in this District.

48. During the Class Period, Defendants manufactured, sold and shipped CISP in a continuous and uninterrupted flow of interstate commerce. The price-fixing conspiracy and other anticompetitive conduct in which the Defendants participated had a direct, substantial, and reasonably foreseeable effect on interstate commerce.

## RELEVANT MARKETS

49. The relevant product market for purposes of this Complaint is the market for the sale of CISP for use in commercial, industrial, and multi-story residential buildings in the United States.

50. The relevant geographic market for purposes of this Complaint is the United States.

## FACTUAL ALLEGATIONS
## Cast Iron Soil Pipe and Fittings

51. CISP is primarily used for sanitary and storm drain, waste, and vent piping applications. CISP is used in residential, commercial, industrial, and government construction.

52. CISP has been used in the United States since the beginning of the 19th century, when it replaced wooden systems. In the early part of the 21st century, production of CISP fluctuated with demand and periods of new construction.

53. CISP is manufactured predominantly from cast iron. Cast iron is a generic term that refers to a series of alloys primarily made of iron, carbon, and silicon. Cast iron may also contain trace amounts of other materials such as manganese, sulfur, and phosphorous.

13

54.     Numerous state and local building codes require the use of CISP for certain types of construction.  CISP has numerous characteristics that make it particularly well-suited for drain, waste, vent, and sewer plumbing applications, including resistance to corrosion and abrasion.

55.     The methods for joining CISP together in various configurations make it versatile. Additionally, it can be installed both above and below flooring, as well as underground, as the following figure demonstrates:



**Figure 1 — Typical Housing CISP Pipe Layout**

56.     CISP is classified into two major types—"Hub and Spigot" and "Hubless." Hubless CISP is also called "No-Hub." The method of joining No-Hub pipe and fittings utilizes a metallic shielded hubless coupling that telescopes over the plain ends of the pipe and fitting and

14

is torqued to seal the joint. Hub and Spigot pipe and fittings have "hubs" into which the spigot (plain end) of the pipe or fitting is inserted. The joint is sealed with a rubber compression gasket or molten lead and oakum. The following figures illustrate the two types of CISP:



**Figure 2 — Traditional hub and spigot CISP**



**Figure 3 — No-Hub Pipe and Hubless Coupling**

57.     While No-Hub pipes come in only one standard thickness, Hub and Spigot pipe comes in a standard thickness, called service weight, and also an "extra heavy" thickness.

58.     CISP fittings include various designs and sizes, consisting of bends, tees, wyes, traps, drains, and other special fittings. The following figure illustrates some of the different types of CISP fittings:

15



**Figure 4 — Various CISP fittings**

**The CISP Industry**

59.     The most frequent purchasers of CISP are plumbing wholesalers. End-users of CISP include construction companies, plumbers, and developers.

60.     Fifty-nine percent of the CISP produced is 3-inch and 4-inch in circumference, 25 percent is 1 1/2-inch and 2-inch, and 16 percent is 5-inch and over.

61.     Fittings constitute roughly a quarter of the total tonnage of CISP combined production.  CISP is delivered to purchasers across the United States and is generally shipped directly to the job site from the manufacturer via truck.

62.     According to U.S. Census data, the annual value of CISP shipped in the U.S. between 2004 and 2011 was between $350,000,000 and $450,000,000.

**Market Characteristics Conducive to Collusion**
**Limited Number of Producers**

63.     There are only three producers of CISP in the United States: Charlotte Pipe, AB&I, and Tyler Pipe.  Both Tyler Pipe and AB&I are divisions of McWane.

64.     McWane and Charlotte Pipe together account for over 90 percent of the market for CISP. The FTC has described the industry as "highly concentrated," and the exit of Star Pipe from the market "substantially increased the level of concentration in the relevant market[]."

65.     In fact, the industry is so concentrated that, in 2007 and 2009, the U.S. Census withheld reporting CISP data specifically because there was a risk that with so few producers,

16

the release of data would enable the public to identify proprietary company information even from the aggregate data.

## High Barriers to Entry

66.     There are significant barriers to entry and expansion in the CISP market. First, there are substantial costs associated with either building or acquiring a foundry as well as the specialty manufacturing tools necessary to produce CISP. For example, Star Pipe's CISP assets that were acquired by Charlotte Pipe, which constituted a very small percentage of the market overall, still sold for $19 million.

67.     Additionally, a new entrant would have to develop a distribution network and relationships with both plumbing distributors and end-users.

68.     Finally, manufacturers must be able to produce both the most commonly requested CISP, and also less common types of CISP, in order to offer a full line of CISP products to customers.

## Product Homogeneity

69.     CISP is a commodity-like product, and Defendants' products are produced to industry-wide standards.  Because all CISP is standardized and must meet strict American Society for Testing and Materials requirements, manufacturers of CISP compete mainly on price. This product homogeneity enhances Defendants' ability to collude on prices and to detect deviations from those collusively set prices.

## Price Inelasticity

70.     If a given change in price triggers a smaller proportionate change in the quantity demanded, then the demand for the good or service is said to be inelastic.

71. Demand for CISP is inelastic because there is no functional substitute for CISP. Plastic pipes, such as PVC or ABS pipe, are not a substitute for CISP because CISP has several properties that plastic pipe cannot replicate:

        a)    CISP's acoustical characteristics make it more effective in reducing plumbing noise than other materials.

        b)    Unlike other materials, cast iron has high crush strength and resistance to tree roots, penetration by rodents, and failure because of ground shifts. Unlike plastic pipe, no special bedding is required to support CISP.

        c)    The thermal expansion and contraction of cast iron is far less than that of other materials, such that failures from expansion and contraction due to extreme cold and heat are virtually impossible.

        d)    Unlike other materials, CISP is noncombustible and will not burn in the event of a building fire.

72. Ductile Iron Pipe is not a substitute product because it comes in much larger sizes and is used mainly for large waterworks projects, whereas CISP is much smaller and is used for drain waste and vent plumbing inside residential and commercial properties.

73. Additionally, state, municipal, and local codes often require the use of CISP, as opposed to plastic piping, which means that there is no potential alternative for CISP in those areas.

**Defendants Had Many Opportunities to Collude**

74. Defendants (and affiliated entities) comprise the only members of a trade association called the CISP Institute. The CISP Institute was organized in 1949 by the leading American CISP manufacturers. At the time of its inception, it included 24 manufacturers.

18

Today, it includes only the three Defendants—two of which are divisions of Defendant McWane—and other entities owned and controlled by Defendants. Defendants are the CISP Institute's sole funders and supporters.

75.     As the only members of CISP Institute, Defendants have had numerous opportunities to discuss pricing at CISP Institute events. Executives and managers from Defendants attend CISP Institute events together at least twice per year.

76.     The CISP Institute is used by Defendants as a mechanism to facilitate communication and coordination of their activities, including price-fixing, maintaining their market shares, and excluding foreign competition. The Executive Vice President of the CISP Institute, Bill LeVan, has communicated—in writing or by telephone—to Defendants on numerous occasions for the purpose of alerting Defendants that CISP customers were being solicited by foreign manufacturers. LeVan also has provided weekly reports to Defendants that provided information concerning bidding and pricing information. In addition, the CISP Institute has been used to communicate information directly between Defendants about potential competitive threats posed by importers.

77.     Senior officials from Defendants have participated in bi-annual CISP Institute meetings to effectuate the conspiracy described herein. These meetings have included Bill LeVan, Allan Boscatti (President and CEO of AB&I), Frank Dowd (CEO of Charlotte Pipe), Roddy Dowd (former President of Charlotte Pipe), Don Waugaman (formerly Vice President of Sales at Tyler and currently Vice President of Sales at Charlotte Pipe), Patrick Starkey (Vice President of Sales at Tyler), and Bill Bliss (Executive Vice President of Tyler). Shortly after certain of these meetings, and before any public announcement, Starkey, Bliss, or Sterling

Bowman (Tyler's National Sales Manager) reported to Tyler employees that Tyler would increase CISP prices and that Charlotte would do the same.

78.     In addition to their coordinated activities through the CISP Institute, Defendants' executives also attended annual meetings of the American Supply Association, which counts CISP manufacturers as participants. This association provided further opportunities to discuss and implement the unlawful conspiracy described herein.

79.     Other trade associations, such as the American Water Works Association, held conferences and meetings, which provided additional opportunities for Defendants to come together and discuss and set prices.

**The Price-Fixing Conspiracy**

80.     Defendants—as the dominant suppliers in the market—have been fixing CISP prices since at least 2006. Defendants' CISP list prices, rebates, and multipliers (which are percentages multiplied by a given list price to arrive at the respective transaction price) have been maintained in lockstep with each other during the course of the conspiracy.

81.     In 2005 or 2006, an employee in Charlotte Pipe's cast iron foundry in North Carolina learned that Charlotte Pipe and the McWane companies were fixing prices of CISP. He learned this from Charlotte's plant manager, Marshall Coble. Specifically, Mr. Coble stated, during the course of a meeting at the foundry, that the CISP manufacturers met at the bi-annual trade association meeting that Summer or Fall to discuss and agree on pricing for CISP. When the employee challenged the plant manager about the legality of such actions, the plant manager quickly brushed his concerns aside and moved on to another topic.

82.     Defendants often announced identical price increases very close in time to one another and soon after that trade association meeting occurred. For instance, in early September

2010, both Charlotte Pipe and AB&I announced a future price increase of 7.5 percent set to take effect on January 1, 2011.

83. As demonstrated in the table below, Defendants frequently posted identical prices for the most common sizes of CISP, all effective the first of the year:

| Year | Part | Charlotte Pipe | AB&I | Tyler Pipe |
|------|------|----------------|------|------------|
| 2006 | 3"x10' No-Hub Pipe | $103.20 | $103.20 | $103.20 |
|      | 4" x 10' No-Hub Pipe | $134.00 | $134.00 | $134.00 |
|      | 3" No-Hub 1/4 Bend | $15.10 | $15.10 | $15.10 |
|      | 3" No-Hub 1/8 Bend | $16.00 | $16.00 | $16.00 |
|      | 4" x 3" Wye | $28.50 | $28.50 | $28.50 |
|      | 3" x10' Single Hub Pipe | $103.20 | $103.20 | $103.20 |
|      | 4" x 10' Single Hub Pipe | $134.00 | $134.00 | $134.00 |
|      | 3" Hub & Spigot 1/4 Bend | $23.80 | $23.80 | $23.80 |
|      | 3" Hub & Spigot 1/8 Bend | $29.10 | $29.10 | $29.10 |
| 2007 | 3"x10' No-Hub Pipe | $108.60 | $108.60 | $108.60 |
|      | 4" x 10' No-Hub Pipe | $141.10 | $141.10 | $141.10 |
|      | 3" No-Hub 1/4 Bend | $15.90 | $15.90 | $15.90 |
|      | 4"No-Hub 1/8 Bend | $16.80 | $16.80 | $16.80 |
|      | 4" x 3" Wye | $30.00 | $30.00 | $30.00 |
|      | 3" x10' Single Hub Pipe | $108.60 | $108.60 | $108.60 |
|      | 4" x 10' Single Hub Pipe | $141.10 | $141.10 | $141.10 |
|      | 3" Hub & Spigot 1/4 Bend | $25.10 | $25.10 | $25.10 |
|      | 4" Hub & Spigot 1/8 Bend | $30.60 | $30.60 | $30.60 |
| 2009 | 3" x10' No-Hub Pipe | $113.70 | $113.70 | $113.70 |
|      | 4" x 10' No-Hub Pipe | $147.70 | $147.70 | $147.70 |
|      | 3" No-Hub 1/4 Bend | $16.90 | $16.90 | $16.90 |
|      | 4" No-Hub 1/8 Bend | $17.60 | $17.60 | $17.60 |
|      | 4" x 3" Wye | $31.40 | $31.40 | $31.40 |
|      | 3" x10' Single Hub Pipe | $122.90 | $122.90 | $122.90 |
|      | 4" x 10' Single Hub Pipe | $159.70 | $159.70 | $159.70 |
|      | 3" Hub & Spigot 1/4 Bend | $28.40 | $28.40 | $28.40 |
|      | 4" Hub & Spigot 1/8 Bend | $34.60 | $34.60 | $34.60 |
| 2010 | 3" x10' No-Hub Pipe | $117.30 | $117.30 | $117.30 |
|      | 4" x 10' No-Hub Pipe | $152.30 | $152.30 | $152.30 |
|      | 3" No-Hub 1/4 Bend | $17.50 | $17.50 | $17.50 |
|      | 4" No-Hub 1/8 Bend | $19.00 | $19.00 | $19.00 |
|      | 4" x 3" Wye | $32.40 | $32.40 | $32.40 |
|      | 3" x10' Single Hub Pipe | $129.40 | $129.40 | $129.40 |
|      | 4" x 10' Single Hub Pipe | $168.20 | $168.20 | $168.20 |
|      | 3" Hub & Spigot 1/4 Bend | $29.90 | $29.90 | $29.90 |
|      | 4" Hub & Spigot 1/8 Bend | $36.50 | $36.50 | $36.50 |

| | | | | |
|---|---|---|---|---|
| 2011 | 3"x10' No-Hub Pipe | $126.80 | $126.80 | $126.80 |
| | 4" x 10' No-Hub Pipe | $164.60 | $164.60 | $164.60 |
| | 3" No-Hub 1/4 Bend | $18.90 | $18.90 | $18.90 |
| | 4" No-Hub 1/8 Bend | $20.50 | $20.50 | $20.50 |
| | 4" x 3" Wye | $35.00 | $35.00 | $35.00 |
| | 3" x10' Single Hub Pipe | $139.90 | $139.90 | $139.90 |
| | 4" x 10' Single Hub Pipe | $181.80 | $181.80 | $181.80 |
| | 3" Hub & Spigot 1/4 Bend | $32.30 | $32.30 | $32.30 |
| | 4" Hub & Spigot 1/8 Bend | $39.50 | $39.50 | $39.50 |
| 2012 | 3" x10' No-Hub Pipe | $136.30 | $136.30 | $136.30 |
| | 4" x 10' No-Hub Pipe | $177.00 | $177.00 | $177.00 |
| | 3" No-Hub 1/4 Bend | $20.30 | $20.30 | $20.30 |
| | 4" No-Hub 1/8 Bend | $22.00 | $22.00 | $22.00 |
| | 4" x 3" Wye | $37.60 | $37.60 | $37.60 |
| | 3" x10' Single Hub Pipe | $150.40 | $150.40 | $150.40 |
| | 4" x 10' Single Hub Pipe | $195.50 | $195.50 | $195.50 |
| | 3" Hub & Spigot 1/4 Bend | $34.70 | $34.70 | $34.70 |
| | 4" Hub & Spigot 1/8 Bend | $42.50 | $42.50 | $42.50 |
| 2013 | 3"x10' No-Hub Pipe | $143.50 | $143.50 | $143.50 |
| | 4" x 10' No-Hub Pipe | $186.30 | $186.30 | $186.30 |
| | 3" No-Hub 1/4 Bend | $21.40 | $21.40 | $21.40 |
| | 4" No-Hub 1/8 Bend | $23.20 | $23.20 | $23.20 |
| | 4" x 3" Wye | $39.60 | $39.60 | $39.60 |
| | 3" x10' Single Hub Pipe | $158.30 | $158.30 | $158.30 |
| | 4" x 10' Single Hub Pipe | $205.80 | $205.80 | $205.80 |
| | 3" Hub & Spigot 1/4 Bend | $36.50 | $36.50 | $36.50 |
| | 4" Hub & Spigot 1/8 Bend | $44.70 | $44.70 | $44.70 |

84.     Due to the conspiracy, Defendants have been able to maintain and/or raise prices

without regard to market demand.  As shown in the figure below, Defendants have steadily

increased prices since January 1, 2006 even though construction spending—a prime determinant

of CISP demand—has fallen significantly during that time.  During this period, Defendants

raised prices more than 50 percent despite a marked decline in total construction spending, as

demonstrated in Figure 6 below:



Figure 6 - Comparison of CISP PPI with Construction Spending

85.     These price increases also have significantly exceeded changes in the cost of manufacturing CISP during this time period.  The primary cost determinants for CISP – including scrap iron and natural gas – have increased at substantially lower rates than the price increases set forth above.

86.     In addition to the aforementioned activities, Defendants also agreed to limit competition for "each other's" customers.  For example, sales representatives at Tyler were trained and directed by Patrick Starkey and Bill Bliss to stay away from Charlotte Pipe's CISP customers and maintain their current market position, rather than trying to seek business from Charlotte Pipe's customers.

**The Acquisition Of Star Pipe's Cisp Business Furthered The Conspiracy**

87.     In 2007, Star Pipe entered the CISP market.  Prior to that time, Star Pipe had produced and sold, among other things, ductile iron pipe fittings products.  Star Pipe sought membership in the CISP Institute—which Defendants controlled—but was not permitted to join.

88.     McWane and Charlotte Pipe had significant concerns about the potential impact of Star Pipe's entry—particularly as Star Pipe's market position strengthened over time—and the impact this entry would have on competitive conditions in the CISP market and their ability to maintain a price-fixing scheme.

89.     Star Pipe's potential growth as a competitor posed a threat to Defendants' ability to maintain their ongoing price-fixing conspiracy. Just as Defendants had, through their participation and control of the CISP Institute, taken coordinated steps to exclude competition by importers, actions were taken to foreclose competition by Star Pipe.  Specifically, in 2010, Charlotte Pipe commenced steps to eliminate Star Pipe as a competitor in the CISP market and to maintain Defendants' price-fixing conspiracy. Charlotte Pipe's anti-competitive actions were in furtherance of the conspiracy because they eliminated the potential threat to the conspiracy presented by Star Pipe.

90.     On July 14, 2010, Charlotte Pipe executed a confidential Asset Purchase Agreement with Star Pipe, which allowed Charlotte Pipe to acquire the entirety of Star Pipe's CISP business, including Star Pipe's CISP inventory, production equipment, business records, and customer lists.  Charlotte Pipe paid approximately $19 million for the Star Pipe CISP assets. Shortly after acquiring the Star Pipe assets, Charlotte Pipe had all such equipment destroyed.

91.     The parties also signed an agreement that prohibited Star Pipe and certain Star Pipe employees from competing with Charlotte Pipe in North America for six years after the date

the agreement was signed.  Star Pipe further agreed to send a letter to its customers stating that it had decided to exit the CISP business.

92.    Several Star Pipe executives received large cash bonuses following the completion of the sale of the CISP business to Charlotte Pipe.

93.    The Star Pipe acquisition is not the only CISP business that Charlotte Pipe has purchased in recent history.  According to the FTC Complaint, Charlotte Pipe acquired the CISP assets of other potential competitors, including Matco-Norca in 2009.  If a small CISP company posed a risk of stimulating price competition in the CISP market, Charlotte Pipe purchased it in order to shut down production and destroy any CISP assets.  The elimination of these competitors, like the activities coordinated through the CISP Institute, has facilitated Defendants' ability to maintain and enforce their price-fixing conspiracy.

94.    In 2013, the FTC challenged the Star Pipe acquisition, alleging that Charlotte Pipe had violated Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45.  The FTC issues such complaints when it has "reason to believe that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest."

95.    The FTC subsequently entered into a consent agreement with Charlotte Pipe to "address the anticompetitive effects resulting from Charlotte Pipe's 2010 acquisition of the cast iron soil pipe business of Star Pipe."

96.    The consent agreement mandated that, for ten years following its execution, Charlotte Pipe must notify the FTC before acquiring any additional entities engaged in the manufacture or sale of CISP products in order for the FTC to "guard against future anticompetitive transactions."  It further mandated that Charlotte Pipe inform its customers and

the public of the acquisition of Star Pipe, as well as its previous CISP acquisitions. It also invalidated the non-compete and confidentiality clauses contained in the Star Asset Purchase Agreement.

## FRAUDULENT CONCEALMENT

97. Plaintiffs and members of the classes did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until on or about April 2, 2013, when the FTC's redacted complaint was filed.

98. Because Defendants' alleged conspiracy was kept secret until April 2, 2013, Plaintiffs and members of the classes before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time that they were paying supra-competitive prices for CISP throughout the United States during the Class Period.

99. The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

100. Defendants' conspiracy was inherently self-concealing. CISP and fittings are not exempt from antitrust regulation, and thus, before April 2, 2013, Plaintiffs reasonably considered it to be a well-regulated, competitive industry.

101. In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' proffered CISP prices before April 2, 2013.

102. Plaintiffs and members of the classes could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive

practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of and fraudulently conceal their conspiracy.

103.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until on or about April 2, 2013, when the FTC complaint, and its corresponding factual allegations of anti-competitive conduct concerning the CISP industry, was first publicly disseminated.

104.    None of the facts or information available to Plaintiffs and members of the classes prior to April 2, 2013, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to that date.  Without the benefit of discovery, it is impossible to determine the scope and extent of Defendants' and their co-conspirators' (non-public) meetings and communications with each other.  Defendants are alleged to have engaged in a secret conspiracy that necessarily did not give rise to facts that would put Plaintiffs or the classes on inquiry notice that there was a conspiracy to fix prices for CISP.  The conspiracy as herein alleged was fraudulently concealed by Defendants by various means and methods, including, but not limited to, secret meetings, communications, and agreements. If they were memorialized in records at all, Defendants' contacts and meetings with each other were memorialized in a false and/or misleading manner in order to conceal the anticompetitive topics of discussion.  Defendants' contacts and meetings with each other were also concealed from Defendants' customers and other non-conspirators.

105.    Although Defendants' price increase announcements, including in the form of new price lists, during the Class Period sometimes did not contain justifications for price

increases, the announcements and price lists nevertheless constituted implicit statements that price increases were legitimate and were the result of competitive market forces. Customers also were told that price increases were needed because raw material costs were increasing. Such statements were false and misleading, because at times costs were not increasing and announcements and price lists never included the real reason for price increases, namely Defendants' secret conspiracy.

106.    For example, Defendants acted in furtherance of the conspiracy, and helped conceal the conspiracy, through communications such as the following:

- In May 2007, AB&I told customers that "[i]t is ABI's policy to give the market as much notice as possible regarding a price increase, since contractors and others need to plan their jobs so far in advance." This statement was misleading because advance notice of price increases was also important to ensure that the conspirators would adhere to their price-fixing agreement and implement price increases on the same date.

- In March 2008, AB&I falsely told customers that its price increase was "simply a cost pass-through" because earlier increases were insufficient to cover the rise in scrap iron prices. AB&I indicated that "it has become necessary to increase prices to recover these added costs of production." AB&I also indicated that future price increases might be necessary to cover cost changes.

- In November 2009, AB&I falsely told customers that it was increasing prices after trying "to put off this price increase for as long as we could." AB&I represented that "[a]s in all price increases, this one came after weeks of deliberation. The disturbance such increases can cause to our valued customers is a regrettable effect, but this effect must be weighed against the impacts of NOT raising prices to stay in line with costs." AB&I told customers that the "scrap iron market is a small subset of the ferrous metals market, and AB&I's scrap iron costs are inextricably linked to world steel demand. Any growth in world steel demand produces upward pressure on scrap iron prices. World demand for steel has steadily increased since April 2009, according to the World Steel Association. In fact, China produced more steel in August, 2009 than in any other month in its history. Despite falling demand in U.S. commercial construction, AB&I is experiencing rising raw material costs."

- On September 1, 2010, Charlotte Pipe falsely told customers that price increases were the result of cost increases in raw materials and operating

28

expenses and that as a result of cost increases, prices would remain at higher levels through 2011.

- In September 2010, AB&I falsely told customers that because of raw material cost increases it was announcing a commensurate increase in CISP prices.

- On September 7, 2011, Charlotte Pipe announced price increases and falsely attributed these increases to cost increases in scrap iron and other major raw materials.

- On September 20, 2011, Charlotte Pipe falsely told customers that it was increasing prices "[d]ue to cost increases in scrap iron and other major raw materials as well as increases in general operating expenses."

107.    Defendants' statements justifying their price increases throughout the Class Period were designed to create, and did create, the impression that these increases were based on competitive market forces.  These statements were false and misleading, and constituted affirmative and overt acts of concealment of the conspiracy, because Defendants' price increases were a result of the affirmatively and fraudulently concealed conspiracy set forth herein.  Indeed, even statements about the alleged cost justifications for price increases were misleading, and lulled Plaintiffs and other customers into believing that price increases were based on legitimate market forces, because customers were never alerted to Defendants' secret meetings, agreements, and cooperation with each other as set forth above. As a result of this misleading conduct, Defendants' customers, including Plaintiffs and members of the classes, were conditioned – by experience in dealing with Defendants in what they believed to be a competitive industry – to expect price increases from time to time and to believe that this was the result of normal market forces, rather than the product of an illegal conspiracy.

108.    Defendants and their co-conspirators engaged in a successful anti-competitive conspiracy concerning CISP, which they affirmatively concealed, at least in the following respects:

a)　　By communicating secretly to discuss customers and prices of CISP in the United States;

b)　　By meeting at trade association meetings to discuss and fix prices;

c)　　By issuing or justifying price increase announcements based on false and/or misleading reasons, including cost increases; and

d)　　By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme.

109.　　As a result of Defendants' fraudulent concealment, all applicable statutes of limitations affecting Plaintiffs and the claims of the classes have been tolled.

## VIOLATION OF STATE ANTITRUST AND CONSUMER PROTECTION LAWS

110.　　Beginning by at least January 1, 2006 and continuing through December 31, 2013, Defendants have engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize the prices of CISP in the United States.

111.　　Defendants engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain, or stabilize the price of CISP sold in the United States.

112.　　These activities included:

a)　　Participation in meetings, conversations, and communications to discuss the price and pricing terms for the sale of CISP in the United States;

b)　　Agreeing during those meetings, conversations, and communications to charge prices at specified levels, to allocate customers, and to otherwise fix, raise, maintain, or stabilize prices of CISP sold in the United States; and

c)　　Taking numerous steps, as set forth above, to implement and maintain the conspiracy.

113.　　Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in this Complaint.

114. Charlotte Pipe's acquisition of Star Pipe's CISP business resulted in decreased market competition and increased concentration in the market for CISP.

115. Throughout the Class Period, Plaintiffs and the other class members purchased CISP from Defendants (or their subsidiaries or controlled affiliates) at supra-competitive prices.

116. Defendants' contracts, combinations, or conspiracies constitute unreasonable restraints of interstate trade and commerce.

## ANTI-COMPETITIVE EFFECT

117. As a result of Defendants' unlawful conduct, Plaintiffs and the other class members have been injured in their business and property because they have paid more for CISP than they would have paid absent collusion.

118. Defendants' unlawful contract, combination, or conspiracy has had at least the following effects:

      a)      Price competition in the market for CISP has been artificially restrained;

      b)      Prices for CISP sold by Defendants have been raised, fixed, maintained, or stabilized at supra-competitive levels; and

      c)      Consumer indirect purchasers of CISP from Defendants have been deprived of the benefit of free and open competition in the market for CISP.

## CLASS ACTION ALLEGATIONS

119. Plaintiffs bring this action on behalf of themselves individually and as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following nationwide class:

> All persons in the United States who purchased products for personal use and not for resale containing, in some form, CISP manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof, during the Class Period.

Excluded from the Class are Defendants, their parent companies, subsidiaries, predecessors, and affiliates, any co-conspirators, federal and state governmental entities and instrumentalities of federal and state governments.

120. Alternatively, Plaintiffs bring this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a multistate class consisting of:

All persons who lived in the Consumer States[1] who purchased products for personal use and not for resale containing, in some form, CISP manufactured by one or more of the Defendants or co-conspirators, or any predecessors, parents, subsidiaries, or affiliates thereof, during the Class Period.

121. The nationwide class and the multistate class are referred to herein as the "classes." Excluded from the classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, any judicial officer presiding over this matter and his or her staff, and persons who purchased CISP directly.

122. These class definitions are subject to amendment as the case develops.

123. Membership in the classes is so numerous that joinder of all members is impracticable. On information and belief, hundreds, if not thousands, of individuals and entities purchased CISP from the Defendants during the Class Period.

124. Plaintiffs' claims are typical of the claims of the members of the classes because Plaintiffs and all class members share the same injury, as they were all damaged by the actions of Defendants, which caused them to pay artificially inflated prices for CISP.

---

[1] The Consumer States are the following states: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

125. Plaintiffs will fairly and adequately represent and protect the interests of the classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other class members.

126. Plaintiffs are represented by counsel who are experienced and respected in the prosecution of class action and antitrust litigation.

127. This case presents many common questions of law and fact that will predominate over any questions that may affect individual members of the classes, such as:

- Whether Defendants and their co-conspirators engaged in a conspiracy to raise, fix, stabilize, and maintain prices of CISP sold in the United States;

- Whether Defendants and their co-conspirators shared nonpublic, proprietary information, allocated markets and customers, restricted the supply and output of CISP sold in the United States and/or committed unfair or anticompetitive conduct in furtherance of the alleged price-fixing conspiracy;

- Whether Defendants and their co-conspirators engaged in unfair, false, deceptive or unconscionable behavior;

- Whether Defendants and their co-conspirators conduct resulted in CISP's being sold at an artificially high and noncompetitive prices;

- Whether Defendants and their co-conspirators were unjustly enriched by the sale of CISP at artificially high and non-competitive levels;

- Whether Defendants and their co-conspirators agreed to allocate customers;

- The duration and extent of the conspiracy;

- Whether each Defendant was a participant in any such conspiracy;

- Whether Charlotte Pipe's acquisition of Star Pipe's CISP assets substantially increased concentration or decreased competition in the market for CISP, or was undertaken as a method of ensuring the continuing success of the Defendants' price-fixing conspiracy by eliminating a competitor from the market;

- Whether Plaintiffs and the class members were injured by Defendants' and their co-conspirators' conduct and, if so, the appropriate class-wide measure of damages for class members; and

- Whether the Plaintiffs and the Nationwide Class are entitled to nationwide injunctive relief.

128. The questions of fact or law common to the classes are overarching and predominate as a threshold matter over any individual questions affecting members of the classes.

129. Plaintiffs will fairly and adequately represent the interests of the classes and has no interest that conflicts with or is antagonistic to the classes. Plaintiffs have retained counsel who are competent and experienced in antitrust law, class actions, and complex litigation.

130. Defendants have acted in ways that cause similar injury to the classes as a whole, thereby making final injunctive relief appropriate with respect to the classes.

131. A class action is procedurally superior to any alternatives for adjudicating the claims of Plaintiffs and members of the classes. The claims of the members of the classes can be consolidated into one lawsuit to decide the predominating issue of liability. Permitting this lawsuit to proceed utilizing the class mechanism will eliminate multiple lawsuits over the same common issues of fact and liability and the risk of inconsistent decisions establishing varying standards of conduct for Defendants. Maintenance of the lawsuit as a class action will promote judicial economy, efficiency, and fairness to all parties involved.

## FIRST CLAIM FOR RELIEF
### (Nationwide Class)

### Violation of the Tennessee Trade Practices Act

132. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

133. The Tennessee Trade Practices Act ("TTPA"), Tennessee Code Annotated § 47-25-101 provides:

> All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the

34

manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

134.    Tennessee law also allows any person injured indirectly, like the Plaintiffs and class members, to seek redress for their injuries arising out of illegal arrangements.

135.    Tenn. Code Ann. § 47-25-106 provides:

Any person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

136.    In *Freeman Indus., LLC v. Eastman Chemical Co.,* the Tennessee Supreme Court ruled that the TTPA was triggered not by anti-competitive conduct but by "the effect of the anticompetitive conduct." The Supreme Court also held that the TTPA's applicability, whether invoked by Tennessee residents *or* non-residents, should be judged by "whether the alleged anti-competitive conduct affects Tennessee trade or commerce to a substantial degree." *Id.*

137.    During the Class Period, Defendants' illegal conduct substantially affected Tennessee trade and commerce and caused injury to consumers in Tennessee.

138.    Defendants and unnamed co-conspirators entered into and engaged in an agreement, contract, arrangement, combination or conspiracy which lessened or tended to lessen full and free competition in the market for CISP in violation of the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 *et seq.*

139.    The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' agreement, contract, arrangement, combination or conspiracy were authorized,

ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

140. The anti-competitive acts were intentionally directed at the Tennessee market for CISP and had a substantial and foreseeable effect on Tennessee trade and commerce.

141. In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a) Participating in meetings and conversations among themselves in Tennessee during which they agreed to price CISP at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and class members with respect to CISP sold in the United States; and

(b) Participating in meetings and conversations among themselves in Tennessee to implement, adhere to, and police the unlawful agreements they reached.

142. Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to CISP.

143. Defendants' anti-competitive acts described above were knowing and willful and constitute violations or flagrant violations of the Tennessee Trade Practices Act, Tenn. Code Ann. §§ 47-25-101 *et seq.*

144. The conspiratorial acts have caused unreasonable restraints in the market for CISP.

145. Defendants' arrangements, contracts, agreements, trusts, combinations, or conspiracy to fix, raise, maintain, or stabilize the prices of CISP marketed, distributed, or sold in Tennessee and the United States had the following substantial effects on Tennessee commerce:

(a) The prices of CISP indirectly purchased by class members were fixed, raised, maintained, and stabilized at inflated, artificial and noncompetitive levels;
(b) class members were deprived of free and open competition in the purchase of CISP;

(c) Competition in the sale of CISP was restrained; and
(d) class members paid higher prices for CISP than they would have paid absent Defendants' arrangement.

146. During the Class Period, class members indirectly purchased millions of dollars worth of Defendants' CISP in Tennessee and elsewhere. By reason of Defendants' violations of the TTPA, Plaintiffs and class members paid significantly more for CISP than they would have paid absent Defendants' illegal arrangement, and, as a result, Plaintiffs and class members were injured in their businesses and property and have suffered damages in amounts presently undetermined.

147. Defendants' arrangements, contracts, agreements, trusts, combinations, conspiracy further substantially affected Tennessee commerce because one or more of the Defendants, either directly or through their agents, engaged in the following activities in or affecting commerce in Tennessee: (a) Transacted CISP business in Tennessee; (b) Contracted to supply or obtain goods or revenue related to the CISP business in Tennessee; (c) Intentionally availed themselves of the benefits of doing CISP business in Tennessee; (d) Produced, promoted, sold, marketed, and/or distributed CISP in Tennessee, thereby purposefully profiting from access to Tennessee's CISP market; (e) Caused tortious damage in Tennessee by fixing CISP prices; (f) Caused tortious damage in Tennessee by acts or omissions committed outside Tennessee by regularly doing or soliciting business in Tennessee; engaging in other persistent courses of conduct within Tennessee; and/or deriving substantial revenue from goods used or consumed or services rendered in Tennessee; and (g) Committed acts and omissions that they knew or should have known would cause damage (and, in fact, did cause damage) in Tennessee while regularly doing or soliciting business in Tennessee; engaging in other persistent courses of conduct in

Tennessee; and/or deriving substantial revenue from goods used or consumed or services

rendered in Tennessee.

148. During the Class Period, Defendants' arrangement substantially affected

Tennessee commerce in the following additional ways:

(a) *The Arrangement's Substantial Effect on Tennesseans' Trade or Commerce:* Some price-fixing arrangements only affect the commerce of a limited geographic region or a limited number of residents. Defendants' arrangement, however, was more far reaching – it substantially affected thousands of Tennessee residents. Because CISP are routinely integrated into residences and commercial buildings,
CISP was purchased by thousands of people in Tennessee who purchased a home or building during the Class Period, by virtually all segments of society, and in all geographic regions. There could hardly be anti-competitive conduct with a more substantial effect on the commerce of Tennessee and Tennesseans than Defendants' illegal conduct alleged here.

(b) *The Substantial Monetary Effect on Tennessee Trade or Commerce:* Defendants' arrangement lasted from the "Class Period"), and over that time, they sold millions of dollars worth of CISP in Tennessee and the United States. With even a modest estimated overcharge during that time, Defendants illegally profited by millions of dollars from their arrangement. The arrangement's adverse effect on Tennessee commerce was at least millions of dollars. Furthermore, the substantial monetary effect on Tennessee is more than to just consumers/indirect purchasers due to lost sales to Tennessee direct purchasers because of Defendants' illegal prices.

(c) *Substantially Harmful Effect on the Integrity of the Tennessee Market:* The Tennessee market is vulnerable and can be manipulated by companies either from outside Tennessee, inside Tennessee, or both. Without enforcing Tennessee's antitrust law to its fullest extent, as expressed by the Tennessee Supreme Court, companies that break the law will remain unpunished, and they will remain able to prey upon Tennesseans without consequence. The Tennessee Supreme Court explained that "the purpose of the TTPA is to protect the state's trade and commerce affected by anticompetitive conduct." Defendants have shattered this very purpose by illegally and criminally victimizing the Tennessee market. Thus, every level of the Tennessee market's integrity has been compromised – from the manufacturer to the middleman to the consumer.

(d) *The Substantial Adverse Effect on Tennessee Commerce was Critical to the Criminal Arrangement's Success*:
Because CISP is sold throughout the United States, price arbitrage between states would prevent Defendants' arrangement's effectiveness if their arrangement did

not affect every one of these states, including Tennessee. Thus, to ensure their arrangement's effectiveness, Defendants knew that Tennessee commerce had to be, would be, and was substantially affected in order to carry their arrangement out.

(e) ***Length of Substantial Effect on Tennessee Commerce:*** Some arrangements are short-lived. This one lasted for a dozen years, during which time Defendants profited from it, thereby permitting them to continue their victimization of Tennessee consumers and have a substantial effect on Tennessee commerce.

149.     Defendants' price-fixing arrangement was perpetrated against and substantially affected Tennessee commerce by having victimized Tennesseans and/or by having occurred in Tennessee. The results of Defendants' actions occurring outside Tennessee also substantially affected Tennessee commerce by increasing the prices Tennesseans paid for Defendants' price-fixed CISP. As the result of Defendants' illegal actions' substantial effect on Tennessee commerce, indirect purchasers of Defendants' CISP have been injured.

150.     As a direct and proximate result of Defendants' TTPA violations, Plaintiffs and class members have suffered injuries and seek damages in an amount necessary to restore them to the position they would have been in had Defendants not violated the TTPA.

151.     Plaintiffs and class members have been injured in their business and property by paying more for CISP purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay absent the conspiracy. The alleged agreement, contract, arrangement, combination or conspiracy is a *per se* violation of the Tennessee Trade Practices Act.

152.     Plaintiffs and class members are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF
## (Multistate Class)

### Violation of State Antitrust Statutes

153.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

154.     From as early as January 1, 2006 until December 31, 2013, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of CISP in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below

155.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetetive levels the price for CISP and to allocate customers for CISP in the United States.

156.     In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

- Participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price CISP at certain levels, and otherwise fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the classes with respect to CISP sold in the United States;

- Allocating customers and markets for CISP in the United States in furtherance of their agreements; and

- Participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

157.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and the allocate customers with respect to CISP.

158.     Defendants' anticompetitive acts described above were knowing, willful, and

constitute violations or flagrant violations of the following state antitrust statutes.

159.     Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

- Defendants' combinations or conspiracies had the following effects:  (1) CISP price competition was restrained, suppressed, and eliminated throughout Arizona; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.*  Accordingly, Plaintiffs and members of the classes seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

160.     Defendants have entered into an unlawful agreement in restraint of trade in

violation of the California Business and Professions Code, §§ 16700, *et seq.*

- During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code.  Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, CISP at supracompetitive levels.

- The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, CISP.

- For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and

41

conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of CISP; and (2) Allocating among themselves the production of CISP.

- The combination and conspiracy alleged herein has had, inter alia, the following effects upon the commerce of California: (1) Price competition in the sale of CISP has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for CISP sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased products containing CISP from entities who purchased the chemical from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property in that they paid more for products containing CISP than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the classes seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

161.  Defendants have entered into an unlawful agreement in restraint of trade in

violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

- Defendants' combinations or conspiracies had the following effects (1) CISP price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the classes, who resided in the District of Columbia and/or purchased products containing CISP in the District of Columbia, were deprived of free and open competition, in the District of Columbia; and (4) Plaintiffs and members of the classes, who resided in the District of Columbia and/or purchased products containing CISP in the District of Columbia, paid supracompetitive, artificially inflated prices in the District of Columbia for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

42

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the classes seek all forms of relief available under District of Columbia Code Ann. §§ 28-45601, *et seq.*

162. Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

- Defendants unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (d) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes pain supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered in to agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.* Accordingly, Plaintiffs and members of the classes seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

163. Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes, 10/1, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Illinois; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

43

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1 *et seq.* Accordingly, Plaintiffs and members of the classes seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq.*

164. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Iowa; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

165. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Kansas; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

44

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the classes seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

166. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Maine; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

167. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Michigan; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

45

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

168. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

- Defendants' combinations or conspiracies had the following effects:  (1) CISP price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.*  Accordingly, Plaintiffs and members of the classes seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

169. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

- Defendants' combinations or conspiracies had the following effects:  (1) CISP price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the classes who resided in Mississippi and/or purchased products containing CISP in Mississippi were deprived of free and open competition in Mississippi; and (4) Plaintiffs and members of the classes who resided in Mississippi and/or purchased products containing CISP in Mississippi paid supracompetitive, artificially inflated prices in Mississippi for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

46

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

170. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

171. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Nevada; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the classes who resided in Nevada and/or purchased products containing CISP in Nevada were deprived of free and open competition in Nevada; and (4) Plaintiffs and members of the classes who resided in Nevada and/or purchased products containing CISP in Nevada paid supracompetitive, artificially inflated prices in Nevada for products containing CISP.

47

- During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

172. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

173. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

48

- During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

174. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout New York; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the classes who resided in New York and/or purchased products containing CISP in New York were deprived of free and open competition in New York; and (4) Plaintiffs and members of the classes who resided in New York paid supracompetitive, artificially inflated prices for products containing CISP when they purchased, in New York, products containing CISP or purchased, in New York, products containing CISP that were otherwise of lower quality than would have been absent the conspirators' illegal acts, or were unable to purchase products containing CISP that they would have otherwise purchased absent the illegal conduct.

- During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiffs and members of the classes seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

175. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the classes who resided in North Carolina and/or purchased products containing CISP were deprived of free and open competition in North Carolina; and (4) Plaintiffs and members of the classes who resided in North Carolina and/or purchased products containing CISP in North Carolina paid supracompetitive, artificially inflated prices in North Carolina for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

176. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

177. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

50

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Oregon; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

178. Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the classes who resided in South Dakota and/or purchased products containing CISP in South Dakota were deprived of free and open competition in South Dakota; and (4) Plaintiffs and members of the classes who resided in South Dakota and/or purchased products containing CISP in South Dakota paid supracompetitive, artificially inflated prices in South Dakota for products containing CISP.

- During the Class Period, Defendants' illegal conduct has a substantial effect on South Dakota commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

179.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the classes who resided in Tennessee and/or purchased products containing CISP in Tennessee were deprived of free and open competition in Tennessee; and (4) Plaintiffs and members of the classes who resided in Tennessee and/or purchased products containing CISP in Tennessee paid supracompetitive, artificially inflated prices in Tennessee for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

180.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Utah; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

52

181.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Vermont Stat. Ann. 9 §§ 2451, *et seq.*

- Defendants' combinations or conspiracies had the following effects:  (1) CISP price competition was restrained, suppressed, and eliminated throughout Vermont; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2451, *et seq.*  Plaintiffs are entitled to relief pursuant to Vermont Stat. Ann. 9 § 2465 and any other applicable authority.  Accordingly, Plaintiffs and members of the classes seek relief available under Vermont Stat. Ann. 9 §§ 2451, *et seq.*

182.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the West Virginia Code §§ 47-18-1, *et seq.*

- Defendants' combinations or conspiracies had the following effects:  (1) CISP price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the classes who resided in West Virginia and/or purchased products containing CISP in West Virginia were deprived of free and open competition in West Virginia; and (4) Plaintiffs and members of the classes who resided in West Virginia and/or purchased products containing CISP in West Virginia paid supracompetitive, artificially inflated prices in West Virginia for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

53

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the classes seek all available under West Virginia Code §§ 47-18-1, *et seq.*

183. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the classes seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

184. Plaintiffs and members of the classes in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the classes have paid more for products containing CISP than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

185. In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and members of the classes.

54

186. Accordingly, Plaintiffs and the members of the classes in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## THIRD CLAIM FOR RELIEF
### (Multistate Class)

### Violation of State Consumer Protection Statutes

187. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

188. Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

189. Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

- Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which products containing CISP were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the classes.

- The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated § 4-88-107(a)(10).

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

- As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the classes seek all relief available under that statute.

190. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

- During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

- During the Class Period, Defendants illegal conduct substantially affected California commerce and consumers.

- This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged in this Complaint, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

- The Defendants' conduct as alleged in this Complaint violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the violations of Section 16720, *et seq.*, of the California Business and Professions Code, as set forth above;

- Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

- Defendants' acts or practices are unfair to purchasers of products containing CISP in the State of California within the meaning of Section 17200, California Business and Professions Code; and

56

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout California; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the classes who resided in California and/or purchased products containing CISP in California were deprived of free and open competition in California; and (4) Plaintiffs and members of the classes who resided in California and/or purchased products containing CISP in California paid supracompetitive, artificially inflated prices in California for products containing CISP.

- Defendants' acts and practices are unlawful, fraudulent, or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

- Plaintiffs and members of the classes are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

- The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

- The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the classes to pay supracompetitive and artificially inflated prices for products containing CISP. Plaintiffs and the members of the classes suffered injury in fact and lost money or property as a result of such unfair competition.

- The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

- As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the classes are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

191. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

- Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and/or non-

57

competitive levels, the prices at which CISP was sold, distributed, or obtained in the District of Columbia.

- The foregoing conduct constituted "unlawful trade practices" within the meaning of D.C. Code § 28-3904.

- During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce and consumers.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

192. Defendants have engaged in unfair competition or unlawful, unfair,

unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair

Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Florida; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unlawful, unfair, or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

193.  Defendants have engaged in unfair competition or unlawful, unfair,

unconscionable, or deceptive acts or practices in violation of the Massachusetts Gen. Laws, Ch.

93A, § 1, *et seq.*

- Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which CISP was sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the classes.

- The aforementioned conduct on the part of the Defendants constituted "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," in violation of Massachusetts Gen. Laws, Ch. 93A, §§ 2, 11.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce and consumers.

- As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Massachusetts Gen. Laws, Ch. 93A, §§ 2,11 and, accordingly, Plaintiffs and the members of the classes seek all relief available under that statute.

194.  Defendants have engaged in unfair competition or unlawful, unfair,

unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising

Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

59

- Defendants engaged in the conduct described in this Complaint in connection with the sale of products containing CISP in a market that includes Missouri.

- During the Class Period, Defendants'' illegal conduct substantially affected Missouri commerce and consumers.

- Defendants agreed to, and in fact did, fix, control, and/or maintain at artificial and non-competitive levels, the price at which CISP was sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiffs and members of the classes.

- Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the classes concerning Defendants' unlawful activities and artificially inflated prices for CISP. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the classes as they related to the cost of products containing CISP.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Missouri; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

- As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the classes suffered ascertainable loss of money or property.

- Accordingly, Plaintiffs and members of the classes seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State Regulations, which provides for the relief sought in this Count.

195. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer

Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and Mont. Code, §§ 30-14-201, *et seq.*

- Defendants unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Montana; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the classes who resided in Montana and/or purchased products containing CISP in Montana were deprived of free and open competition in Montana; and (4) Plaintiffs and members of the classes who resided in Montana and/or purchased products containing CISP in Montana paid supracompetitive, artificially inflated prices in Montana for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and Mont. Code. §§ 30-14-201, *et seq.*, and accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

- Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

- Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at a non-competitive and artificially inflated levels, the price at which CISP was sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the classes.

- The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices" in violation of N.M.S.A. § 57-12-3, in that such conduct, inter alia, and as set forth in N.M.S.A. § 57-12-2E, resulted in a gross disparity between the value received by Plaintiffs and the members of the classes and the prices paid by them for products containing CISP.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the

61

classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected Now Mexico commerce and consumers.

- As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the classes seek all relief available under that statute.

196. Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

- Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the price at which CISP was sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and the members of the classes.

- Defendants deceptively led purchasers, such as Plaintiffs and members of the classes, to believe that the products containing CISP they had purchased had been sold at a legal, competitive price, when they had in fact been sold at a collusively obtained and inflated price, that passed on to them the artificially inflated price of CISP.

- The conduct of the Defendants described in this Complaint constituted consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout New York; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the classes who reside in and/or made purchases of products containing CISP in New York were deprived of free and open competition and subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the classes who reside in and/or made purchases of products containing CISP in New York paid

supracompetitive, artificially inflated prices in New York for products containing CISP, and were subjected to Defendants' deceptive practice in New York.

- During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

- During the Class Period, each of the Defendants named in this Complaint directly or indirectly and through affiliates they dominated and controlled, manufactured, sold, and/or distributed CISP in New York.

- Plaintiffs and members of the classes seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

197. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

- Defendants agreed to, and did in fat, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the price at which CISP was sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the classes.

- The conduct of the Defendants described in this Complaint constituted consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

- Defendants' unlawful conduct had the following effects upon purchasers in North Carolina or products containing CISP: (1) CISP price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the classes who reside in North Carolina and/or purchased products containing CISP in North Carolina were deprived of free and open competition in North Carolina; and (4) Plaintiffs and members of the classes who resided in North Carolina and/or purchased products containing CISP in North Carolina paid supracompetitive, artificially inflated prices in North Carolina for products containing CISP.

- During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

- During the Class Period, each of the Defendants named in this Complaint, directly, or indirectly and through affiliated they dominated and controlled, manufactured, sold, and/or distributed CISP in North Carolina.

63

- Plaintiffs and members of the classes seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

198. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

- Plaintiffs and members of the classes purchased CISP for personal, family, or household purposes.

- Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which CISP was sold, distributed, or obtained in Rhode Island.

- Defendants deliberately failed to disclose material facts to Plaintiffs and members of the classes concerning their unlawful activities and artificially inflated prices for CISP. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, they breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their CISP prices were competitive and fair.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for CISP.

- As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the classes suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

- Defendants' deception, including their omissions concerning the price of CISP, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing CISP at prices born by a free and fair market. Defendants' omissions constitute information important to Plaintiffs and members of the classes as they related to the cost of the CISP they purchased.

64

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

199. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

- Defendants' combinations or conspiracies had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supracompetitive, artificially inflated prices for products containing CISP.

- During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

- As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the classes have been injured in their business and property and are threatened with further injury.

- Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 29-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the classes seek all relief available under that statute.

200. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

- Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which CISP was sold, distributed, or obtained in Vermont.

- Defendants deliberately failed to disclose material facts to Plaintiffs and members of the classes concerning Defendants' unlawful activities and artificially inflated prices for CISP. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' CISP prices were competitive and fair.

- Defendants' unlawful conduct had the following effects: (1) CISP price competition was restrained, suppressed, and eliminated throughout Vermont; (2) CISP prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the classes were deprived of free and open competition; and (4) Plaintiffs and members of the classes paid supra-competitive, artificially inflated prices for CISP.

- As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the classes suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

201. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of CISP, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing CISP at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the classes seek all relief available under that statute.

### FOURTH CLAIM FOR RELIEF
**(Multistate Class)**

### Unjust Enrichment

202. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

203. Plaintiffs bring this claim under the laws of all the Consumer States listed previously: Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

204.     As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, as a minimum, unlawfully inflated prices and unlawful profits on CISP.

205.     Defendants have benefitted from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayment made by Plaintiffs or the members of the classes for products containing CISP.

206.     Plaintiffs and the members of the classes are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the classes are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the classes may make claims on a pro rata basis.

207.     Pursuit of any remedies against the entities from which Plaintiffs and members of the classes purchased products containing CISP subject to Defendants' conspiracy would have been futile, given that those entities did not take part in Defendants' conspiracy.

## FIFTH CLAIM FOR RELIEF
### Illegal Merger Under Section 7 of the Clayton Act

208.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

209.     Charlotte Pipe's acquisition of Star Pipe violated Section 7 of the Clayton Act, 15 U.S.C. § 18, because it has substantially lessened competition and/or tended to create a monopoly in the relevant market.

210.     The acquisition eliminated actual, direct, and substantial competition between Charlotte Pipe and Star Pipe.

211.     The acquisition increased concentration in the market for CISP and increased Defendants' ability to exert market power.

212. The acquisition has caused, and will continue to cause, severe anticompetitive effects in the relevant market, including but not limited to price increases above competitive levels.

213. Pursuit of any remedies against the entities from which Plaintiffs and members of the classes purchased products containing CISP subject to Defendants' conspiracy would have been futile, given that those entities did not take part in Defendants' conspiracy.

## DEMAND FOR JURY TRIAL

214. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that:

A. The court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(a)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the classes;

B. The unlawful contract, combination, or conspiracy, and other acts alleged in this Complaint be adjudged and decreed:

    a. An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth in this Complaint; and

    b. Acts of unjust enrichment by Defendants as set forth in this Complaint

C. The acquisition by Charlotte Pipe of Star Pipe's CISP assets be adjudged to have violated Section 7 of the Clayton Act, 15 U.S.C. § 18;

D. Plaintiffs and members of the classes recover damages, to the maximum extent allowed under applicable laws, and that a joint and several judgment in favor of Plaintiffs and the members of the classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

E. Plaintiffs and the members of the classes recover damages, to the maximum extent allowed by applicable laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

68

F.   Defendants, their affiliates, successors, transferees, assignees, and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

G.   Plaintiffs and the members of the classes are awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

H.   Judgment be entered for Plaintiffs and class members against Defendants for three times the amount of damages sustained by Plaintiffs and the classes as allowed by law;

I.   Plaintiffs and the members of the classes be awarded punitive damages to the extent allowable by law;

J.   Plaintiffs and the classes be awarded pre-judgment and post judgment interest as permitted by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

K.   Plaintiffs and the classes recover their costs of the suit, including attorneys' fees, as provided by law; and

L.   Plaintiffs and the classes have such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

Dated:  August 11, 2014.

Respectfully submitted,


*Charles Barrett*
Charles Barrett
BARRETT LAW GROUP, P.A.
6518 Highway 100
Suite 210
(615) 515-3393
charles@cfbfirm.com

Gordon Ball
GORDON BALL PLLC
7001 Old Kent Drive
Knoxville, TN 37919
gball@gordonball.com

69

(865) 525-7028

*Consumer Lead Counsel*

John Mark Griffin
WARREN & GRIFFIN, P.C.
736 Georgia Avenue
Suite 600
Chattanooga, TN 37402
(423) 265-4878

*Consumer Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Charles Barrett, hereby certify that on August 11, 2014 sent a copy of the foregoing via

ECF and Electronic Mail to the following:

Alan Truitt, Maynard Cooper (atruitt@maynardcooper.com)
Joseph A. Ostoyich, Baker Botts (joseph.ostoyich@bakerbotts.com)
Kit Pierson, Cohen Milstein (kpierson@cohenmilstein.com)
Solomon Cera, Gold Bennett (sbc@gbcslaw.com)
Robert Kaplan, Kaplan Fox (rkaplan@kaplanfox.com)
Scott Brown, Spears Moore (snb@smrw.com)
Edward Ciolko, Kellser Topaz (eciolko@ktmc.com)
Ronald Berke, Berke, Berke & Berke (ronnie@berkeattys.com)
Mark Merritt, Robinson, Bradshaw & Hinson (mmerritt@rbh.com)
Lawrence Moore, Robinson, Bradshaw & Hinson (lmoore@rbh.com)
Nathan Chase, Robinson, Bradshaw & Hinson (nchase@rbh.com)
Roger Dickson, Miller & Martin (rdickson@millermartin.com)
Crews Townsend, Miller & Martin (ctownsend@millermartin.com)
Kyle Eiselstein, Miller & Martin (keiselstein@millermartin.com)
Kyle Wilson, Miller & Martin (kwilson@millermartin.com)

*Charles Barrett*
Charles Barrett
BARRETT LAW GROUP, P.A.