UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN RE: CAST IRON SOIL PIPE AND FITTINGS ANTITRUST LITIGATION | No. 1:14-MD-2508 (HSM)(WBC) |
| THIS CASE RELATES TO: ALL CONSUMER CASES | **CONSUMER PLAINTIFFS' MEMORANDUM IN OPPOSTION TO DEFENDANTS' MOTION TO STRIKE** |
| JERRY ADKINS AND RENA LUNDMARK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AB&I FOUNDRY; TYLER PIPE COMPANY; MCWANE, INC.; CHARLOTTE PIPE AND FOUNDRY COMPANY; AND RANDOLPH HOLDING COMPANY; and CAST IRON SOIL PIPE INSTITUTE,<br><br>Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

    A.    Defendants Oversell *Skelaxin*..............................................................3

    B.    Consumer Plaintiffs Do Not Seek Certification of a
Damages Class Under Rule 23(b)(2) ......................................................7

    C.    Nationwide Application of the TTPA Is Constitutional .......................8

CONCLUSION...................................................................................................13

Consumer Plaintiffs Jerry Adkins and Rena Lundmark ("Consumer Plaintiffs") hereby submit this brief opposing Defendants' Motion to Strike Consumer Plaintiffs' Class Action Allegations (Dkt. 155; Page ID#: 1529-1552).

**INTRODUCTION**

Knowing that a class action under Rule 23 is the only meaningful avenue for Consumer Plaintiffs to obtain relief for the wrongs alleged in their complaint, Defendants' motion to strike essentially seeks to kill Consumer Plaintiffs' case before it even begins. .[1] Defendants impore this Court to prematurely strike the class allegations before a single deposition has been taken or before a single document has been exchanged under Rules 33 or 34.. This is an extreme measure, so Defendants' burden is naturally a heavy one.

Essentially, to succeed on their motion, Defendants must demonstrate it is *impossible* to certify a proposed class. For all of the reasons articulated below by Plaintiffs, Defendants have failed to approach, much less to meet their burden. Respectfully, the request should be rejected and Consequently, the issues presented by Defendants' motion should be considered, if at all, at the class certification stage and not based on the pleadings alone. *See Rehberger v. Honeywell Intern., Inc.*, No. 11-85, 2011 WL 780681, at *10 (M.D. Tenn. Feb 28, 2011) (declining to strike plaintiff's class-wide fraud claim and noting that "the court will defer

---

[1] Consumer Plaintiffs' Consolidated Amended Class Action Complaint ("Consumer Complaint"), Dkt. 121, Page ID#: 1071-1140.

1

resolving the viability of [the class-wide fraud claim] until the class certification stage"); *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59-60 (1st Cir. 2013) ("courts should exercise caution when striking class action allegations based solely on the pleadings," noting the 6th Cir. decision in *Pilgrim* but describing the striking of class action allegations as a "drastic measure" and vacating the district court's order to strike); *James D. Hinson Electrical Contracting Co., Inc. v. AT&T Services, Inc.,* No. 3:13-cv-29-J-32, 2014 WL 1118015, at *3 (M.D. Fla. Mar. 20, 2014) (dismissal of a party's class allegations at the pleading stage is "an *extreme remedy*" and it is Defendants' burden to establish "*from the face of the complaint that it will be impossible to certify* the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove.").

Consumer Plaintiffs and Indirect Purchaser Plaintiffs ("IPPs") have brought largely the same claims with two exceptions. Both plaintiff groups seek relief under the consumer protection statutes and antitrust statutes of various indirect purchaser states.[2] Defendants have asked that these common claims and allegations be stricken from both Consumer Plaintiffs' and IPPs' complaints. For brevity, Consumer Plaintiffs incorporate the arguments regarding the common claims of the various state statutes and unjust enrichment made in IPPs' memorandum in opposition to Defendants' motion to strike. Dkt. 189; Page ID#:

---

[2] *See* Consumer Complaint Count II and III.

1969-1999.

Consumer Plaintiffs also bring additional claims for unjust enrichment (Count IV), for an illegal merger under Section 7 if the Clayton Act, 15 U.S.C. § 18 (Count V), and a nationwide claim for relief for violation of the Tennessee Trade Practices Act (Count I). *Id*. ¶¶ 132-152 ("TTPA Claim"). Defendants seek to strike the TTPA Claim as well. Defendants do not ask that the unjust enrichment and the Clayton Act class claims be stricken. Consumer Plaintiffs will address the arguments related to the TTPA arguments in this memorandum.

### A. Defendants Oversell *Skelaxin*

Predictably, Defendants rely heavily on *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555 (E.D. Tenn. 2014) ("*Skelaxin*") for its arguments that the class allegations for the TTPA Claim should be stricken. Defendants altogether misconstrue and misapply the holding in *Skelaxin*, however. First, that case was not decided on a motion to strike, but was instead a class certification decision following extensive discovery – obviously, a very different procedural posture than presented here. 299 F.R.D. at 559. Second, the court certainly did not rule that a nationwide TTPA claim could *never* be certified (again, this is the standard facing Defendants).Rather, it ruled only that certification was inappropriate under the facts of that particular case.

*Skelaxin* was a generic drug antitrust case. There, the indirect purchaser

3

plaintiffs sought certification of a nationwide TTPA claim based primarily on the fact that one of the defendants was a Tennessee resident. Tennessee choice-of-law rules applied. Citing Restatement (Second) of Conflict of Laws (1971), Judge Collier noted that Tennessee applies the "most significant relationship" test to choice-of-law issues. 299 F.R.D. at 584. He listed the elements of any such analysis: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, or (d) the place where the relationship, if any, between the parties is centered. *Id*. The Court found that the place of injury was the deciding factor in his choice-of-law analysis. *Id*. at 585. Defendants incorrectly argue that is the end of it. They wrongly contend courts should look to the place of injury only in deciding which state's law should apply. Of course, to do so would effectively eliminate any possibility of certifying a TTPA claim. To be sure, that is not what *Skelaxin* held.

Judge Collier expressly stated that the place of injury was "not dispositive" and cited *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992), a case where Tennessee law applied even though the injury occurred in Arkansas. The court noted that in *Hataway*, Tennessee had the "most significant" relationship to the litigation. The court also held that "the place of domicile of the parties *and the place where the conduct occurred* is relevant, to be sure." *Id*. at 586 (emphasis

4

added). Contrary to Defendants assertions, this case presents afar more compelling situation than Skelaxin for applying the TTPA nationwide. There, the only connected to Tennessee was that one of the defendants maintained its headquarters in Tennessee. Here, in stark contrast, Consumer Plaintiffs alleged Defendant Cast Iron Soil Pipe Institute, Inc., located in Hixson, Tennessee,[3] was at heart and center of Defendants' illegal activity, much of which – according to Plaintiffs' well-pleaded allegations -- occurred right here in Tennessee. For example, Consumer Plaintiffs have alleged, among other things:

- "the membership of the CISP Institute includes only the three Defendants and other entities owned and controlled by them. The Manufacturer Defendants are the CISP Institute's sole source of funding, and exert tight control over it;"[4]

- The only members of the CISP Institute are the Manufacturer Defendants or entities directly affiliated with them";[5]

- "As the only members of the CISP Institute, the Manufacturer Defendants have had numerous opportunities to discuss pricing at CISP Institute-sponsored and organized events in Tennessee. In fact, the Manufacturer Defendants' executives and managers attend CISP Institute sponsored and organized events at least twice annually. *The Manufacturer Defendants routinely use the CISP Institute in Tennessee as a mechanism to facilitate communication and coordination of their activities, including price-fixing, maintaining their market shares, and excluding foreign competition.* For example, the CISP Institute's executive vice president, Mr. William H. LeVan, has communicated – in writing or by telephone from CISP institute

---

[3] Consumer Complaint, ¶ 27.

[4] *Id.*, ¶ 33.

[5] *Id.*, ¶ 34.

headquarters in Hixson, Tennessee – to each of the Manufacturer Defendants on numerous occasions to alert them that CISP customers were being solicited by foreign manufacturers, and has produced weekly reports to the Manufacturer Defendants to provide them information concerning bidding and pricing information. Moreover, the CISP Institute has been used to convey information between the Manufacturer Defendants about potential competitive threats posed by importers;" (emphasis added)[6]

- "In addition to all of the above, the CISP Institute and its Executive Vice President, Mr. LeVan, have coordinated, convened, and conducted bi-annual meetings, attended by top level executive officers of the Manufacturer Defendants, including Allan Boscatti (President and CEO of AB&I), Frank Dowd (CEO of Charlotte Pipe), Roddy Dowd (former President of Charlotte Pipe), Don Waugaman (formerly Vice President of Sales at Tyler and currently Vice President of Sales at Charlotte Pipe), Patrick Starkey (Vice President of Sales at Tyler), and Bill Bliss (Executive Vice President of Tyler), for the purpose of conceiving, effectuating, and implementing the price-fixing arrangement described herein;"[7]

Ultimately, the *Skelaxin* court found that Tennessee did not have a more significant relationship to the litigation that the states where injury occurred, but that decision was made after careful examination of the evidence presented at class certification. Defendants would have this Court abandon any meaningful analysis of evidence altogether and simply forbid Consumer Plaintiffs from presenting such arguments at the class certification stage. This argument should be rejected.

---

[6] *Id.*, ¶ 42.

[7] *Id.*, ¶ 43. *See also*, *id*. ¶¶ 27-43. These are only samples from the Consumer Complaint.

6

### B. Consumer Plaintiffs Do Not Seek Certification of a Damages Class Under Rule 23(b)(2)

Defendants next lobby the Court to strike Consumer Plaintiffs Rule 23(b)(2) allegations. Consumer Plaintiffs, however, do not seek damages under Rule 23(b)(2). Defendants' argument is nothing more than a red-herring. Injunctive relief is available under the TTPA and that is the relief Consumer Plaintiffs seek pursuant to 23(b)(2). Simultaneously, Consumer Plaintiffs also seek to certify their damages claim under Rule 23(b)(3). This type of alternative pleading is common in class actions. *See Kelly v. Montgomery Lynch & Assocs.*, 2007 U.S. Dist. LEXIS 93656, *18-19 (N.D. Ohio Dec. 19, 2007) (citations omitted) ("This Court concludes that the class should be certified as a hybrid class under Rules 23(b)(2) and 23(b)(3). The class members possess common questions of law and fact and seek declaratory and injunctive relief. Defendants' argument that class members may not seek both money damages and equitable relief is plainly without merit.

After all, the Sixth Circuit has certainly recognized hybrid class actions. And while the Seventh Amendment may require the court to "bifurcate the liability and damages portion of the trial and grant the plaintiffs opt-out rights with regards to their claims for monetary damages" In hybrid actions, this Court can resolve the constitutional concerns that may attend such actions at another time. At this time, however, it is enough for this Court to conclude that the class is properly certifiable under both Rules 23(b)(2) and 23(b)(3).; *In re Conagra Foods, Inc.*, 2014 U.S.

7

Dist. LEXIS 116103, **92-93 (C.D. Cal. Aug. 1, 2014) (citing *Dukes v. Wal-Mart Stores, Inc.*, and holding the court can separately certify an Rule 23(b)(2) injunctive relief class and a Rule 23(b)(3) damages class).

### C. Nationwide Application of the TTPA Is Constitutional

Nor does application of the TTPA violate the U.S. Constitution. The Tennessee Supreme Court has ruled on the application and scope of the TTPA, Tenn. Code Ann. §§ 47-25-101, *et seq.*, in *Freeman Industries, LLC v. Eastman Chem. Co.*, 172 S. W. 3d 512, 517 (Tenn. 2005). There, the court declared that (1) "the plain language of [the TTPA] does not prohibit recovery to indirect purchasers who are non-residents of Tennessee," and (2) the TTPA reaches "anticompetitive conduct affect[ing] Tennessee trade or commerce to a substantial degree." *Id*. at 523. The *Freeman Indus.* decision comports with long-standing Tennessee precedent holding that the TTPA reaches interstate activities. *See generally Astor v. Schlitz Brewing Co.*, 59 S.W.2d 1033, 1039 (Tenn. 1900) (holding that "[t]he thing condemned and punished by the [TTPA] is injury to trade; and trade undeniably includes dealings in both imported and domestic commodities.").

Relying on *Freeman Indus.*, federal courts, including Judge Collier in his first reported *Skelaxin* ruling, have recently concluded that consumers in states outside Tennessee may bring suit under Tennessee's broad antitrust laws, so long as the anti-competitive conduct affected Tennessee commerce "to a substantial

8

degree." *See In re Skelaxin Metaxalone Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70968 (E.D. Tenn. May 20, 2013) and *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 2012 U.S. Dist. LEXIS 125677, *27 (E.D. Wis. Sept. 5, 2012). Thus, Tennessee's highest court and federal district courts in two Circuits, including the Sixth Circuit, have expressly sanctioned the right of consumers who are not residents of Tennessee to assert claims under Tennessee's antitrust law when there has been a substantial effect on Tennessee commerce.

*Freeman Indus.* was a case brought under the TTPA by a New York plaintiff. There, the court held that "an indirect purchaser may bring an action under Tennessee Code Annotated section 47-25-106 for conduct in violation of the TTPA *even though the indirect purchaser is a non-resident of this state*. *Freeman Indus.*, 172 S.W.3d at 520. To do so, residents of other states must allege that Tennessee commerce has been "substantially affected." *Id*. at 523-24. The test is a pragmatic one, turning upon the particular facts of the case. *See id.* at 523. The Court emphasized that the anti-competitive conduct "need not threaten the demise of Tennessee businesses or affect market prices" to meet the test. *See id.* at 523-24.

Similarly, in *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 2012 U.S. Dist. LEXIS 125677, *27 (E.D. Wis. Sept. 5, 2012), Arkansas Transit, an Arkansas resident, asserted claims on behalf of indirect purchasers in Arkansas, Florida, Minnesota, New Mexico and Tennessee against the defendants under the

9

Case 1:14-md-02508-HSM-CHS Document 190 Filed 10/20/14 Page 11 of 16
PageID #: 2030

TTPA, alleging that it conducted business in 48 states and purchased the relevant price-fixed sheet metal in many states. Defendants moved to dismiss, citing *Freeman Indus.*, because the conspiracy alleged was nationwide in scope, the defendants were Taiwanese and Texas companies and no defendant was located in Tennessee, and so, plaintiff failed to allege the conspiracy had a "substantial effect" on Tennessee commerce. Implicitly finding no "choice of law" concerns, the district court denied the motion, allowing the claims of the non-resident of Tennessee to go forward, holding that

> "[s]ince plaintiffs allege defendants engaged in a
> conspiracy to fix the price of AM parts sold in Tennessee
> and forced consumers in the state to pay unreasonably
> high prices, I conclude the complaint is sufficient to state
> a claim under the TTPA."

*Fond Du Lac*, 2012 U.S. Dist. LEXIS 125677, *16.

Before his class certification ruling in *Skelaxin*, Judge Collier's first denied a motion to dismiss based on the allegations in the plaintiffs' complaint. In *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343 (E.D. Tenn. May 20, 2013), the plaintiff pharmacies who were not residents of Tennessee and whose purchasers were made outside of Tennessee, sued two drug companies, King and Mutual, for violating the TTPA. King and Mutual maintained that the plaintiffs were not only non-residents, but also had no ties to the Tennessee market. *Id.* at p. 44. Judge Collier recognized that the defendants' arguments attempted to redirect

10

the Court's attention toward the conduct of the plaintiffs, but the TTPA, as explained in *Freeman*, "is primarily focused on the substantial effect of [d]efendants' conduct on Tennessee's commerce." *Id*.

Additionally, prevailing federal and state precedents support a state court's authority to certify and bind a multi-state class. 1 H. Newberg, *Newberg on Class Actions*, § 13.25 at 13-72 (3rd ed. 1992). The availability of the class action procedure in state courts was confirmed in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-23 (1985), holding that there is no constitutional impediment under the due process or full faith and credit clauses for a state court, in an action brought purely under state law, to bind out of state class members to the forum state's judgment. Although the Supreme Court has never fully articulated the exact nature of the contacts that would be sufficient to satisfy *Shutts*, cases describe the type of circumstances sufficient to apply a single state's laws. *See, e.g. In re Lilco Securities Litig.*, 111 F.R.D. 663, 670 (E.D. N.Y. 1986) (". . . without doubt, *Shutts* does not require us to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence.").

Put simply, to accept Defendants' constitutional arguments at this early stage in these proceedings would necessarily require this Court to altogether overrule the Tennessee Supreme Court's decision in *Freeman Industries*, where the Court

11

determined that adoption of the "substantial effects" test and permitting nonresidents to bring claims under the TTPA would not offend constitutional provisions. *See Freeman Indus.*, 172 S.W.3d at 523 ("We believe that a 'substantial effects' standard furthers the TTPA's goal of protecting Tennessee commerce without offending constitutional provisions.").

Defendants cite several cases in support of their constitutionality argument, but none of those decision aids their cause here. For instance, Defendants cite to several cases that predate *Shutts*.[8] Defendants then cite to a series of cases that are either factually distinguishable or involve non-Tennessee law. *Georgine v. Amchem Prods.,* 83 F.3d 610, 626 (3d Cir. 1996), for example, is factually distinguishable from this case. It was an asbestos case where "class members' claims vary widely in character. Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods." *In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005) was not a motion to strike class allegations. Like *Skelaxin*, it was decided after a fully briefed class certification motion. In *Zinser v. Accufix Research, Inc*., 253 F.3d 1180 (9th Cir. 2001) the plaintiff dropped his contention on appeal that California law applied to all class claims. Also, it was only not a motion to strike

---

[8] *See Home Ins. Co. v. Dick*, 281 U.S. 397 (1930), *John Hancock Mutual Life Insurance Co. v. Yates*, 299 U.S. 178 (1936), *Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143 (1934), and *Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981)

class allegations. *Rikos v. P&G*, 2012 U.S. Dist. LEXIS 25104, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) applied California law which does not have a Supreme Court decision analogous to *Freeman Indus*. The remaining cases cited by Defendants merely reiterate the holding of *Shutts*.

## CONCLUSION

For all of this, Defendants' motion to strike Consumer Plaintiffs' class action allegations should be denied.

Dated: October 20, 2014.

Respectfully submitted,

*Charles Barrett*
Charles Barrett
BARRETT LAW GROUP, P.A.
6518 Highway 100
Suite 210
(615) 515-3393
charles@cfbfirm.com

Gordon Ball
GORDON BALL PLLC
7001 Old Kent Drive
Knoxville, TN 37919
gball@gordonball.com
(865) 525-7028

*Consumer Lead Counsel*

John Mark Griffin
WARREN & GRIFFIN, P.C.
736 Georgia Avenue
Suite 600

13

Chattanooga, TN 37402
(423) 265-4878

*Consumer Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I, Charles Barrett, hereby certify that on October 20, 2014 sent a copy of the foregoing via ECF to all counsel of record.

    *Charles Barrett*
Charles Barrett
BARRETT LAW GROUP, P.A.