# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### CHATTANOOGA DIVISION

| | |
|---|---|
| IN RE: CAST IRON SOIL PIPE AND FITTINGS ANTITRUST LITIGATION | Case No. 1:14-md-2508<br>Judge Harry S. Mattice, Jr. |
| THIS DOCUMENT RELATES TO:<br>INDIRECT PURCHASER ACTION<br>CONSUMER ACTION | **JURY TRIAL DEMANDED** |

**INDIRECT PURCHASER PLAINTIFFS' AND CONSUMER PLAINTIFFS'
CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

    I.      PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS ....................2

          A.       Plaintiffs Have Article III Standing ............................................2

                1.       Class Certification Is 'Logically Antecedent' to Article III Standing Concerns ........................................................4

                2.       The Weight of Authority Supports Deferring Article III Standing Issues Until After Class Certification ............................5

          B.       Plaintiffs Have Antitrust Standing ...........................................11

                1.       Defendants Have Overstated the Application of *AGC* in Determining Antitrust Standing ....................................11

                2.       Even in the *AGC* Factors are Applied to Indirect Purchasers and Consumers' Antitrust Claims, Each of the Factors has been Satisfied ......................................................14

                        a.     *AGC* Factors as to Indirect Purchasers ..............................15

                          b.     *AGC* Factors as to Consumers .........................................18

    II.     PLAINTIFFS' ALLEGATIONS OF FRAUDULENT CONCEALMENT ARE SUFFICIENT TO TOLL THE APPLICABLE STATUTE OF LIMITATIONS ................................................................................23

    III.    PLAINTIFFS STATE CLAIMS UNDER STATE ANTITRUST, CONSUMER PROTECTION, AND UNJUST ENRICHMENT LAWS ............26

          A.       Plaintiffs Adequately Pled Claims Under California, Florida and Arkansas Law ...............................................................26

                1.       California ............................................................27

                  2.       Florida ................................................................30

                  3.       Arkansas ..............................................................34

           B.       Consumers State a Claim for Unjust Enrichment Under Arkansas Law ......................................................................37

          C.       Plaintiffs Have Pled All Elements of Their State Antitrust Claims ..........38

D.    Defendants' State Consumer Law Arguments Fail ...................................42

E.    Consumer Plaintiffs Can Pursue a Claim Under the TTPA.....................52

      1.    Choice-of-Law Principles and Constitutional Limitations
            Do Not Bar Consumers' TTPA Claim............................................52

      2.    Consumers Have Sufficiently Alleged "Substantial Effects"
            to State a Claim Under the TTPA .................................................53

F.    Consumers Have Adequately Pled an Unjust Enrichment Claim.............58

      1.    Consumers Need Only Plead Defendants Unjustly
            Received a Benefit as a Result of Their Conduct .........................58

      2.    Even if State Specific Allegations are Required, Consumers
            Have Sufficiently Alleged Unjust Enrichment .............................58

CONCLUSION..................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Aftermarket Filters Antitrust Litig.*,
  MDL No. 1957, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)...........................................42, 45

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................4, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................54

*Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
  459 U.S. 519 (1983)......................................................................................................... *passim*

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)................................................................................................................15

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-2311, 2013 WL 2456612 (E.D. Mich. June 6, 2013)................................... *passim*

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-2311, 2014 WL 2993742 (E.D. Mich. July 3, 2014)...........................................35

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-2311, 2014 WL 2993753 (E.D. Mich. July 3, 2014)..........................35, 58, 59, 60

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-2311, 2014 WL 4793848 (E.D. Mich. Sept. 25, 2014).....................35, 39, 40, 48

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................1, 29, 57

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ..............................................................................................59

*California v. ARC America Corp.*,
  490 U.S. 93 (1989).......................................................................................................1, 11, 12

*Campbell v. Upjohn Co.*,
  676 F.2d 1122 (6th Cir. 1982) ..............................................................................................24

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 326 (E.D. Mich. 2001) .......................................................................................33

iii

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ...................................................................23, 24

*Cascades Computer Innovation LLC v. RPX Corp.*,
    No. 12-cv-1143, 2013 WL 6247594 (N.D. Cal. Dec. 3, 2013)........................................28, 29

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ..........................................................5, 35, 45

*Clean Conversion Technologies, Inc., v. Cleantech Biofuels, Inc.*,
    No. 12-cv-239, 2012 WL 3585171 (S.D. Cal. Aug. 20, 2012)........................................27

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*,
    470 F.3d 286 (6th Cir.2006) ................................................................................3

*In re Copper Antitrust Litig*,
    436 F.3d 782 (7th Cir. 2006) ...............................................................................25

*Curtis Lumber Co., Inc. v. Louisiana Pacific Corp*,
    618 F.3d 762 (8th Cir. 2010) ...............................................................................36

*D.R. Ward Constr. Co. v. Rohm and Haas Co.*,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) ..............................................................21, 22

*Darush v. Revision LP et al.*,
    No. 12-cv-10296, 2013 WL 8182502 (C.D. Cal. July 16, 2013)....................................27, 29

*Davis v. Prison Health Servs.*,
    679 F.3d 433 (6th Cir.2012) ................................................................................3

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012)..........................................................5, 40, 47

*In re Ductile Iron Pipe Fittings*,
    No. 12-cv-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ....................................14, 22, 23, 49

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................19, 22

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ......................................................................... *passim*

*Ferrell v. Wyeth-Ayerst Labs. Inc.*,
    No. C-1-01-447, 2004 WL 6073010 (S.D. Ohio Jun. 30, 2004) .............................................6

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ........................................................... *passim*

*Flast v. Cohen,*
  392 U.S. 83 (1968) ............................................................................................... 2

*In re Flonase Antitrust Litig.,*
  284 F.R.D. 207 (E.D. Pa. 2012) .......................................................................... 51

*In re Flonase Antitrust Litig.,*
  610 F. Supp. 2d 409 (E.D. Pa. 2009) .................................................................. 55

*In re Flonase Antitrust Litig.,*
  692 F. Supp. 2d 524 (E.D. Pa. 2010) .................................................................. 33

*In re Florida Cement and Concrete Antitrust Litig.,*
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) .......................................................... 32, 33

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.,*
  Nos. 09-cv-852, 11-cv-162, 2012 WL 3841397 (E.D. Wis. Sept. 5, 2012) .................. *passim*

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.,*
  301 F.3d 329 (5th Cir.2002) .................................................................................. 5

*In re Graphics Processing Units Antitrust Litig.,*
  540 F. Supp. 2d 1085 (N.D. Cal. 2007) ......................................................... 13, 22

*Gratz v. Bollinger,*
  539 U.S. 244 (2003) ............................................................................................ 10

*Griffin v. Dugger,*
  823 F.2d 1476 (11th Cir. 1987) ............................................................................. 9

*GSI Technology, Inc., v. Cypress Semiconductor Corp.,*
  No. 11-cv-03613, 2012 WL 2711040 (N.D. Cal. July 6, 2012) .................... 27, 30, 48

*Harper v. LG Electronics USA, Inc.,*
  595 F. Supp. 2d 486 (D. N.J. 2009) .................................................................... 53

*Hovering v. Transnation Title Ins. Co.,*
  545 F. Supp. 2d 662 (E.D. Mich. 2008) ............................................................... 6

*In re Hydrogen Peroxide Antitrust Litig.,*
  401 F. Supp. 2d 451 (E.D. Pa. 2005) .................................................................. 43

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977) ..................................................................................... 1, 12, 22

*Jones v. TransOhio Sav. Ass'n,*
  747 F.2d 1037 (6th Cir. 1984) ............................................................................ 23

*State of Mich. ex rel. Kelley v. C.R. Equip. Sales, Inc.*,
   898 F. Supp. 509 (W.D. Mich. 1995) .................................................24

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ..........................................................28

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
   232 F.3d 979 (9th Cir. 2000) .......................................................15, 21

*Landworks Creations, LLC v. United States Fid. & Guar. Co.*,
   No. 05-cv-40072, 2008 WL 660341 (D. Mass. Feb. 6, 2008) ...............52

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005)................................................49

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-cv-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ....................... *passim*

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   202 F.R.D. 12 (D.D.C. 2001)............................................................10

*Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours and Co.*,
   No. 13-cv-1180, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014)............13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................3

*Lutz v. Chesapeake Appalachia, LLC*,
   717 F.3d 459 (6th Cir. 2013) ............................................................24

*In re Magnesium Oxide Antitrust Litig.*,
   No. 10-cv-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ................55

*Medison Am., Inc. v. Preferred Med. Sys., LLC*,
   357 Fed. App'x 656 (6th Cir. 2009) ..................................................55

*Meridian Project Systs, Inc. v. Hardin Const. Co., LLC*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005).........................................44, 48

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   350 F. Supp. 2d 1608 (D. Me. 2004) ...........................................35, 48

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-md-2143, 2012 WL 1366718 (N.D. Cal. April 19, 2012) .........50

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)....................................................................4, 5, 9

*Owen of Georgia, Inc. v. Shelby Cnty.*,
    648 F.2d 1084 (6th Cir.1981) ..........................................................................3

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010).............................................................47

*In re Packaged Ice*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)............................................... *passim*

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010)..................................................24, 26

*Parsons v. Bright House Networks, L.L.C.*,
    No. 09-cv-0267, 2010 WL 5094258 (N.D. Ala. Feb. 23, 2010)....................18

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) .........................................................................5

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    233 F.R.D. 229 (D. Mass. 2006)...............................................................42, 51

*Pinney Dock and Transport Co. v. Penn Cent. Corp.*,
    838 F.2d 1445 (6th Cir. 1988) .....................................................................14

*In re Polyurethane Foam Antitrust Litig.*,
    799 F. Supp. 2d 777 (N.D. Ohio 2011)................................................. *passim*

*In re: Pool Products Distribution Market Antitrust Litig.*,
    946 F. Supp. 2d 554 (E.D. La. 2013) .................................................30, 31, 48

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) .........................................43, 46, 52, 59

*Prudential Ins. Co. of Am. v. Bank of Am.*,
    No. 13-cv-1586, 2014 WL 1515558 (D. N.J. Apr. 17, 2014)........................53

*Re/Max Int'l, Inc. v. Realty One, Inc.*,
    173 F.3d 995 (6th Cir. 1999) .......................................................................20

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 09-md-2042, 2012 WL 2917365 (E.D. Mich. July 17, 2012).........7, 8, 9, 19

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 09-md-2042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ..................45

*RPS Corp. v. Owens-Corning Firberglass Corp.*,
    No. 83 C 9625, 1984 WL 1260 (N.D. Ill. Oct. 20, 1984)............................26

Case 1:14-md-02508-HSM-CHS    Document 202    Filed 11/10/14    Page 8 of 76
PageID #: 2163

*Ruth v. Unifund CCR Partners*,
    604 F.3d 908 (6th Cir. 2010) ................................................................26

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...............................................................................50, 51

*Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................45

*Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*,
    No. 07-cv-5295, 2008 WL 3833577 (D.N.J. Aug. 13, 2008) ............9, 39

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    299 F.R.D. 555 (E.D. Tenn. 2014) ...................................................53, 55

*Smith v. Lawyers Title Ins. Co.*,
    No. 07-cv-12124, 2009 WL 514210 (E.D. Mich. March 2, 2009) .........9

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 2101 (2012)......29

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ...........46

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................3

*In re Sulfuric Acid Antitrust Litig.*,
    743 F. Supp. 2d 827 (N.D. Ill. 2010) ...................................................25

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011).................................................................42

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ................................................9

*In re TFT-LCD Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...........................................40, 60

*in re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................... *passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    787 F. Supp. 2d 1036 (N.D. Cal. 2011) ...............................................35

*Venture Global Engineering, LLC v. Satyam Computer Servs., Ltd*,
    730 F.3d 580 (6th Cir. 2013) ...............................................................24

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010) ...............................................................60

*In re Warfarin Sodium Antitrust Litig.*,
    214 F.3d 395 (3d Cir. 2000)............................................................................20

*In re Wellbutrin SR Direct Purchaser Litig.*,
    No. 04-cv-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008)..................................10

*In Re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009)........................................................7, 8, 9, 57

*In re Wellbutrin XL Antitrust Litig.*,
    282 F.R.D. 126 (E.D. Pa. 2011)........................................................................33

*Williams v. Wells Fargo Bank, N.A.*,
    No. 11-cv-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011)...........................59

**State Cases**

*Baptist Health v. Murphy*,
    226 S.W.3d 800 (2006)........................................................34, 35, 36, 45

*Beckler v. Visa U.S.A., Inc.*,
    No. 09-04-C-30, 2004 WL 2115144 (N.D. Dist. Ct. Aug. 23, 2003) .....................13

*Campbell v. Asbury Auto., Inc.*,
    381 S.W.3d 21 (Ark. 2011)........................................................................37, 38

*Cellular Plus, Inc. v. Superior Court of San Diego County*,
    18 Cal. Rptr. 2d 308 (Cal. App. 4th Dist. 1993) ................................................27

*First Nat. Bank of DeWitt v. Cruthis*,
    203 S.W.3d 88 (Ark. 2005)..............................................................................38

*Fite v. Fite*,
    345 S.W.2d 362 (1961)...................................................................................37

*In re Florida Microsoft Antitrust Litig.*,
    No. 99-cv-27340, 2002 WL 31423620 (Fla. Cir. Ct. Aug. 26, 2002) .....................34

*Freeman Industries, LLC v. Eastman Chemical Co.*,
    172 S.W.3d 512 (Tenn. 2005)........................................................54, 55, 56, 57

*Fucile v. Visa, U.S.A., Inc.*,
    No. S15600-03, 2004 WL 3030037 (Vt. Super. Ct. Dec. 27, 2004)........................13

*Hataway v. McKinley*,
    830 S.W.2d 53 (Tenn. 1992)............................................................................53

*Hatchell v. Wren*,
    211 S.W.3d 516 (Ark. 2005) ........................................................................37

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*,
    148 P.3d 1179 (Haw. 2006) .......................................................................46

*Ho v. Visa, U.S.A., Inc.*,
    787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004) ...................................................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................29, 30

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007)............................................................20, 22

*Mack v. Bristol-Myers Squibb Co.*,
    673 So.2d 100 (Fla. Dist. Ct. App. 1996) ................................................30

*Norwest Mortgage, Inc. v. Sup. Ct.*,
    85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999) ................................................48

*Peterson v. Visa U.S.A., Inc.*,
    No. 03-cv-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) ...................13

*Robinson v. EMI Music Distribution, Inc.*,
    No. L-10462, 1996 WL 49555 (Tenn. Cir. Ct. July 8, 1996) .................................42

*Robinson v. EMI Music Distribution, Inc.*,
    No. L-10462, 1996 WL 495551 (Tenn. Cir. Ct., July 8, 1996) ........................51

*In re Skelaxin Metaxalone Antitrust Litig.*,
    No. 12-md-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013) ...................54, 55

*Slobin v. Henry Ford Health Care*,
    666 N.W.2d 632 (Mich. 2003)....................................................................47

*Smith v. Whitener*,
    856 S.W.2d 328 (Ark. 1993)......................................................................38

*Southard v. Visa U.S.A., Inc.*,
    734 N.W.2d 192 (Iowa 2007) ...................................................................13

*Sperry v. Crompton Corp.*,
    863 N.E.2d 1012 (N.Y. App. Div. 2006) ................................................60

*Stark v. Visa, U.S.A., Inc.*,
    No. 03-55030, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ........................13

x

*Strang v. Visa U.S.A., Inc.*,
    No. 03-11323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ............................13

*Wallis v. Ford Motor Company*,
    208 S.W.3d 153 (Ark. 2005)..............................................................................36, 37

**State Statutes**

Ark. Code Ann. § 4-88-107(a)(10) ............................................................................36

Ark. Code Ann. § 4-75-201 ......................................................................................41

Ark. Code Ann. § 4-75-202 ......................................................................................41

Ark. Code Ann. § 4-75-211 ......................................................................................41

Ark. Code Ann. § 4-75-315 ......................................................................................41

Ark Code Ann. § 4-88-101 .......................................................................................35

Ark. Code Ann. § 4-88-107(a)(10) ...........................................................................36

Cal. Bus. & Prof. Code § 16720. ..............................................................................27

Cal. Bus. & Prof. Code § 16750 ...............................................................................18

Cal. Bus. & Prof. Code § 17200. ..............................................................................27

Fla. Stat. § 501.201 ...................................................................................................30

Mass. Gen. Laws. Chapter 93A § 9(3)......................................................................52

Miss. Code Ann. § 75-24-15 .....................................................................................52

Miss. Code Ann. § 75-24-15(4) ................................................................................51

Mont. Code § 30-14-133(1) ......................................................................................51

Nev. Rev. Stat. § 41.600 ...........................................................................................47

R.I. Gen. Laws § 6-36-12(g) .....................................................................................38

S.C. Code Ann. § 39-5-140(a) ..................................................................................51

Tennessee Code Annotated § 47-25-106 ...................................................................55

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................1, 43

Fed. R. Civ. P. 9(b) ...............................................................................................43, 44

Fed. R. Civ. P. 12(b)(6) .............................................................................................53

Fed. R. Civ. P. 23 .............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(3) ..............................................................................................10

Indirect Purchaser Plaintiffs and Consumer Plaintiffs[1] respectfully submit this brief in opposition to the motions to dismiss filed by Defendants McWane and Charlotte Pipe.[2]

## INTRODUCTION

With their motions, Defendants ask this Court to dismiss the state law claims of Indirect Purchasers and Consumers despite the fact that Plaintiffs have clear constitutional and antitrust standing to bring these claims and have more than adequately pled claims for relief under various state laws.

Defendants imply Plaintiffs presence in this litigation is somehow novel or unique. It is not. Modern antitrust litigation routinely involves plaintiff groups such as Indirect Purchasers and Consumers here. Originally under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), only direct purchasers were accorded standing to bring claims under federal antitrust law, leaving indirect purchasers without recourse.

State legislatures responded by enacting "*Illinois Brick* Repealer" statutes expressly permitting indirect purchasers to maintain a claim for damages under state antitrust acts. Other states allow indirect purchasers to bring suit pursuant to their consumer protection statutes. The Supreme Court endorsed this approach in *California v. ARC America Corp.*, 490 U.S. 93 (1989). As a result, federal courts routinely entertain state law claims involving anti-competitive conduct. Plaintiffs' claims are based on this well-founded body of law.

The issue before this Court is simply whether Plaintiffs have adequately pled their claims. They have.[3] Defendants' motions should be denied.

---

[1] Indirect Purchaser Plaintiffs are Plaintiffs Craig Mechanical, Inc. and Keith McNeill Plumbing Contractor, Inc. and Consumer Plaintiffs are Jerry Adkins and Rena Lundmark.

[2] In addition, Plaintiffs hereby oppose the Joinder filed by Cast Iron Soil Pipe Institute ("CISPI" and together with McWane and Charlotte Pipe "Defendants") on October 13, 2014.

1

# ARGUMENT

## I. PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

### A. Plaintiffs Have Article III Standing

Defendants assert that Plaintiffs do not have Article III standing to bring claims on behalf of absent class members in states where named Plaintiffs do not reside. D.E. 179 at 7-15, PageID#: 1841-1849; D.E. 184 at 26-28, PageID#: 1921-1923. This argument conflates two separate legal concepts, Article III standing and the adequacy and typicality requirements for class certification under FED. R. CIV. P. 23. Further, Defendants' position is belied by binding Sixth Circuit authority as well as overwhelming case law from federal courts throughout the country which firmly support the proposition that the absence of a class representative for a given state does not warrant dismissal of state law claims at the pleadings stage. Such issues of standing are properly deferred until the Court makes its class certification determination pursuant to Rule 23.

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). To demonstrate Article III standing, a plaintiff must first allege that he has (1) suffered an injury that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) the alleged injury must be fairly traceable to the defendant's conduct, and not the result of the independent action of a third party; and (3) the plaintiff must allege that a favorable federal court decision is likely to redress the alleged

---

[3] Plaintiffs hereby incorporate by reference the Direct Purchaser Plaintiffs' ("Directs") brief in opposition to Defendants' motions to dismiss. In addition, Plaintiffs attach hereto Appendix A, which provides specific citations to allegations in Plaintiffs' respective complaints that mirror the allegations cited by Directs in their brief and which demonstrate that Plaintiffs have satisfied the notice pleading requirements set forth in Federal Rule of Civil Procedure 8 and explained by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

injury. *In re Automotive Parts Antitrust Litig.*, No. 12-md-2311, 2013 WL 2456612, at *8 (E.D. Mich. June 6, 2013) ("*Auto Parts*") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs here allege that Defendants engaged in a nationwide conspiracy to fix, maintain and charge them, and the members of the putative classes, supracompetitive prices for Cast Iron Soil Pipe. D.E. 124 ¶¶ 25-36, 70 PageID#: 1184-1186, 1192-1196; D.E. 121 ¶ 1-15, 80-96, PageID#: 1072-1075, 1090-1095. Plaintiffs suffered a monetary injury by paying more than they otherwise would have absent Defendants' unlawful conduct, which constitutes actual harm. D.E. 124 ¶¶ 12-13, PageID #: 1181-1182; D.E. 121 ¶¶ 12-13, PageID#: 1074. Plaintiffs seek relief from the Court in the form of damages accounting for the supracompetitive prices Plaintiffs paid as a result of Defendants' anticompetitive conduct. D.E. 124, PageID#: 1221; D.E. 121, PageID#: 1138-1139. This is all that is required to establish the named plaintiffs' Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-104 (1998) (noting triad of injury in fact, causation and redressability as core of Article III's case-or-controversy requirement); *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 294 (6th Cir.2006) *overruled on other grounds* as recognized by *Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir.2012) (citing *Owen of Georgia, Inc. v. Shelby Cnty.*, 648 F.2d 1084, 1089 (6th Cir.1981)) (Defendant's refusal to allow Plaintiff to bid on contract allegedly caused Plaintiff to suffer an economic injury, which is sufficient to confer standing upon a party).

Thus, despite Defendants' arguments to the contrary, this is not a case where Plaintiffs are piggybacking on the injuries of unnamed class members and do not have standing themselves. Plaintiffs have suffered an injury as a result of Defendants' unlawful conspiracy and

3

they have sought appropriate relief from this Court.  Once Plaintiffs have established individual

Article III standing, the Court should then proceed to its Rule 23 criteria to determine whether,

and to what extent, Plaintiffs may serve in a representative capacity on behalf of the classes they

seek to represent.  *See* 1 William B. Rubenstein et al., Newberg on Class Actions §2:6 (5th ed.

2011).  Whether Plaintiffs can represent absent class members is not a standing issue nor an

Article III case or controversy issue "but depends rather on meeting the prerequisites of Rule 23

governing class actions."  1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, §

2.7, at 2-40-41 (4th ed. 2009).[4]

### 1.    Class Certification Is 'Logically Antecedent' to Article III Standing Concerns

Defendants do not seriously contest that Plaintiffs have Article III standing in the states in

which they reside.  Thus, Defendants' objection to Article III standing arises only in the class

action context.   While Defendants are correct that Courts generally address challenges to

standing as threshold matters, in class actions, however, the Supreme Court has crafted an

exception to this general rule where courts may evaluate class certification issues before Article

III standing concerns if the former are "logically antecedent" to the latter. *Ortiz v. Fibreboard

Corp.*, 527 U.S. 815 (1999) (class certification issues are "logically antecedent" to Article III

concerns, and pertain to statutory standing, which may be properly treated before Article III

standing) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)).  Thus, "the issue about

Rule 23 certification should be treated first, 'mindful that the Rule's requirements must be

interpreted in keeping with Article III constraints.'"  *Ortiz*, 527 U.S. at 831.  This follows the

---

[4] *See also* 7AA Charles Alan Wright, et al., Federal Practice and Procedure §1785.1 (3d ed. 2010) (once named plaintiff establishes his own standing, "whether he will be able to represent the putative class . . . depends solely on whether he is able to meet the additional criteria encompassed in Rule 23").

4

long-standing rule that "once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Accordingly, Rule 23 certification should be addressed first in cases where the possibility of class certification gives rise to the jurisdictional issue as to standing. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 n. 2 (5th Cir.2002). Here, where Plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, the standing issue would not exist but for their assertion of state law claims on behalf of class members in these states. *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579 (M.D. Pa. 2009). Therefore, under *Ortiz*, these class certification issues are "logically antecedent" to the standing concerns, and the court can and should defer ruling on Article III standing until class certification proceedings. *Id*. at 579-580.

### 2. The Weight of Authority Supports Deferring Article III Standing Issues Until After Class Certification

There is a "growing consensus among district courts that class certification is 'logically antecedent' where its outcome will affect the Article III standing determination, and the weight of authority holds that in general class certification should come first."[5] *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 213 (S.D.N.Y. 2012). District courts in the Sixth Circuit are no exception. The courts of this Circuit have been guided by the Circuit Court's decision in *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998), where the Court of Appeals held that standing inquiries of this nature should not take place prior to class certification in a directly analogous context.

---

[5] *See* Appendix B, Survey Of District Court Opinions.

In *Fallick*, a plaintiff brought a proposed class action seeking to represent members of several of defendant's benefit plans, even though he only belonged to one. *Id.* at 413. The district court held that Fallick lacked standing under Article III to represent participants in benefit plans other than his own. *Id.* at 421. The Sixth Circuit reversed, finding that the district court's decision "confuses the requirements of Article III and Rule 23" and that once a named plaintiff established individual standing, his capacity to seek relief for absent class members should be determined in accord with Rule 23. *Id.* at 421, 423.

District courts of this Circuit have not hesitated to follow *Fallick* when addressing whether a named plaintiff may properly seek relief for absent class members under the laws of numerous states, deferring such a consideration until the Rule 23 analysis. *See, e.g., Ferrell v. Wyeth-Ayerst Labs. Inc.*, No. C-1-01-447, 2004 WL 6073010, at *3 (S.D. Ohio Jun. 30, 2004) (acknowledging Court is "bound to follow *Fallick*" and finding named plaintiff has standing to prosecute her own claims and the propriety of her representation of absent class members residing in other states should be analyzed under Rule 23).[6] Indeed, the Court in *Polyurethane* perceptively observed: "If this Court grants class certification, the resulting class will contain individuals with standing to pursue claims under each of the state law claims. In the alternative, if this Court denies class certification, the [named plaintiffs] will be limited to pursue claims

---

[6] *See also Hovering v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 667 (E.D. Mich. 2008) (decision on class certification logically antecedent to determination of standing: "[e]ven if the plaintiff has standing to assert claims in this jurisdiction (which is not challenged here), to proceed as a representative of a class he must still establish that his claim is typical of those individuals whose claims arise under the laws of other states and he can represent those individuals adequately" under FED. R. CIV. P. 23.); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011) (relying on *Fallick* and finding that a determination of whether indirect purchaser plaintiffs may, as class representatives, advance their state antitrust and consumer protection claims for each state from which putative class members are drawn will be made at class certification).

under the state antitrust and consumer protection statutes of the jurisdiction in which they reside. In either case, the supposed standing deficiencies will be resolved."  799 F. Supp. 2d at 805-806.

More recently, in *Auto Parts*, the District Court for the Eastern District of Michigan, relying in part on *Fallick*, addressed the constitutional standing of indirect purchasers to pursue claims resulting from an alleged price-fixing scheme in states where no named plaintiff resided under strikingly similar circumstances as the case at bar. *Auto Parts*, 2013 WL 2456612, at *2. In its opinion, denying in part defendants' motions to dismiss, the court addressed, among other things, whether the indirect purchasers had constitutional standing to pursue claims in states where no named plaintiff resided.

Finding the holdings in *In re Refrigerant Compressors Antitrust Litig.*, No. 09-md-2042, 2012 WL 2917365 (E.D. Mich. July 17, 2012) and *In re Packaged Ice*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) unpersuasive, the court in *Auto Parts* ultimately cited to *Fallick* and its progeny and found that "the better path is to defer [the standing] issue until the class certification stage." *Auto Parts*, 2013 WL 2456612, at *11-12.  In reaching its decision, the Court noted that Indirect Purchaser Plaintiffs "advance claims for relief under the statutes of the jurisdictions in which they reside but seek similar relief for absent class members under the antitrust and consumer protection statutes of other states. The plaintiffs do not seek relief for themselves under the laws of the states where no plaintiff resides." *Id*. at *11.  The Court acknowledged that its decision permitted the indirect purchasers to engage in discovery regarding alleged violations of state laws in the absence of absolute certainty that any individual suffered an injury under those laws (a concern noted in *In Re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) ("*Wellbutrin XL*") but found that "the nature of the claims, however, provides the Court with ample reason to address the standing issues in the context of class certification."  *Id*.

Here, as in *Auto Parts*, Indirect Purchasers allege injury based on defendants' nationwide price-fixing scheme in a distinctly similar market[7] and they advance claims for relief under the statutes of the jurisdictions where they reside and seek similar relief for absent class members under comparable antitrust and consumer protection statutes of other states. The court in *Auto Parts* found that such claims warranted deferring Article III standing issues until after class certification, despite any concerns about class-wide discovery raised in *Wellbutrin*, *Compressors* and *Packaged Ice*.

A similar result is warranted here. Plaintiffs are not contending that they need not show individual Article III standing, which they submit has been sufficiently established through their pleadings. After that has been established, however, the Court need only concern itself with the class certification requirements of Rule 23 prior to determining if Article III standing is warranted with respect to Plaintiffs' remaining state law claims. At class certification, the Court will determine, among other things, whether Plaintiffs are adequate to represent plaintiffs with claims under the laws of states where Plaintiffs do not reside and whether the claims of the Plaintiffs are typical of the claims of plaintiffs in states where Plaintiffs do not reside. These are decisions that must be made at the class certification stage.

In the face of overwhelming authority both nationwide and in the Sixth Circuit, including the analogous *Fallick* and *Auto Parts* decisions, Defendants attempt to create out of whole cloth the urgency to address these standing issues prior to class certification and otherwise try to manufacture panic at the prospect of class-wide discovery without providing the slightest bit of

---

[7] Among other things, the Court in *Auto Parts* outlined market conditions that mirror the CISP market alleged here. *See Id*. at *4 and Appendix A.

supporting detail.[8]   In support of their argument, Defendants blatantly ignore *Fallick* and *Auto Parts* and rely largely on non-binding, easily distinguished authority from outside the Sixth Circuit[9] and the *Compressors* and *Packaged Ice* opinions which (1) are in the minority on the standing issue, (2) failed to discuss *Fallick* or its ilk, and (3) were found unpersuasive by *Auto Parts*.[10]

At bottom, Defendants are not merely asking the Court to ignore the vast amount of authority running contrary to their position. They are also asking the Court to ignore the vigorous

---

[8] *See, e.g.*, D.E. 179 at 14, PageID #: 1848, asserting, without citation, that class discovery would result in a "wide-ranging expedition."

[9] Notably, Defendants cite to *Wellbutrin XL* for the unsubstantiated proposition that allowing all of Plaintiffs' state claims to proceed would result in "lengthy class discovery with respect to injuries in potentially every state in the Union." D.E. 179 at 13, PageID#: 1847.  As an initial matter, Defendants well know that Plaintiffs would not be seeking discovery in "every state in the Union" but merely those states identified in their respective complaints that allow Indirect Purchaser and Consumers to recover for their injuries. Moreover, Defendants do not elaborate on exactly why or how such discovery would be so lengthy and burdensome.    In addition, as addressed *supra*, the court in *Auto Parts* rejected the *Wellbutrin XL* court's concerns about class-wide discovery, finding that the plaintiffs' claims (similar to those alleged here) warranted deferring standing issues until class certification.  Defendants also hold out *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 (S.D. Fla. 2001) as "instructive." D.E. 179 at 13, PageID #: 1847. Yet *Terazosin*  has been discredited for not having followed relevant Supreme Court precedent. Namely, the court in *Terazosin* incorrectly relied on *Griffin v. Dugger*, 823 F.2d 1476 (11th Cir. 1987), a decision predating *Amchem* and *Ortiz*.  *See Sheet Metal Workers Nat'l Health Fund v. Amgen, Inc.*, No. 07-cv-5295, 2008 WL 3833577, at *9 (D.N.J. Aug. 13, 2008) ("Although in *Terasozin,* the Southern District of Florida dismissed certain state law antitrust claims for lack of Article III standing before it decided whether the class should be certified, Supreme Court precedent on the correct order of addressing these issues is to the contrary").

[10] The only other Sixth Circuit case that Defendants cite for the proposition that named plaintiffs in indirect purchaser antitrust actions lack standing to assert class claims under the laws of state where they do not reside or were not injured is *Smith v. Lawyers Title Ins. Co.*, No. 07-cv-12124, 2009 WL 514210, at *3 (E.D. Mich. March 2, 2009).  *Smith* is inapposite here.  In *Smith,* plaintiff brought claims under*, inter alia*, the consumer protection statute of Michigan, his home state, as well as the state laws of various other states.  The court in *Smith* accepted and adopted a Magistrate's Report and Recommendation which found that plaintiff's claim under Michigan's consumer protection law was precluded by the insurance code and should be dismissed.  Claims for class certification on the consumer protection statute violations and related relief were moot. *Id*. at *1.

analysis it is required to undertake at the class certification stage just because Plaintiffs assert claims under the laws of states where they don't reside or were not injured. Yet, as Plaintiffs assert, and Defendants essentially concede,[11] the state laws under which Plaintiffs bring their claims are virtually all the same and Plaintiffs' state law claims all stem from Defendants' nationwide price-fixing conspiracy. There is no requirement in Article III, or Rule 23 for that matter, that a named plaintiff have the exact same claim as absent class members and Defendants can point to no authority stating as much. *See Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (holding that Article III did not require named plaintiff and class members to have the same claim and that it was sufficient that "the University's use of race in undergraduate transfer admissions does not implicate a significantly different set of concerns than does its use of race in undergraduate freshman admissions.").[12]

Moreover, the "claim by claim" analysis Defendants suggest (D.E. 179 at 9, PageID #: 1843) defies the plain terms of Rule 23, which provides that a named plaintiff may represent the class if their claims are "typical" of the claims of the class. *See also In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001) ("[T]here is nothing in Rule 23(a)(3) which requires named plaintiffs to be clones of each other or clones of other class members") (internal citation omitted); *In re Wellbutrin SR Direct Purchaser Litig.*, No. 04-cv-

---

[11] Defendants do not dispute the similarity between and among the state statutes. *See* D.E. 184 at 10 n 5, PageID#: 1905 ("…the various state laws under which the Downstream Purchasers' seek relief are interpreted *in pari materia* with the Sherman Act with regard to price-fixing claims. Consequently, this Brief evaluates the sufficiency of the Plaintiffs' price-fixing allegations under decisions applying Sherman Act § 1 –arguments that apply with equal force to the Downstream Purchasers' state price-fixing claims").

[12] The Court in *Gratz* also noted that the challenged class action at issue in that matter, which involved a class representative with an arguably different claim but the "same set of concerns" as the members of the class, saved "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." 539 U.S. at 268 & n.17.

5525, 2008 WL 1946848, at *3 (E.D. Pa. May 2, 2008) (A class plaintiff need only have a claim that is typical of absent class members, a standard that is met in "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class … irrespective of the varying fact patterns underlying the individual claims").

In light of the foregoing, the Court should find individual Article III standing with respect to Plaintiffs and should defer Article III standing with respect to Plaintiffs' remaining state law claims until after the Court's decision on class certification.

**B. Plaintiffs Have Antitrust Standing**

Defendants broadly assert that Plaintiffs' claims under state antitrust law must be dismissed for lack of antitrust standing. In particular, Defendants' claim that the five factor test enunciated in *Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) ("*AGC*") should apply to test Plaintiffs' standing in nearly all of its state antitrust claims. D.E. 184 at 28, PageID#: 1923. This argument, however, should be rejected as Defendants have oversimplified and overstated the impact of *AGC*. Moreover, even if the Court were to apply the *AGC* factors to some or all of their state antitrust claims, Indirect Purchasers and Consumers have alleged facts sufficient to establish antitrust standing.

**1. Defendants Have Overstated the Application of *AGC* in Determining Antitrust Standing**

Defendants' attempt to blankly apply *AGC* to bar Plaintiffs' state antitrust claims is without merit. As an initial matter, Plaintiffs' antitrust claims have been raised pursuant to state law, not federal law. *See California v. ARC America Corp.*, 490 U.S. 93, 105-106 (1989) ("*ARC America*") (holding that state indirect purchaser statutes are not preempted by federal law).[13] As

---

[13] State law competition statutes exist independently of federal antitrust law and should be given effect by this Court. This is illustrated by the Supreme Court's decision in *ARC America*. There, direct purchaser plaintiffs argued that the indirect purchaser plaintiffs had no claim to the funds

such, the standard set forth by the Supreme Court in *AGC*, which only concerns standing for federal antitrust claims, only applies to state antitrust laws where that standard has been explicitly adopted by each state. *See In re Automotive Parts Antitrust Litig.*, No. 12-cv-2311, 2013 WL 2456612, at *14 (E.D. Mich. June 6, 2013) (holding that "[t]he issue of applicability of *AGC* is one that is governed by state law"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-cv-2420, 2014 WL 4955377, at *7 (N.D. Cal. Oct. 2, 2014) ("antitrust standing under state law is just that, a matter of state law"); *see also in re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (N.D. Cal. 2008) ("*TFT-LCD*") (holding that it is "[i]nappropriate to broadly apply the *AGC* test to plaintiffs' claims … in the absence of a clear directive from those states' legislatures or highest courts").

Defendants concede that *AGC* does not apply to the antitrust claims under Arkansas, Minnesota, South Carolina and Tennessee laws, and accordingly, Defendants have not challenged antitrust standing as to those states. D.E. 184 at 29 n.12, PageID#: 1924. Defendants, however, argue that twenty-three of the twenty-seven states under which Plaintiffs have asserted antitrust claims are subject to the *AGC* factors. *Id.*; D.E. 184 at D-1, PageID#: 1956. With respect to these states, Defendants have greatly overstated each state's position as to *AGC*. For Alabama, Arizona, California, Hawaii, Mississippi and North Carolina, Defendants

---

because awarding any remedy pursuant to state indirect purchaser statutes was prohibited by the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The Supreme Court rejected this position. The Court framed the issue as "whether this rule limiting recoveries under the Sherman Act also prevents indirect purchasers from recovering damages flowing from violations of state law, despite express state statutory provisions giving such purchasers a damages cause of action." *ARC America*, 490 U.S. at 100. The Court decided that indirect purchasers may recover under state laws providing for damages causes of action. The Court said that it is inappropriate to view Congressional policies or Supreme Court precedent as "defining what federal law allows states to do under their own antitrust law," and that "nothing in *Illinois Brick* suggests that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws." *Id.* at 103.

have ignored more persuasive authority that undermines the suggestion that *AGC* should apply. *See* Appendix C.1. For Arizona, Washington D.C., Hawaii, Michigan, Nebraska, Oregon, Rhode Island, South Dakota, Utah, Vermont, and West Virginia, Defendants have cited to statutes which suggest that state antitrust laws should be harmonized with federal antitrust law. These statutes, however, do not by themselves support the overarching application of *AGC* that Defendants seek, given statutory language which does not mention *AGC* or antitrust standing or where certain state statutes allow indirect purchasers to sue for harm as a result of price-fixing, but where no corollary exists under federal law. *See Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours and Co.*, No. 13-cv-1180, 2014 WL 4774611, at *6 (N.D. Cal. Sept. 22, 2014) (holding that statutory harmonizing provisions should not be the sole basis for the application of *AGC*); Appendix C.2.

Lastly, for the District of Columbia, Iowa, Michigan, New York, North Dakota, Vermont and Wisconsin, Defendants have cited caselaw which is inapplicable to the instant matter, and Defendants have ignored decisions where courts declined to apply the *AGC* factors when determining standing under a state's antitrust laws.[14] Given Defendants' disregard of prevailing

---

[14] The cases cited by Defendants all address antitrust standing where the plaintiffs were not indirect purchasers and had a more remote relationship to the defendants. *See Peterson v. Visa U.S.A., Inc.*, No. 03-cv-8080, 2005 WL 1403761, at *2 (D.C. Super. Ct. Apr. 22, 2005); *Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 196-197 (Iowa 2007); *Stark v. Visa, U.S.A., Inc.*, No. 03-55030, 2004 WL 1879003, at *4 (Mich. Cir. Ct. July 23, 2004); *Ho v. Visa, U.S.A., Inc.*, 787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004); *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-30, 2004 WL 2115144, at *3 (N.D. Dist. Ct. Aug. 23, 2003); *Fucile v. Visa, U.S.A., Inc.*, No. S15600-03, 2004 WL 3030037, at *2 (Vt. Super. Ct. Dec. 27, 2004); *Strang v. Visa U.S.A., Inc.*, No. 03-11323, 2005 WL 1403769, at *3 n.7 (Wis. Cir. Ct. Feb. 8, 2005). Moreover, courts that have addressed antitrust standing under the laws of these states and others have declined to apply the *AGC* factors. *See In re Lithium Ion Batteries*, 2014 WL 4955377, at *8-11 (declining to apply *AGC* to District of Columbia, Kansas, Maine, Michigan, North Dakota, Oregon, Vermont, West Virginia, and Wisconsin antitrust laws); *In re Graphics Processing Units*, 540 F. Supp. 2d at 1097 (declining to apply *AGC* to District of Columbia, Maine, Michigan, and South Dakota antitrust laws); *In re Flash Memory*, 643 F. Supp. 2d at 1151-1153 (declining to apply *AGC* to Kansas,

authority and their reliance on unpersuasive statutory language and inapposite cases, Defendants have not established that the *AGC* factors apply to the states under which Plaintiffs raise antitrust claims. Accordingly, this Court should reject outright Defendants' argument as to antitrust standing.

### 2. Even if the *AGC* Factors are Applied to Indirect Purchasers and Consumers' Antitrust Claims, Each of the Factors has been Satisfied

Even if the Court were to apply *AGC* to any or all of Indirect Purchasers and Consumers' state antitrust claims, Plaintiffs have standing to pursue their claims. In *AGC*, "the Supreme Court articulated a number of factors that courts should consider in analyzing the relationship between a plaintiff's harm and a defendant's wrongdoing: (1) the casual connection between the violation and the harm, and whether the harm was intended; (2) the nature of the injury and whether it was one Congress sought to redress; (3) the directness of the injury, and whether damages are speculative; (4) the risk of duplicative recovery or complexity of apportioning damage; and (5) the existence of more direct victims." *Auto Parts*, 2013 WL 2456612, at *14 (quoting *AGC*, 459 U.S. at 537-545); *see also Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1462 (6th Cir. 1988) (*AGC* factors reflect that antitrust standing doctrine is rooted in the common law concepts of proximate cause, directness of injury and certainty of damages). "A plaintiff need not prevail on every factor, instead, the courts balance the factors, 'giving great weight to the nature of the plaintiff's alleged injury.'" *Auto Parts*, 2013 WL 2456612, at *14 (quoting *AGC*, 459 U.S. at 537-545). As set forth in detail below, the Complaint alleges facts which satisfy each of the *AGC* factors, and thus, Indirect Purchasers and Consumers have established antitrust standing.

---

Maine, Michigan, Nevada, New Mexico, South Dakota, West Virginia, and Wisconsin antitrust laws); *In re Ductile Iron Pipe Fittings*, No. 12-cv-169, 2013 WL 5503308, at *15-16 (D.N.J. Oct. 2, 2013) (declining to apply *AGC* to New York and North Dakota antitrust laws).

14

a.     *AGC* **Factors as to Indirect Purchasers**

(1)     **Causal connection between harm and violation**

Indirect Purchasers clearly allege a causal connection between Defendants' price-fixing conspiracy and harm to Indirect Purchasers.  In particular, Indirect Purchasers allege that through agreements regarding CISP price levels and agreements not to compete, "Defendants have artificially inflated the price of CISP … [and] proximately and foreseeably caused Plaintiffs and the members of the Class to suffer injuries by forcing Plaintiffs and the Class to pay artificially inflated prices for CISP throughout the Class Period."   D.E. 124 ¶¶ 4-6, PageID#: 1179.  Defendants fixed and maintained prices at supracompetitive levels in spite of market conditions that should have brought prices down.  D.E. 124 ¶¶ 70-74, PageID#: 1192-1199.  Moreover, in an effort to reduce competition and further the price-fixing conspiracy, Indirect Purchasers allege that Charlotte purchased the CISP assets of a competitor, Star Pipe, and then shut down its operation.   D.E. 124 ¶¶ 30-35, 76-79, PageID#: 1185-1186, 1200-1201.   As a result of Defendants' actions, "Plaintiffs and other Class members have been harmed by being forced to pay higher prices for CISP than they otherwise would have paid in the absence of Defendants' conspiracy." D.E. 124 ¶ 129, PageID#: 1213.  Accordingly, Indirect Purchasers have adequately alleged that Defendants' conduct caused them injury, and the first *AGC* factor has been satisfied.

(2)     **Nature of injury**

Indirect Purchasers have also sufficiently alleged that they suffered an antitrust injury.  As set forth above, Indirect Purchasers allege that Defendants engaged in a price-fixing conspiracy, which is squarely an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *Atlantic Richfield Co. v. USA Petroleum*

*Co.*, 495 U.S. 328, 334 (1990)); *see* D.E. 124 ¶¶ 103-111, 115, PageID#: 1208-1210 (alleging the antitrust injury suffered by Indirect Purchasers as a result of Defendants' agreements to fix prices and restrain competition).

In assessing whether an antitrust injury was suffered, the court may look to the "relevant market" and whether plaintiff was a participant in that market. *See Auto Parts*, 2013 WL 2456612, at *15. Defendants cannot credibly argue that Indirect Purchasers are not a participant in the CISP market. In pertinent part, the Complaint alleges that the relevant market "is the market for the sale of CISP for use in commercial, industrial, multi-story residential buildings and other construction in the United States." D.E. 124 ¶ 113, PageID#: 1210. CISP is used in construction projects for sanitary and storm drain piping, and CISP is purchased by plumbing wholesalers and then resold to construction companies, plumbers and developers. Moreover, CISP "is generally shipped directly to the job site from the manufacturer[.]" D.E. 124 ¶¶ 55-66, PageID #: 1190-1191. In particular, Indirect Purchasers allege that they purchased CISP from direct purchasers (or wholesalers) for use in construction projects. D.E. 124 ¶ 8 n.1, PageID#: 1180; *see also* D.E. 124 ¶¶ 12-13, PageID#: 1181-1182 (Indirect Purchasers are plumbing contractors who handle commercial and industrial plumbing projects and who have purchased from wholesalers CISP that was manufactured by Defendants). And as referenced above, Indirect Purchasers were harmed by the higher CISP prices that they faced as a result of Defendants' conspiracy. Accordingly, Indirect Purchasers have adequately alleged that they were participants in the CISP market and have satisfied this *AGC* factor. *See Auto Parts*, 2013 WL 2456612, at *15-16 (indirect purchaser plaintiffs bought vehicles that contained wire harness systems, not the systems themselves, yet the court still found that plaintiffs had satisfied the antitrust injury/market participant factor).

16

### (3) Directness of injury

Indirect Purchasers have further alleged a sufficiently direct injury. As interpreted, this factor refers to a "chain of causation." *See Auto Parts*, 2013 WL 2456612, at *17 (holding that allegations that the product at issue remained "essentially unchanged" from defendant manufacturer to indirect purchaser and could be "traced through the chain of distribution" were sufficient to satisfy this *AGC* factor); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *14 (allegations that show "a distinct and identifiable overcharge" pass "through layers of a distribution structure" to the indirect purchaser plaintiffs were sufficient to meet this *AGC* factor).

Here, the Complaint clearly alleges that the artificially inflated prices of CISP were passed from Defendants to wholesalers to Indirect Purchasers. D.E. 124 ¶¶ 4-6, 103-111, 115 PageID#: 1179, 1208-1210. Further supporting the directness of their injury, Indirect Purchasers have set forth what the inflated prices were and how these inflated prices harmed them. D.E. 124 ¶¶ 70, 129 PageID#: 1192-1196, 1213. Moreover, CISP was not modified or changed between Defendants and Indirect Purchaser; rather, CISP was generally delivered directly to Indirect Purchasers and was then utilized by Indirect Purchasers in construction projects. D.E. 124 ¶¶ 8 n.1, 12-13, 55-66, PageID#: 1180-1182, 1190-1191. Given the facts alleged, Indirect Purchasers have met this *AGC* factor.

### (4) Risk of duplicate recovery and (5) Existence of more direct victims

The relevance of the fourth and fifth factors – the risk of duplicative recovery and the existence of more direct victims – is muted by the fact that Indirect Purchasers have raised their antitrust claims pursuant to state statutes, specifically permitting causes of action by indirect purchasers. As stated by another district court within this Circuit, "[t]he risk of duplicative

recovery analysis is impacted by the fact that state statutes authorize indirect purchasers to bring these claims … this Court declines to undermine what the state legislatures have condoned." *Auto Parts*, 2013 WL 2456612, at *18 (holding that where an indirect purchaser has alleged "distinct and traceable" overcharges, the risk of duplicative recovery is lessened). Here, Indirect Purchasers have brought claims pursuant to state antitrust statutes, which specifically provide indirect purchasers with remedies for anti-competitive conduct. *See, e.g.*, Cal. Bus. & Prof. Code § 16750 (an action "may be brought by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly <u>or indirectly</u> with the defendant") (emphasis added).

This same principle holds true with regard to the last factor – the existence of more direct victims. Disallowing Indirect Purchasers' claims based on the presence of the Direct Purchaser Plaintiffs would undermine the enactments of state legislatures, which specifically provide for such claims.

### b. *AGC* Factors as to Consumers

### (1) Causal Connection and Directness of the Injury

Defendants argue Plaintiffs' complaints must be dismissed because Plaintiffs do not specifically allege that the overcharges are "identifiable" and can be "traced" through Defendants' distribution chain. D.E. 184 at 30, PageID#: 1925. Defendants' argument is meritless.

First, there is no magic language required by federal courts in pleading antitrust violations and "antitrust complaints are subject to the liberal pleading requirements of the federal rules" just as any other complaint. *Parsons v. Bright House Networks, L.L.C.*, No. 09-cv-0267,

2010 WL 5094258, at *4 (N.D. Ala. Feb. 23, 2010). Defendants cite to no case saying this kind of specific language is a prerequisite in order to plead state antitrust claims.

Second, this is a not a *component* part case. The distinction is important. In the four cases cited by Defendants, *Flash*, *Instrument Panel Clusters*, *DRAM*, and *Compressors*, the core allegation was that a component part of a product – not the whole product itself – was price-fixed. Directness is more of an issue in those circumstances (although such courts routinely deny similar motions to dismiss on "remoteness" grounds). For example, in the *Instrumental Panel Clusters* case, the plaintiffs alleged that a single part of an automobile was price-fixed and that impacted the sales price of the vehicles. In *Compressors*, the plaintiffs alleged they had bought products that contained the price-fixed hermetic compressors, such as refrigerators and freezers.

This case is very different. Plaintiffs do not allege that only a component of the cast iron soil pipe and fitting products was price-fixed. No, it was the entire product. Courts routinely find that indirect purchasers of whole products are not "too remote" to be traced through a chain of distribution. *See In re Lithium Ion Batteries*, 2014 WL 4955377, at *14 ("However, courts have determined that discrete injuries traceable through a distribution chain tilt this factor in favor of antitrust standing. Here, the IPPs' alleged injury is a supracompetitive overcharge on the price of lithium ion battery products they purchased. They allegedly paid the overcharge because it was 'passed on to them by direct purchaser manufacturers, distributors and retailers….' The Court finds that this is not too indirect to favor standing under *AGC*.").

Third, Defendants make wholly inappropriate factual arguments that it is "impossible to tease out the impact" of the price fixing. D.E. 184 at 30, PageID#: 1925. At the pleading stage, the only issue before the court is whether the Plaintiffs' allegations properly state a claim. Defendants would have this Court end Plaintiffs' case based on its version of certain facts. This

is improper to say the least. Moreover, Defendants' factually contentions are incorrect. The distribution chain in this case is not overly complex and both Indirect Purchasers and Consumers will be able to show impact to both groups.

**(2)      Nature of the Injury and Market Participation**

Regarding the nature of Plaintiffs' injuries, in *TFT-LCD*, the court found that consumers and businesses who indirectly purchased LCD panels in computers, smart phones and other devices, demonstrated standing because they "alleged the kind of injury that the antitrust laws were intended to address – namely that they were over-charged for products containing TFT-LCD panels as a result of defendants' horizontal price-fixing agreement.'" *TFT-LCD*, 586 F. Supp. 2d at 1123; *see also In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 400 (3d Cir. 2000) ("It is difficult to imagine a more formidable demonstration of antitrust injury."); *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) ("The violation complained of – price fixing – is a *per se* violation of the law that strikes at the heart of antitrust law's purpose of protecting competition . . . . The injury alleged – overcharge – is exactly the sort that would be expected to flow from the violation."). This is precisely the type of injury Plaintiffs allege in this case.

Defendants' "market participant" arguments are likewise inapt. Plaintiffs have alleged the relevant product market in this case is the U.S. sales of CISP for use in commercial, industrial, and multi-story residential buildings. D.E. 124 ¶ 113 at 1210; D.E. 121 ¶ 49 at 1083. Both Indirect Plaintiffs and Consumers are customers and participants in this market. Defendants argue only direct purchasers, i.e., wholesalers, are market participants, but there is no authority for this position. Under this theory, no indirect purchasers would ever have standing. This is not the law. *See Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1023 (6th Cir. 1999)

(discussing *Southhaven* and noting "grocery consumers and other grocery stores would have been better plaintiffs"); *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, Nos. 09-cv-852, 11-cv-162, 2012 WL 3841397, at *3 (E.D. Wis. Sept. 5, 2012) ("Here, plaintiffs allege that they are participants in the relevant market, the U.S. AM parts market, because they are end users of AM parts, and that they are being injured because the higher prices defendants charge for AM parts are being passed on to end users by direct purchasers and others in the chain of distribution. These allegations are sufficient to establish that plaintiffs are threatened with an antitrust injury.").

### (3)     Plaintiffs' Harm Is Not Speculative

Defendants argue that Plaintiffs' injuries are too speculative so the case must be dismissed at the pleading stage.  Not true. Regarding complexity in apportioning damages, most courts agree that it is impossible to determine on a motion to dismiss whether a claim is speculative or would require "unmanageably complex analyses, particularly without the benefit of any discovery or expert testimony." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 991 (9th Cir. 2000); *D.R. Ward Constr. Co. v. Rohm and Haas Co.*, 470 F. Supp. 2d 485, 504 (E.D. Pa. 2006); *TFT–LCD*, 586 F. Supp. 2d at 1124.  Moreover, Defendants again confuse the allegations of this case with other "component" part antitrust cases and submit their own version of "facts" that are not found in Plaintiffs' pleadings.  Defendants again refer to a "bundle of goods and services" as if that language is found throughout Plaintiffs' complaints.  It is not. Plaintiffs have alleged that they and their classes paid prices for CISP that were higher than what they would have paid in a competitive marketplace and each suffered economic damages as a result of Defendants' wrongdoing.  D.E. 124 ¶ 115 at 1210; D.E. 121 ¶ 13, at 1074.  This is sufficient at this stage.

### (4)     The Existence of Direct Purchasers Does Not Serve the Entire Public Interest

Defendants argue public policy is served because of the presence of the Direct Purchaser Plaintiffs. This ignores the fact that an indirect purchaser plaintiff brings cases via *Illinois Brick* repealer laws. *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1155 (N.D. Cal. 2009) ("States . . . which have repealed *Illinois Brick* and allowed indirect purchasers to sue for antitrust violations, have necessarily made the policy decision that duplicative recovery may permissibly occur . . . ."); *D.R. Ward*, 470 F. Supp. 2d at 504; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1093 (N.D. Cal. 2007) ("*DRAM I*"); *Lorix*, 736 N.W.2d at 628. Applying these factors to a repealer statute would subvert the intent of states that specifically overturned *Illinois Brick*, in recognition of the fact that indirect purchasers often "suffer [] the greatest, if not the most direct, injury of the price-fixing conspiracy." *D.R. Ward*, 470 F. Supp. 2d at 503.

Accordingly, these *AGC* factors cannot weigh against finding antitrust standing, and Defendants' argument regarding antitrust standing should be rejected. *See Auto Parts*, 2013 WL 2456612, at *18 ("the Court finds that the pleadings are sufficient to demonstrate that the *AGC* factors do not undermine standing"); *In re Lithium Ion Batteries*, 2014 WL 4955377, at *16 ("As all five factors tilt in favor of the [indirect purchaser plaintiffs] having antitrust standing, the Court denies defendants' Motion"); *In re Flash Memory*, 643 F. Supp. 2d at 1156 (holding that indirect purchaser plaintiffs' allegations are sufficient to establish antitrust standing); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) (holding that indirect purchaser plaintiffs have demonstrated antitrust standing); *In re Ductile Iron Pipe Fittings*, 2013 WL 5503308, at *16 (finding that indirect purchaser plaintiffs have sufficiently demonstrated standing under the *AGC* test).

## II. PLAINTIFFS' ALLEGATIONS OF FRAUDULENT CONCEALMENT ARE SUFFICIENT TO TOLL THE APPLICABLE STATUTE OF LIMITATIONS[15]

Defendants first concede that under the laws of all the states at issue, fraudulent concealment tolls the statutes of limitations until the plaintiffs knows, or should have known, of the wrongful conduct that forms the basis for their claims. D.E. 184 at 23, PageID# 1918. Defendants then concede that Plaintiffs have established the first two elements of fraudulent concealment, and only challenge the element of due diligence, arguing that Plaintiffs failed to plead facts establishing this element, as required to take advantage of fraudulent concealment and toll the applicable statute of limitations. *Id.* This argument should be disregarded because Plaintiffs' allegations are sufficient to demonstrate Plaintiffs' due diligence was reasonable under these circumstances. Moreover, Defendants do not raise any state specific issues or disputes, but merely establish that all of the states at issue do, in fact, apply fraudulent concealment to toll otherwise applicable statutes of limitation.[16]

"Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitation period; and (3) plaintiff's due diligence until discovery of the facts." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (citation omitted). Courts disfavor dismissing fraudulent concealment allegations prior to discovery because facts demonstrating fraudulent concealment are normally proven after plaintiffs have been able to gather all relevant information from defendants. *Carrier Corp.*, 673 F.3d at 446, 448 (citing *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir.

---

[15] Plaintiffs hereby incorporate by reference the Direct Purchaser Plaintiffs discussion regarding fraudulent concealment and statute of limitations in their brief in opposition to Defendants' motions to dismiss.

[16] For the Court's convenience, Plaintiffs attach as Appendix D, a chart noting the application of the due diligence requirement for fraudulent concealment in each of the states at issue.

23

1984)); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 475-76 (6th Cir. 2013) ("Where there is "some question as to the depth and scope of [the plaintiffs'] investigation, [the plaintiffs] should be allowed to proceed forward.") (quoting *Carrier Corp.*, 673 F.3d at 448); *State of Mich. ex rel. Kelley v. C.R. Equip. Sales, Inc.*, 898 F. Supp. 509, 513 (W.D. Mich. 1995) (holding plaintiff adequately pled fraudulent concealment and noting that this should be considered after the parties have conducted discovery). In fact, fraudulent concealment is an issue best left for the jury. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1018 (E.D. Mich. 2010) ("[W]here there is a dispute as to the issue of fraudulent concealment, the question is one for the jury."). Accordingly, allegations of fraudulent concealment are construed in the plaintiff's favor at this early stage of the litigation. *Carrier Corp.*, 673 F.3d at 448 (citation omitted)).

Defendants' argument that Plaintiffs failed to allege that they exercised due diligence to discover their claims sooner is lacking because the duty to inquire with due diligence only arises when there is sufficient information to put a reasonable person on notice of wrongdoing. *Venture Global Engineering, LLC v. Satyam Computer Servs., Ltd*, 730 F.3d 580, 587-88 (6th Cir. 2013) (citing *Lutz*, 717 F.3d at 475-76); *see also In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 803 (S.D. Oh. 2011) ("If a hypothetical reasonably diligent plaintiff would not have been put on inquiry notice, the limitations period is tolled.") (citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1128 (6th Cir. 1982)). Thus, active concealment must be considered in determining the reasonableness of the plaintiff's due diligence, which only needs to be reasonable under the circumstances presented. *Venture Global Engineering*, 730 F.3d at 588.

Defendants argue that Plaintiffs failed to plead diligence because there was publicly available information that put Plaintiffs on inquiry notice. D.E. 184 at 25, PageID# 1920.

However, the availability of public information is not indisputable evidence of inquiry notice. *See In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 856 (N.D. Ill. 2010) (citing *In re Copper Antitrust Litig*, 436 F.3d 782, 790 (7th Cir. 2006)) (denying summary judgment for defendants and holding that the availability of contracts and deal documents that received publicity by various trade publications did not establish inquiry notice, triggering a duty to investigate).

The plaintiffs in *In re Polyurethane* asserted a similar price-fixing conspiracy and alleged they were not required to investigate where law enforcement were likewise unaware of the alleged price-fixing. 799 F. Supp. 2d at 801. The district court agreed, denying a motion to dismiss and holding that "it makes little sense to require a plaintiff to inquire of each of his vendors whether a . . . price was determined by market forces or a concealed multi-year, multi-member antitrust conspiracy." *Id.* at 804. The court went on to state that the law "requires *reasonable* diligence, not constant cynicism." *Id.* (emphasis original).

Similarly here, while Defendants' price lists may have been publicly available, there is nothing beyond the price lists that would raise Plaintiffs' suspicions and prompt any further investigation. In fact, the Defendants' price increase announcements operated as implicit statements that the increases were legitimate. D.E. 124 ¶ 98, PageID #: 1206. It was reasonable for Plaintiffs to assume the price increases were a result of competitive market forces because customers were informed that the increases were needed because the prices of raw materials increased. *Id.* It is disingenuous for Defendants to argue that the price lists should have put Plaintiffs on notice, when Defendants falsely announced justifications for price increases, including that increases were attributed to cost increases in raw materials, thus concealing its wrongdoing. D.E. 124 ¶ 100, PageID # 1207.

Again, there is no reason here that the availability of Defendants' price lists would put Plaintiffs on notice, initiating a duty to investigate. Despite the foregoing, Defendants are expecting the Court to find that their price lists alone are sufficient to serve as inquiry notice. D.E. 184, PageID# 1920. However, similar allegations concerning alleged price-fixing conspiracies have been deemed sufficient by other courts in the Sixth Circuits. *See In re Polyurethane*, 799 F. Supp. 2d at 801; *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d at 1019. Thus, Defendants' motion should be denied.[17]

## III. PLAINTIFFS STATE CLAIMS UNDER STATE ANTITRUST, CONSUMER PROTECTION, AND UNJUST ENRICHMENT LAWS

### A. Plaintiffs Adequately Pled Claims Under California, Florida and Arkansas Law

Both Indirect Purchasers' and Consumers' Complaints contain detailed allegations setting forth Defendants' unlawful price-fixing conspiracy which violated state laws, including those in California, Florida, and Arkansas.

---

[17] Defendants cite two cases to support their argument that publicly available information should have put Plaintiffs on inquiry notice. *See* D.E. 184, PageID# 1920. These cases are easily distinguishable. First, the court in *RPS Corp. v. Owens-Corning Firberglass Corp.*, No. 83 C 9625, 1984 WL 1260 (N.D. Ill. Oct. 20, 1984), gives no explanation of how or why the plaintiff was aware of the defendants' pricing practices, but states that plaintiff was on notice for at least ten years. 1984 WL 1260, at *1. Further, *RPS Corp.* was decided at summary judgment, hence, a complete record was available. *Id.* at *2. Moreover, *RPS Corp.* was decided in 1984, and since then, as described above, numerous courts in the Sixth Circuit have articulated detailed standards for equitable tolling. Defendants' reliance on *Ruth v. Unifund CCR Partners*, 604 F.3d 908 (6th Cir. 2010) is also misplaced. In *Ruth*, the plaintiff admits to reviewing certain public records that contained sufficient information to put her on notice. *Id.* at 911. In fact, the court emphasized this by stating that "the mere availability of open and readily accessible public records may not suffice by itself to defeat a fraudulent concealment claim." *Id.* Defendants here have not pointed to any allegations similar to those in *Ruth* that go beyond the availability of certain information to put them on notice.

### 1.    California

Indirect Purchasers bring antitrust claims under California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, *et seq.* and consumer protection claims pursuant to California's Unfair Competition Law "(UCL")), Cal. Bus. & Prof. Code §§ 17200, *et seq.*   To state a claim under the Cartwright Act, a plaintiff must allege "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Darush v. Revision LP et al.*, No. 12-cv-10296, 2013 WL 8182502, at *3 (C.D. Cal. July 16, 2013) (quoting *Cellular Plus, Inc. v. Superior Court of San Diego County*, 18 Cal. Rptr. 2d 308, 314 (Cal. App. 4th Dist. 1993).   It is well-established that the Cartwright Act was "modeled" after the Sherman Act and should be interpreted in harmony with the federal statute.   *Clean Conversion Technologies, Inc., v. Cleantech Biofuels, Inc.*, No. 12-cv-239, 2012 WL 3585171, at *4 n.4 (S.D. Cal. Aug. 20, 2012) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright . . . was modeled after the Sherman Act.") (citations omitted); *see also GSI Technology, Inc., v. Cypress Semiconductor Corp.*, No. 11-cv-03613, 2012 WL 2711040, at *8 (N.D. Cal. July 6, 2012) ("the requirements for a claim under California's Cartwright Act are identical to those for a claim under the Sherman Act") (citations omitted).   Defendants' contention that Indirect Purchasers failed to sufficiently plead these claims is without merit.

Defendants seek a Court conclusion – at the motion to dismiss stage – that Indirect Purchasers' case cannot survive unless they have not only provided every fact and circumstance surrounding Defendants' illegal conduct, but also exhausted all other explanations for its actions. D.E. 179, PageID#: 1851.  However, this suggested ruling is not the law.  Indirect Purchasers are not required to set forth "specific back-room meetings between specific actors at which specific

decisions were made." *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-cv-1143, 2013 WL 6247594, at \*6 (N.D. Cal. Dec. 3, 2013) (citations omitted). "Rather, plaintiffs are required only to allege 'facts *such as* a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Id.* (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)). "Courts weighing an antitrust defendant's motion to dismiss should consider the plaintiff's allegations in their entirety and refrain from 'tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'" *Id.* (citations omitted). "The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Id.* (citations omitted).

Indirect Purchasers have provided clear evidence that Defendants engaged in conduct violating the Sherman Act, and accordingly the Cartwright Act. Specifically, Indirect Purchasers' Complaint contains detailed allegations concerning (1) Defendants' use of CISPI to further the conspiracy and price fixing scheme; (2) Defendants' efforts to restrain competition for each others' customers; (3) Defendants' actions to foreclose and eliminate competition from Star Pipe and Defendants' previous efforts to buy and destroy assets of potential competitors; (4) the FTC's investigation of Defendants' activities; (5) structural features that make the CISP market ripe for collusion; and (6) Defendants' parallel price-increases during the Class Period, that were unjustified by costs and demand.[18] Indirect Purchasers further allege that Defendants' actions have caused substantial injury to Indirect Purchasers by restraining competition and adversely affecting prices in the CISP market. *See D.E. 124* ¶¶ 115, 129, 133, Page ID# 1210-1211, 1213-1215.

---

[18] *See* Appendix A, containing citations to relevant allegations in Indirect Purchasers' Complaint.

Consequently, Defendants' suggestion that Indirect Purchasers' Complaint contains nothing but conclusory allegations representing merely parallel behavior is simply wrong. D.E. 179, PageID#: 1851. See e.g. *Cascades Computer Innovation LLC*, 2013 WL 6247594, at *7 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 2101 (2012) ("Defendants' competing interpretation of the FAC may ultimately prove true, but '[t]he standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only plausibly suggest an entitlement to relief.'").

At this stage, "Plaintiff need not allege word for word the agreement at hand, but instead must only allege sufficient facts to plausibly suggest an agreement.[19] Defendants' arguments that Plaintiff must allege specifics in the form of the precise terms of the agreement, '[w]ho negotiated th[e] agreement,' and where the meetings regarding the agreement occurred are not supported by any statute or controlling authority." *Darush*, 2013 WL 8182502, at *4. Here, Indirect Purchasers have amply pled facts establishing a conspiracy among Defendants that resulted in an injury to Indirect Purchasers and violated the Cartwright Act.

Next, Defendants argue that Indirect Purchasers cannot state a claim under California's UCL because they rely on the same information to support their UCL claim as their state antitrust claim under the Cartwright Act. D.E. 179, PageID#: 1852. The UCL prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The Supreme Court of California has held that the UCL "embraces anything that can properly be called a business practice and that at

_____

[19]*See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement").

29

the same time is forbidden by law." *Id.* The UCL "has a major purpose in preserving fair business competition . . . borrow[ing] violations of other laws and treat[ing] them as unlawful practices that the unfair competition law makes independently actionable." *GSI Technology, Inc.*, 2012 WL 2711040, at *8 (citations omitted). The court in *GSI Technology* considered the same argument being made here, and after upholding plaintiff's Cartwright claim found that "[s]ince Defendant's Motion depends on the assumption that Plaintiff has no claim under the Sherman and Cartwright Acts, the motion to dismiss this [UCL] claim will be denied." *Id.*[20]

The same result is warranted here. For all the reasons that Indirect Purchasers have stated a valid claim for relief under the Cartwright Act, so too have they sufficiently pled a violation of the UCL. Defendants' unfair and deceptive business practices in furtherance of their price-fixing conspiracy harmed Indirect Purchasers and entitle them to relief under California law.

### 2. Florida

Defendants make two meritless arguments in support of its motion to dismiss Indirect Purchasers' claim under the Florida Deceptive and Unfair Trade Practice Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"): (1) Indirect Purchasers' have failed to allege a violation under the Florida deceptive trade practices law; and (2) Indirect Purchasers have inadequately alleged they sustained damages as a result of an injury caused by Defendants. D.E. 179, PageID# 1853-1856. Defendants' first argument is repetitive and easily dismissed, merely attacking (yet again) the sufficiency of Indirect Purchaser's Complaint. Importantly, courts have held that a finding of an antitrust violation will also satisfy the elements of a FDUTPA claim. *See, e.g., Mack v. Bristol-*

---

[20]*See also In re: Pool Products Distribution Market Antitrust Litig.*, 946 F. Supp. 2d 554, 566 (E.D. La. 2013) (holding that a "violation of California antitrust law may stand as the basis of a claim under the 'unlawful' or 'unfair' prongs of the UCL if such conduct caused the plaintiffs' injuries," and denying motion to dismiss indirect purchasers' UCL claims based on their allegations of exclusionary vertical agreements).

*Myers Squibb Co.*, 673 So.2d 100, 104 (Fla. Dist. Ct. App. 1996) (antitrust violation constitutes violation of FDUTPA); *In re Pool Products Distribution Market Antitrust Litig.*, 946 F. Supp. 2d 554, 569-70 (E.D. La. 2013) (FDUTPA claim based on unfair methods of competition survives motion to dismiss where viable antitrust claims alleged). As detailed in Section III *supra* and Appendix A, Indirect Purchasers' allegations of an unlawful CISP price-fixing conspiracy are sufficiently sound and demonstrate a plausible antitrust violation by Defendants. Accordingly, Indirect Purchasers have adequately pled an unfair and deceptive practices claim under the FDUTPA.

Defendants' second argument that Indirect Purchasers have not sufficiently alleged injury and damages under the FDUTPA is equally unpersuasive and in fact has already been addressed by the Court. Less than four months ago, the Court rejected Defendants' Motion to Adopt Fact Sheet for Inclusion with Consolidated Amended Complaints, in which Defendants sought a Court Order requiring information about injury and damages be incorporated into the Complaint. *See* D.E. 66, PageID#: 565-570. In their briefing, like here, Defendants expressly argued that these allegations should be incorporated into Indirect Purchasers' Complaint to provide facts detailing injury suffered as a result of Defendants' illegal conduct. *See* D.E. 91, PageID#: 747 ("each Plaintiff should, at a minimum, be required to identify basic information regarding the nature of the injuries it suffered, the circumstances giving rise to its claimed injuries, and the basis for its belief that Defendants' conduct caused those injuries"). In its decision denying in part Defendants' Motion to Adopt its Fact Sheet, the Court correctly held that detailed facts concerning, *inter alia*, actual injury, were not "required at the pleadings stage but rather can be produced during the course of discovery." July 17, 2014 Court Order, D.E. 109, Page ID# 917.

In drafting the Complaint, Indirect Purchasers followed the Court's Order and included the information the Court found necessary to adequately plead their claims. Defendants' Motion to Dismiss improperly revisits this issue, placing Indirect Purchasers in the untenable position of complying with the Order and then having to defend the sufficiency of their injury claims as a result of that compliance. Given the Court's denial of Defendants' first motion to include information concerning injury and damages in the Complaint, their similar arguments here should also be rejected.

Defendants' heavy reliance on *In re Florida Cement and Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291 (S.D. Fla. 2010) is also misplaced, and in any event, does not provide authority to dismiss Indirect Purchasers' FDUTPA claims with prejudice. The *Florida Cement* court found the plaintiffs' various price-fixing, supply restrictions, antitrust tying and customer allocation allegations involving two of the three alleged cement product markets were not plausible. *Id.* at 1319-20 (plausible claims limited to those related to fixing price of ready-mix concrete market). Additionally, the plaintiffs had not provided particular information about the products they purchased and whether they absorbed any price increase or passed them on to customers. *Id.* at 1322. Therefore, the court granted defendants' motion to dismiss the FDUTPA claims. *Id.*

In contrast, the present action includes a single product market for CISP, and involves conspiratorial price-fixing conduct of just two producers of that product. *See* D.E. 124 ¶¶ 29-30, PageID#: 1185 (Complaint alleging that prices for nearly all variations of CISP "have been virtually identical throughout the Class Period" and that there have been just two companies – Defendants – selling CISP). Additionally, Indirect Purchasers sufficiently plead injury by describing how Defendants' illegal conspiracies damaged Indirect Purchasers' business or property, causing them to pay more for CISP purchased indirectly from Defendants than they

would have paid absent the illegal activity. *See, e.g.*, D.E. 124 ¶¶ 71-72, PageID#: 1196-1198 (detailing increase in prices for CISP by over 50% while construction spending and therefore demand for CISP drastically fell); ¶¶ 73-75, PageID#: 1199-1200 (detailing level pricing for CISP during steep decline in nonresidential construction, and costs for raw materials out of synch with price increases for CISP); ¶ 115, PageID#: 1210-1211 ("Plaintiffs and other members of the Class were deprived of normal, competitive CISP prices. They were subjected to artificially inflated prices and price-trends as a direct, foreseeable and intended result of the Defendants' unlawful and manipulative conduct"). Consequently, Indirect Purchasers allege exactly how Defendants' unlawful activities caused their injuries.[21]

Furthermore, it is not a requirement that indirect purchaser plaintiffs in antitrust cases demonstrate illegal overcharge pass-throughs to establish that defendants caused them harm. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 344 (E.D. Mich. 2001) (concluding pass-through variations are not necessary to demonstrate antitrust injury: "an indirect purchaser must estimate only the 'but for' price that it should have paid, which is a far less exacting exercise than apportioning the overcharge throughout the entire chain of distribution"); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d at 532, 537-38 (denying motion to dismiss FDUTPA claims despite lack of pass-through allegations, finding injury-in-fact where indirect purchaser plaintiffs allege "paying too much" for supracompetitive priced product); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 143-44 (E.D. Pa. 2011) (rejecting a requirement for analysis of whether an overcharge has been passed on, "because other techniques are available to demonstrate overcharge to indirect purchasers"); *Fond du Lac Bumper Exchange, Inc. v. Jui Li*

---

[21] Plaintiffs in *Florida Concrete* only referenced their injuries one time, in the paragraph identifying themselves as parties. *See In re Florida Cement and Concrete Antitrust Litig.*, 746 F. Supp. 2d at 1321.

*Enterprise*, Nos. 09-cv-0853, 11-cv-0162, 2012 WL 3841397, at *3-4 (E.D. Wis. Sept. 5, 2012) (finding that where defendants control this degree of the product market, "it is easy for a direct purchaser to pass a price increase on to its customers because the majority of [direct purchasers] are paying the same inflated price . . . .  No one has to worry about being undercut by a lower-cost competitor.  Therefore, Indirect Purchasers' claim that they are being injured as a result of defendants' alleged conspiracy is plausible"); *In re Florida Microsoft Antitrust Litig.*, No. 99-cv-27340, 2002 WL 31423620, at *11 (Fla. Cir. Ct. Aug. 26, 2002) (certifying class).

### 3.    Arkansas

Consumers state a claim under the Arkansas Deceptive Trade Practices Act ("ADTPA"). The ADTPA is designed to provide consumers a remedy for unfair trade practices and false, deceptive and unconscionable practices and is to be liberally construed.  First, as an Arkansas court has noted, "price fixing is actionable under the ADTPA as conduct that is deemed an 'unconscionable, false or deceptive act or practice . . .'" *Burton v. Micron Tech, Inc.*, No. CV 2004-226-1, at 2 (Cir. Ct. 1st Div. Nov. 6, 2009).  The court relied on the Arkansas Supreme Court's interpretation of the term "unconscionable" in the ADTPA to mean "an act that 'affronts the sense of justice, decency, or reasonableness,'" including acts "violative of public policy or a statute." *Baptist Health v. Murphy*, 226 S.W.3d 800, 810-811 (2006).  The *Baptist Health* decision affirmed that unconscionable in the ADTPA is not limited as Defendants suggest as has been followed by federal courts.  *See In re Lithium Ion Batteries*, 2014 WL 4955377, at *22-23; *In re Photochromic Lens*, 2011 WL 4914997, at *6; *In re Flash Memory*, 643 F. Supp. 2d at 1156-57.      Numerous federal courts have agreed and held price-fixing is actionable under

the ADTPA.[22]  *See, e.g., In re Lithium Ion Batteries*, 2014 WL 4955377, at *22-23 (finding

cause of action under ADTPA for price-fixing of lithium ion batteries); *In re Automotive Parts*

*Antitrust Litig.*, No. 12-md-2311, 2014 WL 4793848 (E.D. Mich. Sept. 25, 2014) (auto bearings)

(finding cause of action under ADTPA for automotive bearing price-fixing); *In re Automotive*

*Parts Antitrust Litig.*, No. 12-md-2311, 2014 WL 2993742, at *5 (E.D. Mich. July 3, 2014) (fuel

senders) (finding cause of action under ADTPA for automotive bearing price-fixing).[23]

　　Second, Consumers, like the Indirect Purchasers and the Direct Purchasers, more than

adequately allege (i) that Defendants conspired to fix prices and (ii) deceptive or unconscionable

conduct.  The ADTPA is a statute "designed to protect consumers and legitimate practices in

business, commerce and trade."  Ark Code Ann. §§ 4-88-101, *et seq*.  The ADTPA provides

consumers  a right of action for conduct that is deemed "unconscionable, false, or a deceptive act

---

[22] Defendants cite *GPU I* for its ruling that the ADTPA does not apply to price-fixing.  That
holding was based on the theory that price-fixing is considered to be an unconscionable act, a
theory demonstrated above to be erroneous and rejected two years later in the same district court.
*See Flash*, 643 F. Supp. 2d at 1157 (citing *Baptist Health*, 226 S.W.3d at 810-811).  Despite this
clear precedent, a subsequent court incorrectly interpreted the ADTPA to dismiss price fixing
claims.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal.
2011) (noting the "lack of any cases from Arkansas state or federal courts recognizing a price-
fixing claim under the ADTPA).  The parties in that case were seemingly unaware of the 2009
ruling in *Burton*, *supra,* which negates the *In re TFT-LCD* court's reasoning and represents the
current state of the law.

[23] *See also In re Automotive Parts Antitrust Litig.*, No. 12-md-2311, 2013 WL 2456612 at *23
(E.D. Mich. June 6, 2013) (same); *In re Automotive Parts Antitrust Litig.*, No. 12-md-2311, 2014
WL 2993753, at *19 (E.D. Mich. July 3, 2014) (same); *Fond Du Lac Bumper Exchange, Inc. v.
Jui Li Enter. Co., Ltd*., Nos. 09-cv-00852, 11-cv-00162, 2012 WL 3841397, at *6 (E.D. Wis.
Sept. 5, 2012) (finding cause of action under ADTPA for price-fixing of automotive aftermarket
parts); *In re Photochromic Lens Antitrust Litig.*, No. 10-md-2173, 2011 WL 4914997, at *6 n.16
(M.D. Fla. Oct. 14, 2011) (finding cause of action under ADTPA for price-fixing in
photochromic lens merger case investigated by FTC); *In re Chocolate Confectionary Antitrust
Litig*., 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) (finding cause of action under ADTPA for
price-fixing of chocolate); *In re Flash Memory Antitrust Litig*., 643 F. Supp. 2d 1133, 1156-57
(N.D Cal. 2009) (finding cause of action under ADTPA for price-fixing of flash memory); *In re
New Motor Vehicles Canadian Export Antitrust Litig*., 350 F. Supp. 2d 1608, 178 (D. Me. 2004)
(holding ADTPA provided a private right of action for price-fixing).

or practice" in business, commerce or trade. Ark. Code Ann. § 4-88-107(a)(10). The deception required under ADTPA need not be knowing or intentional. *See Curtis Lumber Co., Inc. v. Louisiana Pacific Corp*, 618 F.3d 762, 777 (8th Cir. 2010) (reversing summary judgment and finding factual question for ADTPA violation noting that "liberal construction in this context means that the ADTPA should protect consumers from trade practices beyond common law fraud.").

Here, the Consumers have expressly alleged that Defendants engaged in acts, in business, trade or commerce, which are false, misleading, deceptive, unconscionable and which violate federal and state laws. D.E. 121, ¶¶ 107, 108, 188, PageID#: 1098-99, 1125. Taking Consumers allegations as true, Defendants' conduct is harmful to consumers, not legitimate business, trade or commerce and violates "public policy or statute." *Id.* The unlawful conduct alleged in this lawsuit concerning unlawful market control and price-fixing in the cast iron soil pipe and fittings market in the United States, including Arkansas, affronts a sense of justice, decency or reasonableness and constitutes false or deceptive acts or practices against consumers in business, commerce or trade in Arkansas. *See* Ark. Code Ann. 4-88-107(a)(10). *See Curtis Lumber Co.*, 618 F.3d at 776-777.

Defendants take a narrow approach to the ADTPA, ignoring *Baptist Health* and cases recognizing that the ADTPA protects consumers and businesses and legitimate trade, commerce.[24] Numerous courts around the country, including state courts in Arkansas have

---

[24] McWane's Brief, D.E. 179, pp. 36, 37, PageID#: 1867-68. Defendants' citation to *Wallis v. Ford Motor Company*, 208 S.W.3d 153, 161 (Ark. 2005), misses the mark and is not persuasive. The facts in *Wallis* involved *diminishment in value* of a consumer product because it was unsafe, which is inapposite to the facts and damages theory in this case. In *Wallis*, the plaintiff was suing for lost value in a Ford Explorer because it had a dangerous roll-over propensity, i.e., the vehicle was unsafe and, therefore, worth less although it had actually not rolled over. *Id.* On the other hand, here, Plaintiffs contend they were overcharged by wrongful and unlawful conduct,

found price-fixing similar to the wrongful conduct alleged in this lawsuit actionable under the ADTPA. *See Burton v. Micron Technology, Inc.*, Civil Case No. 2004-226-1, Circuit Court of Hot Spring County, Arkansas, Honorable Chris Williams (Nov. 6, 2009); *Crawford v. F. Hoffman La-Roche*, Civ. Case No. 99-292-1, Circuit Court of Hot Spring County, Honorable John W. Cole (Sept. 20, 2002). In sum, the motion to dismiss Consumers' ADTPA claim should be denied.

### B. Consumers State a Claim for Unjust Enrichment Under Arkansas Law

Under Arkansas law, "[t]o find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore….In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *See Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 36 (Ark. 2011); *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005) ("an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he ought not to retain"). The guiding principle for unjust enrichment is, in equity and good conscience, unlawfully or unjustly obtained money should be returned. *Fite v. Fite*, 345 S.W.2d 362 (1961).

The elements of unjust enrichment for damages before a jury may be stated as: (1) the defendant received something of value (money or the equivalent of money); (2) the defendant was not entitled to the thing of value; (3) an operative act, intent, or situation makes the enrichment unjust and compensable; and (4) as a result, the defendant must restore the thing of value (by refund or restitution of the amount by which the defendant was unjustly enriched), i.e.,

---

which is much more akin to usury, not diminishment in value of a product. *Wallis* is clearly distinguishable from this case.

money had and received.  In Arkansas, unjust enrichment is an equitable doctrine of restitution, which may be brought for recovery of damages.  *See First Nat. Bank of DeWitt v. Cruthis*, 203 S.W.3d 88, 94 (Ark. 2005).  Further, a person need not be in privity to recover for unjust enrichment.  *Smith v. Whitener*, 856 S.W.2d 328 (Ark. 1993).  *See Crawford v. F-Hoffman La-Roche* (Arkansas circuit court decision finding price-fixing was actionable as unjust enrichment), at page 2.

Here, Defendants received an artificially-inflated price or "overcharge" for their cast iron soil pipe and pipe fittings.  The Defendants engaged in wrongful conduct to receive this money and in equity and good conscience ought to return the overcharge they unlawfully obtained as a result of their unlawful conduct.  *Campbell*, 381 S.W.3d at 36.  Consumers respectfully submit the motions to dismiss the Arkansas unjust enrichment claim should be denied.

### C.    Plaintiffs Have Pled All Elements of Their State Antitrust Claims

First, Defendants incorrectly cite the law in Rhode Island, contending that indirect purchaser actions are barred.  D.E. 184, PageID#: 1928-1929.  To the contrary, R.I. Gen. Laws § 6-36-12(g) provides:  "In any action under this section the fact that a person or public body has not dealt directly with the defendant shall not bar or otherwise limit recovery. . . *No provision of this chapter shall be construed to limit the standing of any person or public body, whether the person or public body is a direct or indirect purchaser, from bringing suit on his or her own behalf*." (emphasis added).  Consequently, Indirect Purchasers have properly pled a Rhode Island antitrust claim.

Next, Defendants argue that Indirect Purchasers fail to adequately allege a connection between Defendants' actions and intrastate conduct in the nine state antitrust statutes with such a

requirement[25] because the CAC relies on just legal conclusions.  D.E. 184, PageID#: 1929-1930.

Indirect Purchasers have described a pervasive price-fixing scheme that affected the entire CISP

market and impacted commerce nationwide.  Defendants completely ignore the factual portion of

the Complaint and focus only on the state antitrust claim sections which cite the laws on which

Indirect Purchasers and Consumers base their claims.[26]  This narrow reading of the Complaint

has been rejected by other courts, including within this Circuit.

In *In re Automotive Parts Antitrust Litig.*, 12-md-02311, 2014 WL 4793848, at *13 (E.D.

Mich. Sept. 25, 2014), the court rejected defendants' argument that end-payor plaintiffs ("EPPs")

did not sufficiently allege a "nexus" between conduct and intrastate commerce:  "Even if EPPs

failed to allege that their purchases occurred in the jurisdictions in which they resided, the Court

finds the pleadings create a reasonable inference that the purchases occurred where the

individual plaintiffs reside.  EPPs' complaint, read in the light most favorable to their claims,

warrants the inference even given the length of the alleged conspiracy and the increased burden

created in purchasing vehicles in jurisdictions outside of a plaintiff's resident state.  Finally,

EPPs allege that they were injured in the states in which they resided by Defendants'

conspiratorial conduct because they were forced to pay inflated prices."[27]

---

[25] The nine states identified by Defendants are District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin.

[26] Indeed, in asserting their state antitrust claims, Plaintiffs explicitly incorporated preceding allegations by reference, including their extensive factual allegations.  *See* D.E. 124 ¶ 124, PageID#: 1213; D.E. 121 ¶ 153, PageID#: 1110.

[27] *See also Sheet Metal Workers' Nat'l Health Fund v. Amgen Inc.*, No. 07-cv-5295, 2008 WL 3833577, at *12 (D.N.J. Aug. 13, 2008) (denying defendants' motion to dismiss claims under the antitrust statutes of Michigan, Tennessee, West Virginia, and Wisconsin for failing to allege "predominantly intrastate conduct": "[T]he Court does not interpret the statutes to be inapplicable where the anticompetitive conduct may have both interstate effects and, as concerns the particular state in question, intrastate impact.  Whether the factual allegations of the Complaint, which presently lacks any state-specific allegations, may support a viable claim

Courts addressing specific state statutes have reached the same conclusion. For example, nearly identical language as that found in Indirect Purchasers' CAC was ruled sufficient to satisfy the requirements of the Mississippi antitrust statute. *See In re TFT-LCD Antitrust Litig.*, 599 F. Supp. 2d 1179, 1188 (N.D. Cal. 2009) (finding plaintiff's allegations that: "price competition was restrained, suppressed, and eliminated throughout Mississippi"; "prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi"; "plaintiffs were deprived of free and open competition"; and "plaintiffs paid supra competitive, artificially inflated prices" were sufficient under the MAA. The court further stated: "Plaintiffs' allegations that defendants' conduct occurred mainly in California are not inconsistent with alleging anticompetitive conduct in Mississippi").[28]

The same is true for North Carolina,[29] South Dakota,[30] and West Virginia,[31] where Defendants wrongly suggest Plaintiffs' claims should be dismissed for failure to meet the

---

under these statutes is a separate question and one which the Court will not address at this time.").

[28] *See also, In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 230 (S.D.N.Y. 2012) (denying defendants' motion to dismiss plaintiffs' Mississippi Antitrust Act claim: "Defendants argue that Mississippi's antitrust laws are limited to intrastate conduct and the Plaintiffs' failure to allege state-specific activity is a reason to dismiss their MAA claims, but case law does not support Defendants' contention. . . . Therefore, as long as some of the defendant's conduct offensive to the antitrust statute is performed wholly intrastate, the MAA will apply").

[29] *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d at 231 ("the NCUDTPA explicitly states that 'it is unlawful for any person to monopolize . . . *any part of* trade or commerce in the State of North Carolina. Defendants' Motion to Dismiss these claims on the ground that the NCUDTPA does not reach goods brought into North Carolina for sale is therefore denied").

[30] *See In re Automotive Parts Antitrust Litig.*, 2014 WL 4793848, at *15 ("Independent Purchaser Plaintiffs allege the prices paid were supracompetitive, because they were fixed at artificially high levels throughout the state and had a substantial effect on South Dakota commerce. The law does not require that Defendants sell the price-fixed products themselves in South Dakota, and these allegations satisfy the pleading standards").

intrastate nexus. Indirect Purchasers have described a pervasive price-fixing scheme that affected the nationwide CISP market and impacted commerce in all the states in which claims have been brought.[32]

Defendants also seek dismissal of Indirect Purchasers' Arkansas claim, erroneously asserting that there is no private right of action for price-fixing under the antitrust law. D.E. 184, PageID#: 1932. A plain of reading of the statutory scheme refutes this proposition. Arkansas' Unfair Practices Act ("UPA"), codified at Ark. Code Ann. § 4-75-201 *et seq.*, states as follows: "The purpose of this subchapter is to safeguard the public against the *creation or perpetuation of monopolies* and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." Ark. Code Ann. § 4-75-202. The UPA provides that *anyone* aggrieved by violation of the statute may pursue a claim, and that these claims are not exclusive to the state Attorney General. *See* Ark. Code Ann. § 4-75-211 ("Any person, firm, private corporation . . . [to] maintain an action to enjoin a continuance of any act or acts in violation of this subchapter and, if injured thereby, for the recovery of damages"); Ark. Code Ann. § 4-75-315 (actions by Attorney General are *"[i]n addition to the other remedies provided in this subchapter"* (emphasis added)). Consequently, Indirect Purchasers' have brought a valid antitrust claim under Arkansas law.

---

[31] See *Id.* at *15 ("EPPs allege an impact on intrastate commerce in that price competition was restrained, suppressed, and eliminated throughout the state. They further allege that they paid supracompetitive, artificially inflated prices that had a substantial effect on West Virginia commerce. These allegations, read in the light most favorable to EPPs, demonstrate that once the price-fixed products entered the state's commerce, and were purchased by EPPs, an antitrust injury occurred").

[32] A list of authorities for these states is contained in Appendix E, Plaintiffs Satisfy State Antitrust Statutes' Nexus Requirements.

Finally, Defendants' argument that Indirect Purchasers' Hawaii antitrust claim should be dismissed for failure to satisfy the statute's notice requirement is wrong for two reasons. D.E. 184, PageID#: 1932. First, failure to provide notice does not warrant dismissal. *See, e.g.*, *In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) (holding that statute does not provide for dismissal of action for failure to comply, and that dismissal is inconsistent with remedial purposes of statute: "[N]othing in the statutory scheme suggests that defendants may use the statute as a shield to avoid answering for alleged anticompetitive behavior"). Second, and even more importantly, Indirect Purchasers have complied with this requirement, providing written Notice to the Hawaii Attorney General on or about August 15, 2014. A copy of the Notice is attached hereto as Exhibit 1.

### D. Defendants' State Consumer Law Arguments Fail[33]

Defendants launch yet another premature attack on Plaintiffs' consumer class claims, despite the Court's Order instructing that certification motions are not due to be filed for another year. D.E. 198, Page ID# 2094. Nevertheless, courts routinely certify antitrust classes under the consumer protection and unfair competition laws of multiple states. *See* D.E. 189, PageID#: 1985-1987. Any suggestion by Defendants to the contrary ignores significant precedent. *See Robinson v. EMI Music Distribution, Inc.*, No. L-10462, 1996 WL 49555, *4-5 (Tenn. Cir. Ct. July 8, 1996) (certifying class under 15 unfair competition/state consumer protection laws in addition to state antitrust statutes); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301-02 (3d Cir. 2011) (certifying indirect purchaser class alleging state antitrust, consumer protection, and unjust enrichment statutes and common law); *In re Pharm. Indus. Average Wholesale Price*

---

[33] Plaintiffs hereby withdraw their respective claims under the consumer protection statutes of Arizona, Kansas, Mississippi and Minnesota. Plaintiffs will continue to pursue claims under the state antitrust statutes of these states.

*Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) (certifying multi-state subclasses under the consumer protection laws of forty-one states, including nearly all of the states found in Plaintiffs' Complaints).

Defendants then make a misguided attack on the adequacy of Indirect Purchasers' and Consumers' allegations under Florida, Michigan, California, and Sixth Circuit law, wrongly asserting that the pleadings do not contain sufficient allegations under Rule 9(b). D.E. 184, PageID#: 1932-1933. This argument is meritless because Rule 9(b)'s particularity requirement only applies to "claims sounding in fraud." No matter the state statute, price-fixing claims do not sound in fraud. The court in *Packaged Ice,* cited by Defendants, relied exclusively on cases that did not concern antitrust or price-fixing allegations and is inapposite. *See*, *e.g.*, *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d at 899 (rejecting defendants' argument that price-fixing allegations were deficient under the pleading standards of Rules 8 and 9(b) because "no allegations of fraudulent conduct must be pled"); *In re Hydrogen Peroxide Antitrust Litig.*, 401 F. Supp. 2d 451, 458 (E.D. Pa. 2005).

Even if Rule 9(b) applied here, as discussed *supra*, claims under the Florida and California statutes are pled with sufficient particularity. For those same reasons, Indirect Purchasers have pled their claims with sufficient particularity in the event the Rule 9(b) standard is determined to apply in the other jurisdictions. *See* Appendix A (providing citations to detailed allegations regarding market characteristics, Defendants' opportunities to facilitate the conspiracy, Defendants' activities to eliminate and/or restrain competition, FTC investigations and suspicious parallel pricing activity). In addition, Plaintiffs detail how Defendants committed fraud by deceiving customers and the public about the basis of and circumstances surrounding their price increases. Defendants intended that Indirect Purchasers rely on the fact that these

increases were based on a competitive market, not an unlawful conspiracy. *See, e.g.*, D.E. 124 ¶¶ 98-100, 169, PageID#: 1206-1208, 1219. Therefore, Defendants' actions have caused substantial injury to Indirect Purchasers by restraining competition and adversely affecting prices in the CISP market. *See, e.g.*, D.E. 124 ¶¶ 115, 129, 133, PageID#: 1210-1211, 1213-1215.

Consumers' Complaint is just as detailed as the Indirect Purchaser Complaint. In a 70 page complaint, Consumers describe, among other things, the role of the CISP in the price-fixing scheme (D.E. 121, ¶¶ 33-48, PageID#:1079-1083), the relevant market (*Id.*, ¶¶ 49-50, PageID#: 1083), the CISP industry and the market characteristics (*Id.*, ¶¶ 59-79, PageID#: 1086-1090), and a detailed description of the price-fixing conspiracy itself (Id., ¶¶ 80-86, PageID#: 1090-1093).

The cases cited by Defendants merely identify the standard for fraud claims pled under Rule 9(b) and give examples of when the threshold is not met. In *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 665-66 (E.D. Mich. 2011), Plaintiff's Florida claims were dismissed for failure to make a public statement, a requirement unique to that state. The Michigan claims were dismissed voluntarily by plaintiffs, but the court also noted there were no allegations of deceptive conduct. *Id.* Clearly, those issues are not present here, as demonstrated above. *See, e.g.* D.E. 124 ¶¶ 98-100, 169, PageID#: 1206-1208, 1219; D.E. 121 ¶¶ 105-107, 201, PageID#: 1097-1099, 1136. Defendants' citation to *Meridian Project Systs, Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005), is easily distinguished because the court in that case simply dismissed the UCL claim for failure to plead the specifics of the scheme being alleged. Nonetheless, as repeatedly illustrated herein, Indirect Purchasers have sufficiently pled all allegations of fraud under the appropriate state statutes.

Defendants next contend that price-fixing claims are not permitted under the laws of seven states, but have again misstated the law.[34] D.E. 184, PageID#: 1933. Courts have recognized the liberal construction of Arkansas' Deceptive Trade Practices Act ("ADTPA") and allowed price-fixing actions to proceed. *See Sheet Metal Workers Local 441 Health & Welfare Plan v. Glaxosmithkline, PLC*, 737 F. Supp. 2d 380, 404-05 (E.D. Pa. 2010) (recognizing liberal construction and finding that even though GSK's alleged conduct does not constitute any enumerated offense in the ADTPA it is not fatal to their claim"); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *9 (denying motion to dismiss and finding that a number of courts have concluded that claims of price fixing are cognizable under the ADTPA).[35]

Other courts have similarly held that a statute does not have to specify price-fixing as a proscribed act in order for a cause of action to exist, and consequently, Defendants' arguments to dismiss these seven claims lack merit and should be rejected. *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, No. 09-md-2042, 2013 WL 1431756, at *16 (E.D. Mich. Apr. 9, 2013) (denying motion to dismiss claims under New Mexico and Rhode Island consumer protection because they do not enumerate price-fixing among prohibited acts); *see also Chocolate Confectionary Antitrust Litig.*, 602 F. Supp.2d 538, 586 (M.D. Pa. 2009) (price-fixing

---

[34] The seven states identified by Defendants are Arizona, Arkansas, Kansas, Michigan, Minnesota, New Mexico, and Rhode Island.

[35] As for the one case cited by Defendants, *GPU I*, its ruling that the ADTPA did not apply to price-fixing was based on the theory that price-fixing was considered to be an unconscionable act, a theory demonstrated above to be erroneous. That ruling was rejected two years later in the same district court. *Flash*, 643 F. Supp. 2d at 1157 (citing *Baptist Health v. Murphy*, 226 S.W.3d 800, 810-811 (2006)).

allegations fall squarely under the RIUTPCPA; also sustaining claim under New Mexico's NMUPA). As a result, Indirect Purchasers may bring claims under these statutes.[36]

Defendants' reliance on the *AGC* factors in seeking dismissal of the Nebraska, New York and Vermont unfair competition/consumer protection claims is likewise without merit because, as discussed *supra* at Section B, Plaintiffs satisfy antitrust standing. Defendants do not dispute that if the Court finds the *AGC* factors are met for the antitrust claims, they are also met under these state statutes. D.E. 184, PageID#: 1934.

Defendants' argument that businesses are prevented from bringing actions pursuant to the unfair and deceptive trade practices acts of nine states also carries little weight.[37] D.E. 184, PageID#: 1934-1935. For example, corporate indirect plaintiffs' unfair practices claims under the District of Columbia's statute have been routinely upheld. *See In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d at 897-99 (denying motion to dismiss consumer protection claims of corporate indirect purchasers); *TFT-LCD*, 586 F. Supp. 2d at 1125-26 (denying motion to dismiss consumer protection claims of indirect purchaser plaintiffs including business entities). Businesses are also permitted to allege claims under Hawaii's unfair competition statute. *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179, 1212 (Haw. 2006) ("By its plain terms, HRS § 480-2(e) authorizes *any person, i.e.,* businesses and individual consumers, to bring an action grounded upon unfair methods of competition.") (emphasis in original); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 5094289, at *2 (N.D. Cal. Dec. 8, 2010). In Nevada, the argument being made by Defendants has been

---

[36] A list of authorities for these states is contained in Appendix F, Plaintiffs May Assert Price-Fixing Claims Under State Consumer Protection Statutes.

[37] The nine states identified by Defendants are District of Columbia, Hawaii, Kansas, Michigan, Mississippi, Missouri, Montana, Nevada, and Rhode Island. Indirect Purchasers note however that they have not asserted an unfair or deceptive trade practices claim in Montana.

rejected. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d at 226 ("Under Nev. Rev. Stat. § 41.600 an action may be brought by *any person* who is a victim of consumer fraud, including those subjected to deceptive trade practices under the NDPTA. . .).

Consumers are not business entities based on the plain language of their complaint defining named Consumer Plaintiffs as persons who purchased CISP for personal use and not for resale. D.E. 121, ¶¶ 19-20, 119, PageID#: 1076, 1101-1102. However, to the extent any question remains, courts have emphasized that the focus of this inquiry is not on the character of any particular plaintiff, but rather upon "*the use to which the goods [will] be put.*" *See, e.g.*, *Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 482 (D. Del. 2010) (emphasis added). Furthermore, those jurisdictions which limit their consumer protection laws to items designed for "personal" consumption recognize the claims of those who serve as "conduit[s] or intermediar[ies]," obtaining goods so as to "pass them along" to the ultimate consumer. *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 635 (Mich. 2003). Accordingly, Indirect Purchasers and Consumers are not precluded from bringing unfair and deceptive trade practices claims.[38]

Defendants erroneously contend that the requirement that there must be a substantial effect on, or relationship to, intrastate commerce under five other states' consumer protection statutes warrants dismissal.[39] D.E. 184, PageID#: 1935. They use this argument as a *third* attempt to dismiss Plaintiffs' California UCL claim. However, the assertion that Plaintiffs have not adequately alleged a "nexus" with intrastate commerce in California is incorrect. Courts interpreting California law have allowed claims under the UCL to proceed where plaintiffs

---

[38] A list of authorities for these states is contained in Appendix G, Businesses May Assert Claims Under State Consumer Protection Statutes.

[39] The five states identified by Defendants are California, Montana, New Hampshire, New York and North Carolina. Indirect Purchasers note however that only Consumers have asserted a consumer protection claim under Montana law.

residing in California alleged they purchased goods indirectly from defendants. *See, e.g.*, *Auto Parts*, 2014 WL 4793848, at *17. The cases relied upon by Defendants, *Norwest*, and *Meridian*, are distinguishable. In both cases, the courts determined plaintiffs' allegations that defendants merely resided in California did not establish a sufficient nexus with California intrastate commerce. *Norwest Mortgage, Inc. v. Sup. Ct.*, 85 Cal. Rptr. 2d 18, 26 (Cal. Ct. App. 1999); *Meridian Project Sys. Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005). In contrast, one of the named Plaintiffs in the present case, Craig Mechanical, Inc. is a plumbing contractor located and licensed in California. Craig Mechanical has *operated its business out of California* for over 30 years, and purchased CISP from Defendants or Direct Purchasers during the Class Period. *See, e.g.*, D.E. 124 ¶¶ 12, 107, 119, 190, PageID#: 1181-82, 1209, 1211, 1220. To suggest that that these facts are not enough to create a sufficient nexus with California commerce is remarkable. These allegations plainly satisfy the intrastate requirement under the UCL, as demonstrated in *Auto Parts*.[40]

New Hampshire courts have also sustained plaintiffs' consumer protection claims finding this requirement was met based on allegations similar to those contained in Plaintiffs' Complaints. *See In re Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 193 (involvement of New Hampshire dealers in conspiracy to affect prices throughout the United

---

[40] Furthermore, as previously discussed (*see supra*.) court have ruled that where valid Sherman Act and Cartwright Act claims exist, so too does a UCL claim. *See GSI Technology, Inc.*, 2012 WL 2711040, at *8 (upholding plaintiff's Cartwright claim: "[s]ince Defendant's Motion depends on the assumption that Plaintiff has no claim under the Sherman and Cartwright Acts, the motion to dismiss this [UCL] claim will be denied."); *In re: Pool Products Distribution Market Antitrust Litig.*, 946 F. Supp. 2d at 566 (holding that a "violation of California antitrust law may stand as the basis of a claim under the 'unlawful' or 'unfair' prongs of the UCL if such conduct caused the plaintiffs' injuries," and denying motion to dismiss indirect purchasers' UCL claims based on their allegations of exclusionary vertical agreements.).

48

States constitutes 'offending conduct' in New Hampshire."); *In re Ductile Iron Pipe Fittings*, 2013 WL 5503308, at *22.

Actions under New York's consumer protection law have been similarly upheld. *See Leider v. Ralfe*, 387 F. Supp.2d 283, 294 (S.D.N.Y. 2005) (noting that "those cases that have rejected §349 claims for lack of geographical nexus to New York involved schemes with no tangible tie to New York," and finding that it is "simply impossible – nor is it required – for the entirety of [defendants'] conduct to occur in New York, given the extent of the alleged misconduct and the international scope of the diamond industry"). As with the diamond industry, the CISP market cannot operate exclusively in New York but is a nationwide market affecting all states. *See, e.g.*, D.E. 124 ¶¶ 55-66, PageID#: 1190-1191. Furthermore, Defendants, directly or through their agents, engaged in activities affecting each such state. Defendants have purposefully availed themselves of the laws of each of the states identified herein in connection with their activities relating to the production, marketing, and sale of CISP. Defendants produced, promoted, sold, marketed, and/or distributed CISP, thereby purposefully profiting from access to Indirect Purchasers in each such state. Defendants also contracted to supply or obtain goods or revenue related to CISP." D.E. 124 ¶¶ 9, 108, PageID# 1180, 1209. Consumers make similar allegations. *See, e.g.*, D.E. 121 ¶¶ 172, 174, 175,190, 195, PageID# 1119 1118-20, 1126 1130-1131. Therefore, Indirect Purchasers and Consumers satisfy any intrastate commerce requirements which may exist under state consumer protection laws.[41]

Lacking citation to any case law, Defendants seek dismissal of Indirect Purchasers' unfair competition/consumer protection claims under the law of Mississippi and Consumers' claims under the Montana and South Carolina state statutes because, Defendants wrongly assert, these

---

[41] A list of authorities for these states is contained in Appendix H, State Consumer Protection Statutes Intrastate Nexus Requirement.

49

states prohibit class actions in federal court. D.E. 184, PageID# 1936. In *Shady Grove,* the Supreme Court rejected this argument, holding that "[Federal] Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 401 (2010).[42]

In refusing to dismiss price-fixing claims under the Montana and South Carolina statutes, the court in *Auto. Parts* found *Shady Grove* controlling, and rejected citation to decisions pre-dating the Court's decision that suggest these statues bar class certification under Rule 23. *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612 at *30 (finding that the state limitations on class actions cannot bar class certification under Rule 23 pursuant to *Shady Grove*); s*ee also In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143, 2012 WL 1366718, at * 8 (N.D. Cal. April 19, 2012) (denying motion to dismiss despite class action bar in South Carolina statute).

The same analysis applies to Mississippi's unfair competition/consumer protection statute, and the same conclusion should be reached. *Cf. Auto Parts*, 2013 WL 2456612, at *22 (finding that the Illinois antitrust statute bars class actions under *Shady Grove* because "the procedural rule was contained in the same paragraph of the same statute as the substantive right; and the policy judgment reflected in the statute addresses management of duplicative recovery by entrusting class actions to the attorney general"). None of these conditions are present in Mississippi's statute. The class action language is completely separate from discussion of the substantive right to "bring an action at law in the court" to recover damages resulting from a "method, act or practice prohibited by [Mississippi's unfair competition/consumer protection

---

[42] As explained by the Court, Rule 23 applies to class actions based on state substantive rights when a state prohibition "is procedural in the ordinary use of the term" and is not "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423, (Stevens, J., concurring).

statute]," and does not reference actions by the state attorney general. *See* Miss. Code Ann. § 75-24-15(4). Given this statutory language, application of Rule 23 to Mississippi's statute is even stronger than that of Montana and South Carolina where, unlike Mississippi's statute, the class action language is included in the paragraph providing substantive rights. *Cf.* Mont. Code § 30-14-133(1); S.C. Code Ann. § 39-5-140(a). Accordingly, since *Shady Grove* governs the finding that Montana's and South Carolina's bar on class actions does not prohibit class certification, Mississippi's statute should similarly be allowed to proceed as a putative class action.

Again without citation to any authority, Defendants claim that because California, Florida, Michigan and North Carolina state unfair competition/consumer protection statutes limit claims to those brought by in-state consumers or those injured in-state, no case seeking multi-state classes are allowed. D.E. 184, PageID#: 1936. This argument is easily dismissed, as many courts have certified multi-state class actions under these and other states' statutes. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) (certifying classes under California, Florida, Michigan and North Carolina statutes); *In re Flonase Antitrust Litig.,* 284 F.R.D. 207 (E.D. Pa. 2012) (granting class certification for Florida claim, among other states); *Robinson v. EMI Music Distribution, Inc.,* No. L-10462, 1996 WL 495551 at *4-5 (Tenn. Cir. Ct., July 8, 1996) (certifying classes under California, Florida and Michigan statutes in addition to twelve other state unfair competition/consumer protection statutes). Consumers do seek a nationwide class under the Tennessee Trade Practices Act. *See* Section III.E.

Finally, Defendants argue that the Court should dismiss Indirect Purchasers' and Consumers' claims under the laws of Massachusetts and Mississippi because the parties did not

provide notice before filing the complaint. D.E. 184, PageID#: 1936-1937. However, Massachusetts' notice provision is only applicable to section 9 of the statute, and the relevant sections in this case are sections 2 and 11. Consequently, no notice is required. *See Landworks Creations, LLC v. United States Fid. & Guar. Co*., No. 05-cv-40072, 2008 WL 660341, at *7 n.17 (D. Mass. Feb. 6, 2008) ("Defendant asserts that plaintiff's failure to send a demand letter is a bar to the ch. 93A claim. Such a letter is only a 'jurisdictional prerequisite to suit' under ch. 93A, § 9, not § 11, which governs here."). Even if this Massachusetts demand letter prerequisite was applicable under Sections 2 and 11 of the statute, it "does not apply . . . if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." Mass. Gen. Laws. Ch. 93A sec. 9(3); *see also In re Processed Eggs Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 902-03 (E.D. Pa. 2012). Defendants are not located in Massachusetts and no party asserts that they have assets in the state. As a result, the notice requirement is inapplicable and cannot warrant dismissal.

Mississippi's statute does not have a notice provision as Defendants wrongly assert, but instead states "the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program." Miss. Code Ann. § 75-24-15. Such a class-wide settlement demand would have been futile before the filing of the complaints and, as the Court no doubt appreciates through its current efforts to achieve resolution by mediation, the parties are not in a position to settle this case. Defendants cannot tell this Court that they would have resolved this litigation prior to suit.

### E. Consumer Plaintiffs Can Pursue a Claim Under the TTPA

#### 1. Choice-of-Law Principles and Constitutional Limitations Do Not Bar Consumers' TTPA Claim

Defendants assail Consumers' claim under the Tennessee Trade Practices Act ("TTPA")

by arguing that Tennessee choice-of-law principles and so-called constitutional infirmities preclude Arkansas residents from maintaining a TTPA claim. [Doc. 179, Page ID#: 1859-1865].[43]

The Court should decline to engage in a premature choice-of-law analysis at this time. *See Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 491 (D. N.J. 2009). Instead, the Court may proceed to evaluate the sufficiency of the claims on a Rule 12(b)(6) motion under the assumption that Tennessee law applies, given that the Consumers have argued that their TTPA claim is viable under Tennessee law. *See, e.g.*, *Prudential Ins. Co. of Am. v. Bank of Am.*, No. 13-cv-1586, 2014 WL 1515558 (D. N.J. Apr. 17, 2014). [44]

---

[43]Defendants do not develop this argument in their brief, referring the Court instead to their previously filed motion to strike class allegation. [Doc. 179, at PageID#: 1860].

[44] Even if the Court deemed it appropriate to engage in a choice-of-law analysis at the motion to dismiss stage Tennessee law would nevertheless apply here. As the Consumers make clear in their previous brief, it is the state with the "most significant" relationship to the litigation that matters. *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992) (Tennessee law applied even though the injury occurred in Arkansas). While "the place of domicile of the parties" is a factor, the place where the conduct occurred is relevant" is a factor as well. *Id.* at 586. The facts here are more compelling than those in *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555 (E.D. Tenn. 2014) ("*Skelaxin II*"), where choice-of-law was addressed at class certification, and not the pleading stage. For example, the Consumers allege that the heart of the conspiracy was within Tennessee, where Defendant Cast Iron Soil Pipe Institute, Inc. ("CISPI") is located. And while the manufacturer Defendants suggest that their connection with Tennessee and Tennessee's connection with the litigation is *de minimis*, the facts alleged are that these Defendants tightly controlled the CISPI [Doc. 121, at PageID#: 1079] and "use the CISP Institute in Tennessee as a mechanism to facilitate communication and coordination of their activities, including price-fixing, maintaining their market shares, and excluding foreign competition. [*Id.*, at Page ID#: 1081]. Moreover, "[t]he CISP Institute's website and marketing materials are used extensively to promote and market to suppliers, contractors, and the general public the CISP products manufactured by the Manufacturer Defendants." *Id.*, at Page ID#: 1080. Significantly, because the CISPI is "fully-funded by the Manufacturer Defendants," Consumers allege that overcharges paid by them and other class members across the United States for CISP have logically flowed back to CISPI in Tennessee. *Id.*, at Page ID: 1082. Finally, in ¶¶ 30-48 of the Consolidated Amended Complaint [*Id.*, at Page ID#: 1078-1083], the Consumers assert numerous other allegations addressing the "substantial effects" of Defendants' conspiracy on the State of Tennessee.

53

## 2. Consumers Have Sufficiently Alleged "Substantial Effects" to State a Claim Under the TTPA

Defendants next attack the TTPA claim on its merits, wrongly theorizing that the Consumers' allegations purportedly fall outside the scope of the statute. [Doc. 179, at PageID#: 1860]. At its core, Defendants' argument is premised on the erroneous notion that "the alleged effect" of Defendants' conspiracy "on Tennessee commerce is tenuous" and does not satisfy the "substantial effect" requirement enunciated by the Tennessee Supreme Court in *Freeman Industries, LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 523 (Tenn. 2005). [Doc. 179, at PageID#: 1860].[45]

Surprisingly, Defendants present their argument as if it was a motion for summary judgment, suggesting the Consumers have failed to establish the necessary proof to establish their TTPA claim. The issue before the Court, however, is not whether the Consumers have failed to come forward with sufficient evidence to establish their claim, but whether their Consolidated and Amended Complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the most persuasive federal decision addressing the TTPA, Judge Collier in *Skelaxin I*, 2013 WL 2181185, properly denied a motion to dismiss based on the allegations in the plaintiffs' complaint. The plaintiff pharmacies, who, like the Arkansas Consumers here, were not residents of Tennessee and whose purchasers were made outside of Tennessee, sued two drug companies,

---

[45]Relying on *Freeman Indus.*, federal courts, including Judge Collier in *Skelaxin I* ruling, have recently concluded that consumers in other states may bring suit under the TTPA, so long as the anti-competitive conduct affected Tennessee commerce "to a substantial degree." *See In re Skelaxin Metaxalone Antitrust Litig.*, No. 12-md-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013) ("*Skelaxin I*")and *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, Nos. 09-cv-852, 11-cv-162, 2012 WL 3841397, at *7 (E.D. Wis. Sept. 5, 2012). Thus, Tennessee's highest court and federal district courts in two Circuits, including the Sixth Circuit, have expressly sanctioned the right of consumers who are not residents of Tennessee to assert claims under Tennessee's antitrust law when there has been a substantial effect on Tennessee commerce.

King and Mutual, for violating the TTPA. King and Mutual maintained that the plaintiffs were not only non-residents, but also had no ties to the Tennessee market. *Id*. at p. 44. Judge Collier recognized that the defendants' arguments attempted to redirect the court's attention toward the conduct of the plaintiffs, but the TTPA, as explained in *Freeman*, "is primarily focused on the substantial effect of [d]efendants' conduct on Tennessee's commerce." *Id*.[46]

As Defendant manufacturers rightly concede, the "substantial effects" standard is satisfied when the indirect purchaser alleges "a number of facts . . . to highlight [the defendant's] ties to Tennessee and the effect of Defendants' unlawful conduct on the state." Doc. 179, at PageID#: 1862 (citing *Skelaxin II*, at *23).[47] *Freeman Indus.* was a case brought under the TTPA by a New York plaintiff. There, the court held that "an indirect purchaser may bring an action under Tennessee Code Annotated section 47-25-106 for conduct in violation of the TTPA even though the indirect purchaser is a non-resident of this state. *Freeman Indus.*, 172 S.W.3d at 520. To do so, residents of other states must allege that Tennessee commerce has been "substantially affected." *Id*. at 523-24. The test is a pragmatic one, turning upon the particular facts of the case. *See id*. at 523. The Court emphasized that the anti-competitive conduct "need not threaten the demise of Tennessee businesses or affect market prices" to meet the test. *See id*. at 523-24.

---

[46] Defendants also rely upon *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 Fed. App'x 656, 662-63 (6th Cir. 2009), *In re Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943, 2011 WL 5008090, at *8 n.10 (D.N.J. Oct. 20, 2011), and *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 415-16 (E.D. Pa. 2009) in urging dismissal. However, Judge Collier sufficiently distinguished all three of those cases in his decision refusing to dismiss the TTPA claims in *Skelaxin I*, 2013 WL 2181185, at *24.

[47] Distinguishing "conduct" from "effect," *Freeman* stated that "[t]he focus under the substantial effects standard . . . is not on the anticompetitive conduct itself but on the effects of the conduct on Tennessee commerce." *Id*. at 524. "[T]he test is pragmatic, turning upon the particular facts of the case . . . . The anticompetitive conduct, however, need not threaten the demise of Tennessee businesses or affect market prices to substantially affect intrastate commerce." *Id*. at 523-24.

Charging that Consumers' allegations lack "factual detail," Defendant manufacturers incorrectly surmise that the Consumer Plaintiffs allegations about meetings and conversations between the Defendants are" wholly insufficient to sustain a TTPA claim," pointing to *Freeman Industries,* where the court held the New York plaintiff's allegations of "in-person meetings, telephone calls, letters, and email" in Tennessee "resulting in an agreement to fix the prices" did not "establish that Tennessee commerce was substantially affected." 172 S.W.3d at 524. Predictably, Defendants' selective rendition of the *Freeman Industries*' court's reasoning is seriously misleading. What the court actually said, in concluding the New York plaintiff had fallen short of alleging sufficient substantial effects, is: "*we do not believe that this bare allegation without more is sufficient to establish that Tennessee commerce was substantially affected.* Furthermore, Freeman *fails to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree* even though the conduct resulted in Freeman paying higher prices to retailers for items containing sorbates." *Freeman Industries*, at 524.

In contrast to the out-of-state plaintiff in *Freeman Indus.*, who never alleged that it purchased the price-fixed product from a defendant with ties to Tennessee, here, Consumers allege a litany of effects on Tennessee commerce. *See, e.g.*, D.E. 121, ¶¶ 30-48, PageID#: 1078-1083. Specifically, Tennessee is where the industry trade association, CISPI, is located. That organization is fully- funded by and tightly controlled by the Defendant manufacturers, who are its only members. *Id*. ¶ 34, PageID#: 1079. The CISPI in Tennessee is used by Defendant manufacturers as their mechanism for facilitating and coordinating the price-fixing conspiracy. *Id*. ¶¶ 41-43, PageID#: 1081. Defendant manufacturers use the CISPI in Tennessee to promote and market their CISP products, CISP suppliers, and CISP contractors to the public. *Id*. ¶¶ 37-39,

PageID#: 1080. Because the CISPI is "fully-funded by the Defendant manufacturers," overcharges paid by the Consumers in Arkansas and elsewhere to those Defendant manufacturers for CISP logically flowed back to the CISPI in Tennessee. *Id*. ¶ 45, Page ID#: 1082.

Not only are Consumers' allegations nothing like the "bare allegations" advanced by the New York plaintiff in *Freeman Industries*, but the well-pleaded allegations also raise the expectation that discovery will reveal evidence of the substantial effects on the Tennessee economy. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 166 (E.D. Pa. 2009) (citing *Twombly*, 550 U.S. at 555, court found that the amended complaint contains facts that "raise a reasonable expectation that discovery will reveal evidence of" a substantial effect on the Tennessee economy sufficient to prove a claim under that state's antitrust law).[48]

Defendant manufacturers' characterization that the Consumers are asking this Court "to take the radical step of applying Tennessee law nationwide to consumers whomever purchased CISP in Tennessee and suffered no injury there," is simply incorrect. What the Consumers are asking is that the Court merely conclude that Consumers have alleged sufficient factual detail of substantial effects of Defendant manufacturers' conspiracy on Tennessee commerce in their

---

[48]In *Fond Du Lac Bumper Exch., Inc.*, 2012 WL 3841397, at *4, Arkansas Transit, an Arkansas resident, asserted claims on behalf of indirect purchasers in Arkansas, Florida, Minnesota, New Mexico and Tennessee against the defendants under the TTPA, alleging that it conducted business in 48 states and purchased the relevant price-fixed sheet metal in many states. Defendants moved to dismiss, citing *Freeman Indus.*, because the conspiracy alleged was nationwide in scope, the defendants were Taiwanese and Texas companies and no defendant was located in Tennessee, and so, plaintiff failed to allege the conspiracy had a "substantial effect" on Tennessee commerce. Implicitly finding no "choice of law" concerns, the district court denied the motion, allowing the claims of the non-resident of Tennessee to go forward, holding that,

> "[s]ince plaintiffs allege defendants engaged in a conspiracy to fix the price of AM parts sold in Tennessee and forced consumers in the state to pay unreasonably high prices, I conclude the complaint is sufficient to state a claim under the TTPA."

*Fond Du Lac*, 2012 WL 3891397, at *7.

Consolidated Amended Complaint to survive a motion to dismiss for failure to state a claim. That's a far cry from taking a "radical step."

## F. Consumers Have Adequately Pled an Unjust Enrichment Claim

Consumers are not required to plead state-specific substantive allegations for unjust enrichment claim to survive a motion to dismiss. "Defendants have benefitted from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayment made by Plaintiffs or the members of the classes for products containing CISP." D.E.121 at 67; PageID#: 1137. At the pleading stage, this is all that is required.

### 1. Consumers Need Only Plead Defendants Unjustly Received a Benefit as a Result of Their Conduct

Defendants claim that the definition of "unjust" changes from state to state and erroneously argue that Consumers must differentiate among the varying state standards of unjustness in their Complaint. Wrong. The *Auto Parts* court held:

> [A]lthough the particular elements of unjust enrichment vary from jurisdiction to jurisdiction, when stripped to its essence, a claim for unjust enrichment requires [indirect purchaser plaintiffs] to allege sufficient facts to show that Defendants received a benefit and under the circumstances of the case, retention of the benefit would be unjust.

*In re Instrument Panel Clusters*, No. 12-md-2311, 2014 WL 2993753, at *25 (E.D. Mich. July 3, 2014). Here, Consumers allege that Defendants benefitted from their illegal price fixing conspiracy and that retaining that benefit would be inequitable. D.E.121 at 67; Page ID#: 1137.

### 2. Even if State Specific Allegations are Required, Consumers Have Sufficiently Alleged Unjust Enrichment

Consumers' complaint meets each individual state's substantive requirements.[49] "California courts, including the Supreme Court of California, have acknowledged that parties may pursue causes of action arising from an unjust enrichment claim . . . ." *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) ("The elements of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.").

Consumers have also adequately pled unjust enrichment under Florida, Kansas, Maine, Michigan, North Carolina, North Dakota, and Utah law. Direct contact is not required between the parties.

The use of the term "direct" is intended to refer not to the relationship between the parties, but to a type of benefit that is not "incidental." *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d at 934. Defendants wholly intended to benefit from the sale of their products to Consumers through their price fixing conspiracy. The fact that the benefit conferred by Consumers on Defendants did not pass directly from Consumers to Defendants—but instead passed through third parties—does not preclude Consumers' unjust enrichment claim. *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 2011 WL 4368980, at *8 (S.D. Fla. Sept. 19, 2011) (holding that although there was no direct contact between plaintiffs and defendants, by paying allegedly excessive premiums, plaintiffs directly conferred a benefit on defendants); *Instrument Panel Clusters*, 2014 WL 2993753, at *38 (same).

Numerous courts have upheld unjust enrichment claims based on indirect purchases of price-fixed products as sufficient to allege a benefit on conspiring manufacturers. *See Processed*

---

[49]Defendants do *not* argue that Consumers have failed to meet the unjust enrichment requirements for Arkansas, District of Columbia, Hawaii, Illinois, Iowa, Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, Oregon, Rhode Island, South Dakota, Vermont, West Virginia, and Wisconsin.

*Egg Prods.*, 851 F. Supp. 2d at 928-34 (Florida, Kansas, New York, North Carolina, and Utah do not require a direct benefit); *TFT-LCD*, 599 F. Supp. 2d at 1189-90 (Michigan and North Carolina do not require a direct benefit).

Consumers have also adequately pled an unjust enrichment claim under New York law. Defendants misconstrue *Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. App. Div. 2006) in arguing that "New York bars indirect purchasers from bringing unjust enrichment claims when the connection between a plaintiff and defendant is too attenuated." D.E. 184 at 47; PageID#: 1939. Consumers' claims here are not too attenuated like those in *Sperry*, and are more analogous to the claims in *In re Auto Parts,* where the price-fixed parts were not so intertwined in the final product as to be inseparable and indistinguishable. *See also Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010) (unjust enrichment against manufacturer permitted).[50]

## CONCLUSION

Defendants' Motions should be denied. To the extent the Court determines that any of Defendants' arguments have merit, Plaintiffs respectfully request that they be allowed to amend to replead.

---

[50] Consumers' South Carolina unjust enrichment claim also survives because "under South Carolina law '[a] party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another…' a plaintiff must show: (1) a benefit conferred upon the defendant by plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for it to retain the benefit. *There is no requirement to allege the existence of a duty.*'" *Instrument Panel Clusters*, 2014 WL 2993753, at *36 (emphasis added) (citations omitted). Consumers' Mississippi unjust enrichment claims should also go forward. In *Instrument Panel Clusters*, the court said "the law is clear that unjust enrichment applies when one party has mistakenly paid another party. Unjust enrichment applies to situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Id.* at *32 (internal citations omitted).

Dated: November 10, 2014              Respectfully Submitted,

*/s/ Terence S. Ziegler*
Joseph H. Meltzer
Edward W. Ciolko
Terence S. Ziegler
Kimberly A. Justice
Scott Lempert
John Q. Kerrigan
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706

***Lead Counsel for the Indirect Purchaser
Plaintiffs***

Ronald J. Berke BPR#1741
Jeremy M. Cothern BPR#27166
**BERKE, BERKE & BERKE**
420 Frazier Avenue
Chattanooga, TN 37405
Tel: (423) 266-5171

***Liaison Counsel for Indirect Purchaser
Plaintiffs***

Tim Howard, J.D., Ph.D.
Scott Carruthers
**HOWARD & ASSOCIATES, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Facsimile: (850) 216-2537
tim@howardjustice.com
scarrutherslaw@gmail.com

***Counsel for Plaintiff Keith McNeill Plumbing
Contractor, Inc.***

*/s/ Gordon Ball*
Gordon Ball
**GORDON BALL PLLC**
700 Old Kent Drive
Knoxville, TN 37919
Tel: (865) 525-7028

61

<u>*/s/ Charles Barrett*</u>
Charles Barrett
**THE BARRETT LAW GROUP**
6518 Highway 100
Suite 210
Nashville, TN 37205
Tel: (615) 515-3393

***Lead Counsel for Consumer Plaintiffs***

62

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that the foregoing has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This the 10th day of November, 2014.

<u>/s/ Terence S. Ziegler</u>
Terence S. Ziegler